IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FREDERICK P. CLAYTON, JR., | ) | |
| KENT B. MONYPENY, BEVERLY | ) | |
| ACKERT, K.E. AND MARGARET | ) | |
| ALLEN, MARGARET ALLEN, | ) | |
| BURTON ARBUCKLE, | ) | |
| B.L. LANIER & ASSOCIATES, | ) | |
| B.L. LANIER FRUIT CO., INC., | ) | |
| BRENT BUTLER, PETER & WENDY | ) | |
| COBARRUBIA, JOHN COUNTER, | ) | |
| JERRY COUNTER, J.C. COUNTER | ) | |
| REVOCABLE TRUST, COUNTER | ) | |
| PARTNERSHIP #2, JO ANN | ) | |
| COUNTER REVOCABLE TRUST, | ) | |
| MARY C. COUNTER REVOCABLE | ) | |
| TRUST, MIKE DEMARIA, SCOTT E. | ) | No._____ |
| DICKERSON, HENRY PETER DOBLE | ) | JURY TRIAL DEMANDED |
| II, HENRY PETER DOBLE II & | ) | |
| JUSTIN ALEXANDER DOBLE- | ) | |
| JTWROS, HENRY PETER DOBLE | ) | |
| II & JAMES MARK DOBLE-JTWROS, | ) | |
| LESLIE W. DUNSON III AND | ) | |
| VIRGINIA T. DUNSON, | ) | |
| CASSIDY H. HURST, BETTY H. | ) | |
| BUTCHER INSURANCE TRUST, | ) | |
| KATHERINE L. KELSEY, | ) | |
| MILLENNIUM REALTY, LLC, | ) | |
| BETTY H. BUTCHER, PERRY | ) | |
| BUTCHER REVOCABLE TRUST, | ) | |
| PETER & NANCY KEIM, BOBBY | ) | |
| LANIER, SARA T. LANIER | ) | |
| IRREVOCABLE TRUST, PETER & | ) | |
| JUDITH LAWSON, THOMAS & PAM | ) | |
| LERACH, LAURENCE M. & DANA | ) | |
| LEVINE, MICHAEL & LISBETH | ) | |
| MERRETT, MID-STATE | ) | |
| ENERGY, INC., CHERYLE | ) | |
| MILUSZEWICUS, THOMAS J. | ) | |
| MITCHELL, JR., JAMES C. AND | ) | |
| JOYCE MOORE, TISA L. | ) | |
| OLDHAM, BOBBY & DEBORAH | ) | |
| O'NEIL, MICHAEL & MARY JANE | ) | |
| RICKS, DAVID & VIOLA RICKS, | ) | |

F. CLARK & MARISA SAULS,       )
WILLIAM R. SIEFRING TRUST,   )
TIM & LINDA S. TALBOT,        )
TIM M. & MARLENE TIPPETT,    )
JERRY VICARS, GEORGE WOLFF,  )
GDWP, LLC,  ANTHONY C. & JEAN  )
C. YANNETTE, DANIEL YANNETTE, )
MICHAEL YANETTE,            )
                               )
      Plaintiffs,              )
                               )
v.                               )
                               )
HEARTLAND RESOURCES, INC.,   )
HEARTLAND HOLDING COMPANY,  )
INC., HEARTLAND DRILLING, INC., )
HEARTLAND OPERATING         )
COMPANY, INC., HEARTLAND     )
EXCAVATING, INC.,             )
HEARTLAND INVESTMENT       )
PROPERTIES, LLC, HEARTLAND   )
JOINT VENTURE, LP, DAVID A.    )
STEWART, D. MARK  HAYNES,    )
RICHARD E. STEWART, CHRIS    )
STEWART, RUTH STEWART,      )
STEWART FAMILY TRUST,       )
STEWART FAMILY LIMITED      )
PARTNERSHIP #1,             )
HAYNES FAMILY  TRUST,       )
HAYNES FAMILY LIMITED       )
PARTNERSHIP #1, HUNTER      )
DURHAM, HEARTLAND – ALLEN  )
#1 JOINT VENTURE, LP,        )
HEARTLAND – APPALACHIAN    )
DEVELOPMENT, LP, HEARTLAND  )
– CLIENT APPRECIATION       )
PROGRAM, GP,  HEARTLAND –   )
COLES BRANCH PROSPECT, GP,   )
HEARTLAND –COLES BRANCH #2, )
LP, HEARTLAND – COLES       )
BRANCH PROSPECT #3, LP,     )
HEARTLAND – COLES BRANCH   )
PROSPECT #4 & 5, GP,         )
HEARTLAND – EASTERN        )
KENTUCKY DEVELOPMENT, GP,  )
HEARTLAND – HINKLE BRANCH  )

2

DEVELOPMENT GP, HEARTLAND – )
JOAQUIN PROSPECT, GP, )
HEARTLAND – JOAQUIN PROSPECT )
#2, GP, HEARTLAND – JOAQUIN )
PROSPECT #3, GP, HEARTLAND – )
JOAQUIN PROSPECT #4 & #5, GP, )
HEARTLAND – MARATHON )
MCCOY #1 RE-DRILL, GP, )
HEARTLAND - PRAIRIE FIRE #1, )
GP, HEARTLAND – RAZORBACK )
DEVELOPMENT, GP, HEARTLAND – )
RED RIVER PROSPECT, LP, )
HEARTLAND – SCHREIBER JOINT )
VENTURE, GP, HEARTLAND – SEVEN)
WELL DEVELOPMENT, LP, )
HEARTLAND – TEN WELL )
DEVELOPMENT, LP, HEARTLAND – )
TWELVE WELL DEVELOPMENT, )
LP, HEARTLAND – SUGAR CAMP )
BRANCH PROSPECT, GP, )
HEARTLAND – WOLFF JOINT )
VENTURE, LP, ASCENSION )
FINANCIAL SOLUTIONS, INC., )
MUSIC CITY ENERGY, INC., )
STEWART AND HAYNES )
PROPERTIES, LTD., HEARTLAND )
ENERGY, LLC )
)
      Defendants. )

---

# COMPLAINT

---

The Plaintiffs, through counsel, state as and for their Complaint[1] against the

Defendants, as follows:

---

[1] An Evidentiary Appendix is being filed contemporaneously herewith.

## NATURE AND STATUTORY BASIS OF ACTION

1. This is an action on behalf of purchasers (collectively, the "Investors") of securities promoted and sold unlawfully by Heartland Resources, Inc. and the other Defendants.

2. The securities promoted and sold by the Defendants included partnership interests in what were purported to be mainly limited partnerships.

3. The securities promoted and sold by the Defendants also included Working Interests offered by Heartland Resources, Inc. "Working Interests" are fractional, undivided interests in oil and gas properties and rights.

4. By and through the Partnerships and offerings of Working Interests ("Offerings"), the Defendants facilitated the fraudulent sale of securities to the Investors.

5. The Investors are pursuing remedies against the Defendants under the Securities Act of 1933 and the regulations promulgated thereunder (the "Securities Act"), the Securities Exchange Act of 1934 and the regulations promulgated thereunder (the "Exchange Act"), the Tennessee Securities Act of 1980 and the regulations, rules, and orders promulgated thereunder (the "Tennessee Securities Act"), and Tennessee common-law and equitable causes of action, the Securities Act of Kentucky and the regulations, rules, and orders promulgated thereunder (the "Kentucky Securities Act"), and Kentucky common-law and equitable causes of action.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over the claims herein pursuant to 28 U.S.C. § 1331 because the Plaintiffs' claims arise under the laws of the United States, specifically the Securities Act of 1933, 15 U.S.C. § 77a *et. seq.* and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et. seq.* This Court has supplemental jurisdiction over all other claims herein pursuant to 28 U.S.C. § 1367 because said claims are so related to the federal claims that they form part of the same case or controversy.

7.     Venue is proper in this Court because the Defendants transacted business in this district; at least two of the Defendant entities are organized under the laws of Tennessee or authorized to do business in Tennessee; a substantial part of the events, misrepresentations, inconsistent statements, and omissions giving rise to the Investors' claims occurred in this district; one or more of the offers and sales of securities took place in this district; and Heartland Resources filed Forms U-2 with the Tennessee Commissioner of Commerce and Insurance consenting to venue in the State of Tennessee. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), 15 U.S.C. § 77v.

## THE PARTIES

**A.     Defendants**

8.     Heartland Resources, Inc. ("Heartland Resources") is a Kentucky corporation. During all times relevant to the transactions referenced in this Complaint, the principal place of business of Heartland Resources, Inc. was 942 Searcy Way, Bowling Green, Kentucky 42103. During all times relevant to the

transactions referenced in this Complaint, Heartland Resources was the General Partner and "Program Manager" for each of the Partnerships. In addition, Heartland Resources was the issuer of Working Interests in a number of offerings sold to certain Investor Plaintiffs. "Working Interests" are fractional, individual interests in oil and gas properties and rights which are defined as securities under federal law, 15 U.S.C. § 77$b$, Tennessee law, T.C.A. § 48-2-102(14) and Kentucky law, Ky. Rev. Stat. § 292.310(18). As the General Partner of the Partnerships and with respect to the Working Interests, Heartland Resources had all management authority to perform one or more of drilling, operation, development and management services, including incurring and paying expenses directly and indirectly related to the oil or gas wells, selling oil or gas produced from the oil or gas wells, and distributing proceeds from the sale of oil or gas produced from the oil or gas wells to the Investors.

9.   Heartland Holding Company, Inc. ("Heartland Holding") is a Delaware corporation a/k/a Heartland Holding Company of Delaware, Inc., authorized to do business in Kentucky. During all times relevant to this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky 42103. At various times relevant to this Complaint, Heartland Holding was the owner of all the issued and outstanding securities of at least Heartland Resources, Inc., Heartland Drilling, Inc., Heartland Excavating, Inc. and Heartland Operating Company, Inc.

10.     Heartland Drilling, Inc. ("Heartland Drilling") is a Kentucky corporation. During all times relevant to this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky 42103.  Upon information and belief, Heartland Drilling  acted or ostensibly acted as the driller of wells which were the subject of various offerings by Heartland Resources and the Partnerships.

11.     Heartland Operating Company, Inc. a/ka/ Hydrocarbon Operating Company, Inc. ("Heartland Operating") is a Kentucky corporation.  During all times relevant to this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky 42103.  Heartland Operating operated wells owned by the Issuer Partnerships doing business in Kentucky and acquired and holds title to certain oil and gas leases and working and overriding royalty interests related to wells in which Investors directly or indirectly hold legal or equitable interests.

12.     Heartland Excavating, Inc. ("Heartland Excavating") is a Kentucky corporation.  During all times relevant to this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky 42103.  Heartland Excavating prepared well sites for Heartland Resources and the Partnerships doing business in Kentucky.

13.     While Heartland Holding, Heartland Resources, Heartland Operating, Heartland Excavating and Heartland Drilling, as well as other entities named as Defendants herein, were organized as separate entities, all were under the strategic and tactical control of David A. Stewart and D. Mark Haynes and

were part of a large conspiracy and scheme to defraud the Plaintiff Investors. The Defendants consistently commingled funds raised from Investors in the Offerings, substituted interests in wells without restriction (and even included language in the Private Placement Memoranda ("PPM" or "PPMs") which Defendants argued gave them the power to do so) and utilized the same managers and personnel to provide services to all of the Issuer Partnerships. Accordingly, David A. Stewart and D. Mark Haynes organized, controlled and managed separate companies which were in fact a large, single enterprise with one overriding goal – to defraud investors.

14.   Heartland Investment Properties, LLC is a Limited Liability Company organized under the laws of Kentucky.  During all times relevant to this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky 42103.  According to Kentucky Secretary of State business records, this company is managed by David Allen Stewart, Jr.

15.   Heartland Joint Venture, LP is a Kentucky Limited Partnership organized under the laws of Kentucky.  During all times relevant to this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky 42103.   According to Kentucky Secretary of State business records, the general partner is Heartland Resources, Inc.

16.   David A. Stewart is an individual (and the brother of Defendants Chris Stewart and Richard Stewart and son of Defendant Ruth Stewart) who at various times relevant to the transactions referenced in this Complaint, was the Chief Executive Officer, President and the controlling stockholder and

director of Heartland Resources, Heartland Holding, Heartland Operating, Heartland Drilling and Heartland Excavating.   With respect to Heartland Holding, upon information and belief, David Stewart was the trustee of the Stewart Family Trust, which controlled Heartland Holding.  In or about April of 2006, David A. Stewart resigned as an officer of Defendant Heartland Resources and transferred his stock in Heartland Resources, Heartland Operating, Heartland Drilling and Heartland Excavating to Heartland Holding. On  April 5, 2006, David A. Stewart was indicted for federal income tax evasion for calendar years 1999 through 2002 attributable to a failure to pay income taxes due for those years.  He was later convicted on April 16, 2007, by pleading guilty to the charges described in his indictment and is currently serving a sentence of confinement in prison in Inez, Kentucky at Big Sandy Federal Penitentiary.   For federal and state securities law purposes, David Stewart was a promoter, beneficial owner, executive officer, and director with respect to certain of the offerings conducted by the Issuers.

17.   D. Mark Haynes is an individual who at various times relevant to this Complaint was an officer, director and stockholder of Heartland Resources, Heartland Holding, Heartland Drilling,  Heartland Operating and Heartland Excavating.  In or about April of 2006, D. Mark Haynes resigned his position as an officer of Heartland Resources, Heartland Drilling, Heartland Operating and Heartland Excavating and transferred his stock in Heartland Resources to Heartland Holding.  Mark Haynes is also the trustee of the Haynes Family Trust, which became a stockholder of Heartland Holding.  For federal and

state securities law purposes, D. Mark Haynes was a promoter, beneficial owner, executive officer and directed with respect to certain of the offerings conducted by the Issuers.

18.     Richard E. Stewart is an individual and the brother of David A. Stewart and Chris Stewart.   Prior to becoming Chief Executive Officer of Heartland Resources in April 2006, Richard Stewart was Chief Operating Officer of Heartland Resources.  At certain times relevant to this Complaint, Richard E. Stewart was a director of Heartland Holding and the sole director of Heartland Resources, and, as a director, had fiduciary and oversight obligations with regard to all the activities of the companies owned by or under the control of Heartland Holding, including but not limited to the Issuer Partnerships and Heartland Resources.  For federal and state securities law purposes, Richard Stewart has been a promoter, executive officer and director with respect to securities offerings of certain of the Issuers.

19.     Chris Stewart is an individual and the brother of David A. Stewart and Richard E. Stewart.  At certain times relevant to this Complaint, Chris Stewart was a director of Heartland Holding , and, as a director, had fiduciary and oversight obligations with regard to all the activities of the companies owned by or under the control of Heartland Holding, including but not limited to the Issuer Partnerships and Heartland Resources.

20.     Ruth Stewart is an individual and the mother of David A. Stewart, Richard E. Stewart and Chris Stewart.  At certain times relevant to this Complaint, Ruth Stewart was a director of Heartland Holding, and, as a director, had fiduciary

and oversight obligations with regard to all the activities of the companies owned by or under the control of Heartland Holding, including but not limited to the Issuer Partnerships and Heartland Resources.

21.     The Stewart Family Trust at certain times relevant to this Complaint held the controlling stock interest in Heartland Holding, which controlled Heartland Resources, Heartland Operating, Heartland Drilling, Heartland Excavating and certain other entity Defendants.   Upon information and belief, at all times relevant to this Complaint, David A. Stewart was the trustee of the Stewart Family Trust.   Upon information and belief, following the indictment of David A. Stewart for federal income tax evasion in April 2006, the controlling stock interest in Heartland Holding was transferred to the Stewart Family Trust.

22.     The Stewart Family Limited Partnership #1 is a Kentucky Limited Partnership organized under the laws of the State of Kentucky with its principal place of business at 942 Searcy Way, Bowling Green, KY 42103.  Its general partner is Defendant David A. Stewart.   Upon information and belief, this entity unlawfully received Investor funds that were to be used for investment in oil and gas wells.

23.     The Haynes Family Trust at certain times relevant to this Complaint was an owner of stock in Heartland Holding, which controlled Heartland Resources, Heartland Drilling, Heartland Excavating, Heartland Operating and certain other entity Defendants.  Upon information and belief, at all times relevant to this Complaint, D. Mark Haynes was the trustee of the Haynes Family Trust.

24.     The Haynes Family Limited Partnership #1 is a Kentucky Limited Partnership
organized under the laws of the State of Kentucky with its principal place of
business at 942 Searcy Way, Bowling Green, KY 42103.  Its general partner is
Defendant D. Mark Haynes.   Upon information and belief, this entity
unlawfully received Investor funds that were to be used for investment in oil
and gas wells.

25.     Hunter Durham is an individual; a lawyer licensed to practice law in the
Commonwealth of Kentucky; and a member of the law firm of Durham and
Zornes, a general partnership located in Columbia, Kentucky.  Mr. Durham
has represented a substantial number of oil and gas companies in connection
with their offering and sale of securities for many years and worked for the
Kentucky Securities Division in the late 1960s.  At all times relevant to this
Complaint, Hunter Durham represented at least every Issuer Defendant named
in this Complaint, every entity Defendant named in this Complaint, David A.
Stewart and D. Mark Haynes since at least 2002.   Each of the private
placement memoranda provided in the Evidentiary Appendix filed with this
Complaint states that "Program Manager has employed Hunter Durham ... as
counsel in the preparation of this Memorandum and other exhibits and
documents, and he makes no representation as to the accuracy of the materials
contained herein or as to the fairness of contracts.  Counsel is available to
answer any questions by Participants [Investors]."  As legal counsel to the
Defendants, Mr. Durham was intimately familiar with the activities of the
Defendants and knew of the numerous material omissions and misstatements

set forth in the PPMs.  His involvement in the securities offering activities of the Defendants provided credence to the Offerings and a false sense of security to the Investors.

26.     Heartland – Allen #1 Joint Venture, LP is a Kentucky Limited Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated March 3, 2005.  Its general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was  942 Searcy Way, Bowling Green, Kentucky, 42103.  A copy of its Certificate of Limited Partnership from the Kentucky Secretary of State is provided in the accompanying appendix being filed with this Complaint.  (Evidentiary Appendix at Tab No. 1).

27.     Heartland – Appalachian Development, LP is a Kentucky Limited Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated April 1, 2005.  Its general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was  942 Searcy Way, Bowling Green, Kentucky, 42103.  A copy of its Certificate of Limited Partnership from the Kentucky Secretary of State is provided in the accompanying appendix being filed with this Complaint.  (Evidentiary Appendix at Tab No. 2).

28.     Heartland – Client Appreciation Program, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an

issuer of Securities pursuant to a PPM dated January 17, 2006. Its managing general partner is Heartland Resources. During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

29.   Heartland – Coles Branch Prospect, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated August 22, 2004. Its managing general partner is Heartland Resources. During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103. A copy of its Certificate of Limited Partnership from the Kentucky Secretary of State is provided in the accompanying appendix being filed with this Complaint. (Evidentiary Appendix at Tab No. 3).

30.   Heartland – Coles Branch #2, LP is a Kentucky Limited Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated January 26, 2004. Its general partner is Heartland Resources. During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103. A copy of its Certificate of Limited Partnership from the Kentucky Secretary of State is provided in the accompanying appendix being filed with this Complaint. (Evidentiary Appendix at Tab No. 4).

31.    Heartland – Coles Branch Prospect #3, LP purports to be a Kentucky Limited Partnership organized under the laws of the State of Kentucky.  While stated to be a limited partnership, the Kentucky Secretary of State has no record of any filing by this entity as a limited partnership, and under applicable Kentucky law, this entity is a general partnership.  It was an issuer of Securities pursuant to a PPM dated May 19, 2005.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was  942 Searcy Way, Bowling Green, Kentucky, 42103.

32.    Heartland – Coles Branch Prospect #4 and #5, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky. It was an issuer of Securities pursuant to a PPM dated March 6, 2006.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

33.    Heartland – Eastern Kentucky Development, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky.  It was an issuer of Securities pursuant to a PPM dated November 1, 2004.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

34.    Heartland – Hinkle Branch Development, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky.  It was an

issuer of Securities pursuant to a PPM dated September 10, 2007.   Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

35.   Heartland – Joaquin Prospect, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky.   It was an issuer of Securities of oil and gas well interests in Shelby County, Texas.  Its managing general partner is Heartland Resources.   During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

36.   Heartland – Joaquin Prospect #2, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities in the form of Working Interests to certain Investors for the drilling, testing, geology, lease, completion and equipment of one oil and gas well located in Shelby County, Texas.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

37.   Heartland – Joaquin Prospect #3, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated December 8, 2003.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions

referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

38.     Heartland – Joaquin Prospect #4 & #5, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated February 15, 2004.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

39.     Heartland – Marathon McCoy #1 Re-Drill, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities in the form of Working Interests to certain Investors for the drilling, testing, geology, lease, completion and equipment of oil and gas wells located in Pottawatomie, Oklahoma.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

40.     Heartland – Prairie Fire #1, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated May 1, 2004.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

41.     Heartland – Razorback Development, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky.   It was an issuer of Securities pursuant to a PPM dated August 3, 2006.   Its managing general partner is Heartland Resources.   During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

42.     Heartland – Red River Prospect, LP is a Kentucky Limited Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated September 23, 2002.  Its managing general partner is Heartland Resources. During all times relevant to the transactions referenced in this Complaint, its principal place of business was  942 Searcy Way, Bowling Green, Kentucky, 42103.

43.     Heartland – Schreiber Joint Venture, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities in the form of Working Interests to certain Investors for the drilling, testing, geology, lease, completion and equipment of oil and gas wells.   Its managing general partner is Heartland Resources.   During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

44.     Heartland – Seven Well Development, LP is a Kentucky Limited Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated July 1, 2005.   Its general partner is Heartland Resources.   During all times relevant to the transactions referenced

in this Complaint, its principal place of business was  942 Searcy Way, Bowling Green, Kentucky, 42103.  A copy of its Certificate of Limited Partnership from the Kentucky Secretary of State is provided in the accompanying appendix being filed with this Complaint.  (Evidentiary Appendix at Tab No. 5).

45.    Heartland – Ten Well Development, LP is a Kentucky Limited Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated September 25, 2005.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was  942 Searcy Way, Bowling Green, Kentucky, 42103.  A copy of its Certificate of Limited Partnership from the Kentucky Secretary of State is provided in the accompanying appendix being filed with this Complaint.  (Evidentiary Appendix at Tab No. 6).

46.    Heartland – Twelve Well Development, LP is a Kentucky Partnership organized under the laws of the State of Kentucky.  While stated to be a limited partnership, the Kentucky Secretary of State has no record of any filing by this entity as a limited partnership, and under applicable Kentucky law, this entity is a general partnership.  It was an issuer of Securities pursuant to a PPM dated November 1, 2006.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was  942 Searcy Way, Bowling Green, Kentucky, 42103.

47.    Heartland – Sugar Camp Branch Prospect, GP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated July 9, 2007.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

48.    Heartland – Wolff Joint Venture, LP is a Kentucky General Partnership organized under the laws of the State of Kentucky that was an issuer of Securities pursuant to a PPM dated December 21, 2005.  Its managing general partner is Heartland Resources.  During all times relevant to the transactions referenced in this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, Kentucky, 42103.

49.    Ascension Financial Solutions, Inc. ("AFS"), an Ohio corporation authorized to do business in Kentucky, is ostensibly or was a member NASD, SIPC. AFS is stated to be an NASD member and that its address was 938 Searcy Way, Bowling Green, Kentucky 42103. Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Razorback Development, GP.   Investments in Heartland – Razorback Development, GP were offered through AFS, which purportedly acted as a broker-dealer in connections with the Offering. (Evidentiary Appendix at Tab No. 7).

50.    Music City Energy, Inc. is a Tennessee corporation authorized to do business in Tennessee.  During all times relevant to this Complaint, its principal place

of business was 201 4th Avenue, North, Suite 1900, Nashville, TN 37219. According to Tennessee Secretary of State business records, the registered agent for this company is listed as Donard Haynes (a/k/a D. Mark Haynes).

51.    Heartland Energy LLC is a Nevada Limited Liability company authorized to do business in Tennessee.  During all times relevant to this Complaint, its principal place of business was 201 4th Avenue, North, Suite 1900, Nashville, TN 37219.  According to Tennessee Secretary of State business records, the registered agent for this company is David Stewart.

52.    Stewart & Haynes Properties, LTD is a Kentucky limited partnership authorized to do business in Kentucky.  During all times relevant to this Complaint, its principal place of business was 942 Searcy Way, Bowling Green, KY 42103.  According to Kentucky Secretary of State business records, the general partner is David Stewart.  The limited partners are listed as the Stewart Family Trust, David Stewart, Trustee and the Haynes Family Trust, Mark Haynes, Trustee.

**B.    Plaintiffs/("Investors")**

53.    Frederick P. Clayton, Jr., a resident of Murfreesboro, Tennessee, purchased an interest in Heartland – Coles Branch Prospect #3, LP for $34,500; an interest in Heartland – Client Appreciation Program, GP for $87,062.50; and an interest in Heartland – Seven Well Development, LP for $116,500.  During all times relevant to this Complaint, Frederick P. Clayton, Jr. was an accredited investor (as defined by Rule 501(a) of Regulation D promulgated by the Securities and Exchange Commission).

54.    Kent B. Monypeny, a resident of Memphis, Tennessee, purchased 1 unit in Heartland – Ten Well Development, LP for $79,800. During all times relevant to this Complaint, Kent B. Monypeny was an accredited investor.

55.    Beverley Ackert, a resident of Valhalla, New York, purchased 1 unit in Heartland – Joaquin Prospect #3, GP for $34,125; 1 unit in Heartland – Joaquin Prospect # 4 & #5, GP for $64,625, of which the investment amount transferred and used for 1 unit of Heartland – Eastern Kentucky Development, GP, a Working Interest in Crescent Thunder #1 and a Working Interest in Crescent Thunder #2; 1 unit in Heartland – Coles Branch #2, LP for $14,200; 1 unit in Heartland – Coles Branch Prospect #4 & #5, GP for $33,780; 1 unit in Heartland – Appalachian Development, LP for $36,650; a 1.25% Working Interest in Crescent Thunder #1 for $19,175; a 1.25% Working Interest in Crescent Thunder #2 for $19,175; and a 1.25% Working Interest in State 3 for $20,020. During all times relevant to this Complaint, Beverly Ackert was an accredited investor.

56.    K. E. and Margaret Allen, residents of Winter Haven, Florida, jointly purchased 2 units in Heartland – Twelve Well Development, LP for $159,800; 1.5 units in Heartland – Coles Branch Prospect, GP for 101,595; 1 unit in Heartland – Seven Well Development, LP for $58,250; 3 units in Heartland – Razorback development for $136,208.70; 3 units in Heartland – Coles Branch #2, LP for $42,600; 3 units in Heartland – Coles Branch Prospect #4 & #5, GP for $101,340; all of the limited partnership interests in Heartland – Allen #1 Joint Venture, LP, which owns a 40% Working Interest in a gas well in Knox

County, Kentucky, for $266,780; 3 units in Heartland – Eastern Kentucky Development, GP for $209,700; 3 units in Heartland – Appalachian Development, LP for $109,950; and 1 unit in Heartland – Ten Well Development, LP for $79,900. During all times relevant to this Complaint, K.E. and Margaret Allen were accredited investors.

57. Margaret Allen, a resident of Winter Haven, Florida, individually purchased 2 units in Heartland – Appalachian Development, LP for $73,300. During all times relevant to this Complaint, Margaret Allen was an accredited investor.

58. Burton Arbuckle, a resident of Jonesville, Michigan, purchased 0.50 of a unit in Heartland – Joaquin Prospect #2, GP for $17,062, which was transferred to a 25% Working Interest in Crescent Thunder #1 and a 25% Working Interest in Crescent Thunder #2; 0.25 of a unit in Heartland – Red River Prospect, LP for $10,250, which was transferred to a 25% Working Interest in Crescent Thunder #3; 0.50 of a unit in Heartland – Joaquin Prospect #3, GP for $17,062; 0.50 of a unit in Heartland – Joaquin Prospect #4 & #5, GP for $32,312.50; 25% Working Interest in Byrd #1 for $34,185; 1 unit (25% Working Interest) in Heartland – Marathon McCoy #1 Re-Drill, GP; and other investments in Heartland – Joaquin Prospect, GP; Heartland – Prairie Fire #1, GP and Heartland – Schreiber Joint Venture, GP. During all times relevant to this Complaint, Burton Arbuckle was not an accredited investor.

59. Betty Hurst Butcher, a resident of Fayetteville, Arkansas, purchased 2 units in Heartland – Coles Branch Prospect #3, LP for $34,500; and 1 unit in

Heartland –Eastern Kentucky Development, GP for $69,900. During all times relevant to this Complaint, Betty H. Butcher was an accredited investor.

60.     Betty Hurst Butcher Insurance Trust, Cassidy Houston Hurst, Trustee, of Fayetteville, Arkansas, purchased interest in Heartland – Coles Branch Prospect #3, LP for $14,500.

61.     Perry L. Butcher Revocable Trust of Fayetteville, Arkansas, purchased interest in Heartland – Coles Branch Prospect #2, LP for $14,200.

62.     Katherine L. Kelsey, a resident of Fayetteville, Arkansas, purchased 1 unit in Heartland – Coles Branch Prospect #2, LP for $14,200; and 1 unit in Heartland –Eastern Kentucky Development, GP for $69,900.

63.     B.L. Lanier & Associates, with its principal place of business in Winter Haven, Florida, jointly purchased 1/3 of a unit in Heartland – Client Appreciation Program, GP for $116,083.33 with B.L. Lanier Fruit Co., Inc. and the Sara T. Lanier Irrevocable Trust. During all times relevant to this Complaint, B.L. Lanier & Associates was an accredited investor.

64.     B.L. Lanier Fruit Co., Inc., a Florida corporation with its principal place of business in Winter Haven, Florida, jointly purchased 1/3 of a unit in Heartland – Client Appreciation Program, GP for $116.083.33 with B.L. Lanier & Associates and the Sara T. Lanier Irrevocable Trust. During all times relevant to this Complaint, B.L. Lanier Fruit Co., Inc. was not an accredited investor.

65.     The Sara T. Lanier Irrevocable Trust of Winter Haven, Florida, jointly purchased 1/3 of a unit in Heartland – Client Appreciation Program, GP for $116,083.33 with B.L. Fruit Co., Inc. and B.L. Lanier & Associates and 3

units in Heartland – Seven Well Development, LP for $174,750.  During all times relevant to this Complaint, the Sara T. Lanier Irrevocable Trust was an accredited investor.

66.     Bobby Lanier, a resident of Winter Haven, Florida, jointly purchased 1 unit in Heartland – Seven Well Development, LP for $116,500.  During all times relevant to this Complaint, Bobby Lanier was an accredited investor.

67.     Brent Butler, a resident of Aurora, Colorado, purchased a Working Interest in Crescent Thunder #3 in the amount of $80,080; and 1 unit in Heartland – Coles Branch Prospect, GP for $67,730.  During all times relevant to this Complaint, Brent Butler was an accredited investor.

68.     Peter and Wendy Cobarrubia, residents of Springfield, Oregon, jointly purchased 2 units in Heartland – Hinkle Branch Development, GP for $63,880.  During all times relevant to this Complaint, Peter and Wendy Cobarrubia were accredited investors.

69.     Counter Partnership #2, a general partnership with its principal place of business in Winter Haven, Florida, purchased 3 units in Heartland – Seven Well Development, LP for $174,750; 1 unit in Heartland – Coles Branch #3, LP for $17,250; and an interest in Heartland – Client Appreciation Program, GP for $100,000.  During all times relevant to this Complaint, Counter Partnership #2 was an accredited investor.

70.     The J.C. Counter Revocable Trust, J.C. (Jerry) Counter, Trustee, a resident of Winter Haven, Florida, purchased 1 unit in Heartland – Seven Well Development, LP for $58,250.00; and 1 unit in Heartland – Coles Branch

Prospect #3, LP for $17,250. During all times relevant to this Complaint, The J.C. Counter Revocable Trust was an accredited investor.

71. The Jo Ann Counter Revocable Trust, Jo Ann Counter, Trustee, a resident of Winter Haven, Florida, purchased an interest in Heartland – Client Appreciation Program, GP for $161,187.50. During all times relevant to this Complaint, The Jo Ann Counter Revocable Trust was an accredited investor.

72. The Mary C. Counter Revocable Trust, John A. Counter and Mary C. Counter, Trustees, residents of Tampa, Florida, purchased 1 unit in Heartland – Seven Well Development, LP for $58,250. During all times relevant to this Complaint, The Mary C. Counter Revocable Trust was an accredited investor.

73. Mike DeMaria, a resident of North Carolina, purchased 1 unit of Heartland – Sugar Camp Branch Prospect, GP for $256, 473.60. During all times relevant to this Complaint, Mike DeMaria was an accredited investor.

74. Scott E. Dickerson, a resident of Dover, New Jersey, purchased an interest in Heartland – Client Appreciation Program, GP for $87,062.50; an interest in Heartland – Seven Well Development, LP for $104,750; an interest in Heartland – Ten Well Development, LP for $133,760. During all times relevant to this Complaint, Scott E. Dickerson was an accredited investor.

75. Henry Peter Doble II & James Thomas Mark Doble, JTWROS, residents of Twin Falls, Idaho, purchased an interest in Heartland – Ten Well Development, LP for $24,000. During all times relevant to this Complaint, Henry Peter Doble II & James Thomas-Mark Doble were accredited investors.

76.     Henry Peter Doble II & Justin Alexander Doble, JTWROS, residents of Twin
        Falls, Idaho, purchased an interest in Heartland – Ten Well Development, LP
        for $24,000.  During all times relevant to this Complaint, Henry Peter Doble II
        & Justin Alexander Doble were accredited investors.

77.     Henry Peter Doble, II by Sterling Trust Company, Custodian (Acct #91027), a
        resident of Twin Falls, Idaho, purchased an interest in Heartland – Ten Well
        Development, LP for $31,900.  During all times relevant to this Complaint,
        Henry Peter Doble II was an accredited investor.

78.     Leslie W. and Virginia Dunson, III residents of Winter Haven, Florida, jointly
        purchased 2 units in Heartland – Seven Well Development, LP for $116,500;
        and 0.25 of a unit in Heartland – Client Appreciation Program, GP for
        $87,062.50.   During all times relevant to this Complaint, Leslie W. and
        Virginia Dunson, III were accredited investors.

79.     Cassidy Houston Hurst, a resident of Fayetteville, Arkansas, purchased 2 units
        in Heartland – Coles Branch #2, LP for $28,400; 1 unit in Heartland – Coles
        Branch #3, LP for $17,250; .50 units in Heartland – Coles Branch Prospect,
        GP for $33,865; 1 unit in Heartland - Appalachian Development, LP for
        $36,650; and 2 units in Heartland – Eastern Kentucky Development, GP for
        $139,800.  During all times relevant to this Complaint, Cassidy H. Hurst was
        an accredited investor.

80.     Millennium Realty, LLC, a limited liability company with its principal place
        of business in Fayetteville, Arkansas, purchased 1 unit in Heartland – Eastern

Kentucky Development, GP for $69,960 and 1 unit in Heartland - Appalachian Development, LP for $36,650.

81.    George D. Wolff, a resident of Wausau, Wisconsin, purchased 3 units in Heartland – Seven Well Development, LP for $174,750; 10 units in Heartland – Ten Well Development, LP for $799,000; 5 units in Heartland – Razorback Development, GP for $199,850; and 1 unit in Heartland – Wolff Joint Venture, LP for $297,500.  During all times relevant to this Complaint, George D. Wolff was an accredited investor.

82.    GDWP, LLC, a limited liability company with its principal place of business in Wausau, Wisconsin, purchased 2.5 units in Heartland – Razorback Development, GP for $102,000.  During all times relevant to this Complaint, GDWP, LLC was an accredited investor.

83.    Peter and Nancy Keim, residents of Mt. Vernon, Washington, jointly purchased 1 unit in Heartland – Razorback Development, GP for $39,950; and 1 unit in Heartland – Ten Well Development, LP for $79,900.  Peter and Nancy Keim, at the times of their investments, were accredited investors in Heartland - Razorback Development, GP and were not accredited investors in Heartland - Ten Well Development, LP.

84.    Peter Lawson and Judith E. Lawson, residents of Sequim, Washington, jointly purchased 0.25 units in Heartland - Twelve Well Development, LP in the amount of $19,975; 0.50 units in Heartland – Seven Well Development, LP for $29,125; and 1 unit in Heartland – Appalachian Development, LP for

$36,650.   During all times relevant to this Complaint, Peter Lawson and Judith E. Lawson were not accredited investors.

85.   Thomas E. and Pam M. Lerach, residents of Chesapeake, Virginia, purchased 0.50 units in Heartland – Ten Well Development, LP for $39,950.  During all times relevant to this Complaint, Thomas E. and Pam M. Lerach were accredited investors.

86.   Laurence M. and Dana Levine, residents of Cave Creek, Arizona, jointly purchased 1 unit in Heartland – Eastern Kentucky Development, GP for $69,900.

87.   Michael and Lisbeth Merrett, residents of Carefree, Arizona, purchased 1 unit in Heartland – Seven Well Development, LP for $58,250; and 0.50 of a unit in Heartland - Ten Well Development, LP for $39,950.  During all times relevant to this Complaint, Michael and Lisbeth Merrett were accredited investors.

88.   Mid-State Energy, Inc., a Florida corporation with its principal place of business in Lake Wales, Florida, purchased 1 unit in Heartland – Eastern Kentucky Development, GP for $69,900.  During all times relevant to this Complaint, Mid-State Energy, Inc. was an accredited investor.

89.   Cheryle Miluszewicus, a resident of Croton on Hudson, New York, purchased 1 unit in Heartland – Coles Branch #2, LP for $14,200; and 1 unit in Heartland – Coles Branch Prospect #3, LP for $17,250.  During all times relevant to this Complaint, Cheryle Miluszewicus was an accredited investor.

90.   Thomas J. Mitchell, Jr., currently a resident of Salem, Alabama, purchased 1 unit in Heartland – Prairie Fire #1, GP for $50,394; 1 unit in Heartland – Ten

Well Development, LP for $69,100; and a Working Interest in Crescent Thunder #3 for $40,040. During all times relevant to this Complaint, Thomas J. Mitchell, Jr. was an accredited investor.

91.    James C. Moore and Joyce J. Moore, residents of Andalusia, Alabama, jointly purchased 1 unit in Heartland – Seven Well Development, LP for $58,250; 0.25 of a unit in Heartland – Eastern Kentucky Development, GP for $17,475; 1 unit in Heartland – Appalachian Development, LP for $36,650; and 0.50 of a unit in Heartland – Ten Well Development, LP for $39,950.  During all times relevant to this Complaint, James C. and Joyce J. Moore were accredited investors.

92.    Tisa L. Oldham, a resident of Jupiter, Florida, purchased 1 unit in Heartland – Seven Well Development, LP for $58,250 and 1 unit in Heartland – Appalachian Development, LP for $36,650.  During all times relevant to this Complaint, Tisa L. Oldham was not an accredited investor.

93.    Bobby and Deborah O'Neil, residents of Gonzalez, Florida, jointly purchased an interest in Heartland – Ten Well Development, LP for $59,925.00.

94.    David and Viola Ricks, residents of Burley, Idaho, jointly purchased 0.50 units in Heartland – Seven Well Development, LP for $29,125; 1 unit in Heartland – Eastern Kentucky Development, GP for $69,900; 3 units in Heartland – Appalachian Development, LP for $109,950; 1 unit in Heartland – Coles Branch #2, LP for $14,200; and 2 units in Heartland – Coles Branch Prospect #3, LP for $34,500.  During all times relevant to this Complaint, David and Viola Ricks were accredited investors.

95.    Michael and Mary Jane Ricks, residents of Rexburg, Idaho, jointly purchased 0.25 of a unit in Heartland – Eastern Kentucky Development, CP for $17,475. During all times relevant to this Complaint, Michael and Mary Jane Ricks were not accredited investors.

96.    F. (Fielding) Clark and Marisa Sauls, residents of Enid, Oklahoma, jointly purchased 1 unit in Heartland – Coles Branch #2, LP for $14,200; 1.5 units in Heartland – Eastern Kentucky Development, GP for $104,850; 1 unit in Heartland – Appalachian Development, LP for $36,650; and a 2.50% Working Interest in Heartland – Crescent Thunder #3 for $40,040. During all times relevant to this Complaint, Fielding and Marisa Sauls were accredited investors.

97.    William R. Siefring Trust, William R. Siefring, Trustee, a resident of Rossburg Ohio, purchased 7 units of Heartland – Prairie Fire #1 for $352,758; 1 unit of Heartland – Joaquin Prospect #4 & #5, GP for $64,625; a 21% Working Interest in Crescent Thunder #1 for $306,800; a 21% Working Interest in Crescent Thunder #2 for $306,800; a 5% Working Interest in Crescent Thunder #3 for $80,080; a 2.50% Working Interest in State #2 for $19,090; and a 2.50% Working Interest in State #3 for $40,040. After William Siefring, the Trustee of the William R. Siefring Trust, complained to Heartland Resources about the poor performance of the investments, the Defendants assigned to the William R. Siefring Trust, pursuant to a Release and Settlement Agreement dated April 11, 2006 (the "Settlement Agreement"), working interests in three gas wells located in Knox County,

Kentucky, and, among other matters set forth in the Settlement Agreement, the William R. Siefring Trust released Heartland Resources and its affiliates from all claims related to the Trust's investment in the Securities previously purchased by the Trust.  The decision by the William R. Siefring Trust to accept interests in three wells, without Heartland Resources having made a tender of cash in the amount of the prior investments by the Trust, constitutes a separate investment decision by the Trust. Accordingly, in the event that the release by the Trust set forth in the Settlement Agreement shall be held valid, the separate investment decision by the Trust to accept working interests in the three wells constitutes a new and separate investment by the Trust in the amount paid for all prior investments by the Trust. Notwithstanding the foregoing, the release set forth in the Settlement Agreement is void as a matter of Kentucky law, Kentucky Securities Act § 292.480 (6), which states, in pertinent part, that "any condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision of this chapter or any rule or order hereunder is void."

98.     Tim and Linda Talbot, residents of Arlington, Washington, jointly purchased 2 units in Heartland – Razorback Development, GP for $79,940 plus $10,865.80 for pipeline assessment for a total of $90,805.80 and 2 units in Heartland – Ten Well Development, LP for $159,800.  Tim and Linda Talbot, at the times of their investments, were accredited investors in Heartland - Razorback Development, GP and were not accredited investors in Heartland - Ten Well Development, LP.

99.    Tim and Marlene Tippett, residents of Pasco, Washington, jointly purchased 1 unit in Heartland – Ten Well Development, LP for $79,900; a partial unit in Heartland – Client Appreciation Program, GP for $87,062.50; and 14 units in Heartland – Razorback Development, GP for $599,580, and a pipeline assessment of $76,060.60 for a total investment of $635,640.60 in Heartland – Razorback Development, GP.  During all times relevant to this Complaint, Tim and Marlene Tippett were accredited investors.

100.    Jerry Vicars, a resident of Eugene, Oregon, purchased 2.50 units in Heartland – Twelve Well Development, LP for $199,750 and 5 units in Heartland – Hinkle Branch Development, GP for $60,100.  During all times relevant to this Complaint, Jerry Vicars was an accredited investor.

101.    Anthony C. and Jean C. Yannette, residents of Palm Beach Gardens, Florida, jointly purchased 1 unit in Heartland – Seven Well Development LP for $58,250.

102.    Daniel Yannette, a resident of Palm Bay, Florida, purchased 1 unit in Heartland – Seven Well Development, LP for $58,000.

103.    Michael Yannette, a resident of Palm Beach Gardens, Florida, purchased 1 unit in Heartland – Seven Well Development, LP for $58,250.  During all times relevant to this Complaint, Michael Yannette was a not an accredited investor.

## FACTUAL BACKGROUND

**A.     The Partnerships**

104.    On or about January 26, 2004, Heartland Resources caused to be issued or participated in the issuance of a private placement memorandum ("PPM") offering investments in Heartland – Coles Branch #2, LP, a Kentucky partnership formed for the purpose of drilling and completing one (1) gas well in Knox County, Kentucky.  (Evidentiary Appendix at Tab No. 8).

105.    On or about February 15, 2004, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland - Joaquin Prospect #4 & #5, GP, a Kentucky general partnership formed for the purpose of drilling and completing two (2) oil and gas wells in Fredricksburg, Shelby County, Texas.  (Evidentiary Appendix at Tab No. 9).

106.    On or about May 1, 2004, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Prairie Fire #1, GP, a Kentucky general partnership formed for the purpose of drilling and completing one (1) oil and gas well in Harper County, Kansas. (Evidentiary Appendix at Tab No. 10).

107.    On or about August 22, 2004, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland - Coles Branch Prospect, GP, a Kentucky general partnership formed for the purpose of drilling and completing one (1) gas well in Knox County, Kentucky.  (Evidentiary Appendix at Tab No. 11).

108.   On or about November 1, 2004, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Eastern Kentucky Development, GP, a Kentucky general partnership formed for the purpose of drilling and completing ten (10) gas wells in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 12).

109.   On or about March 3, 2005, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Allen #1 Joint Venture, LP, a Kentucky limited partnership formed for the purpose of drilling and completing one (1) gas well in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 13).

110.   On or about April 1, 2005, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Appalachian Development, LP, a Kentucky limited partnership formed for the purpose of drilling and completing five (5) gas wells in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 14).

111.   On or about May 19, 2005, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Coles Branch Prospect #3, LP, a Kentucky limited partnership formed for the purpose of drilling and completing one (1) oil or gas well in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 15).

112.   On or about July 1, 2005, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Seven Well Development, LP, a Kentucky limited partnership formed for the

purpose of drilling and completing seven (7) gas wells in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 16).

113.    On or about September 25, 2005, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Ten Well Development, LP, a Kentucky limited partnership formed for the purpose of drilling and completing ten (10) gas wells in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 17).

114.    On or about December 21, 2005, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Wolff Joint Venture, LP, a Kentucky partnership formed for the purpose of drilling and completing one (1) gas well in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 18).

115.    On or about January 17, 2006, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Client Appreciation Program, GP, a Kentucky general partnership formed for the purpose of drilling and completing five (5) gas wells in Knox County, Kentucky. (Evidentiary Appendix at Tab No. 19).

116.    On or about March 6, 2006, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Coles Branch Prospect #4 & #5, GP, a Kentucky general partnership formed for the purpose of drilling and completing two (2) gas wells in Knox, County, Kentucky. (Evidentiary Appendix at Tab No. 20).

117.    On or about August 3, 2006, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Razorback Development, GP, a Kentucky general partnership formed for the purpose of drilling and completing eight (8) gas wells in Knox County, Kentucky.   Investments in Heartland – Razorback Development, GP were offered through Ascension Financial Solutions, Inc., ostensibly a Member NASD, SIPC.  (Evidentiary Appendix at Tab No. 21).

118.    On or about November 1, 2006, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Twelve Well Development, GP, a Kentucky general partnership formed for the purpose of drilling and completing twelve (12) gas wells in Knox County, Kentucky.  (Evidentiary Appendix at Tab No. 22).

119.    On or about July 9, 2007, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Sugar Camp Branch Prospect, GP, a Kentucky general partnership formed for the purpose of drilling and completing four (4) gas wells in King County, Kentucky.  (Evidentiary Appendix at Tab No. 23).

120.    On or about April 1, 2005, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Hinkle Branch Development, GP a Kentucky general partnership formed for the purpose of drilling and completing two (2) gas wells in Knox County, Kentucky.  (Evidentiary Appendix at Tab No. 24).

121. On or about September 23, 2002, Heartland Resources caused to be issued or participated in the issuance of a PPM offering investments in Heartland – Red River Prospect, a Kentucky limited partnership formed for the purpose of drilling and completing five (2) gas wells in Red River Parish, Louisiana. (Evidentiary Appendix at Tab No. 25).

122. Heartland Resources issued and sold Securities in the form of Working Interests to certain Investors for investments in Heartland – Joaquin Prospect, GP, a Kentucky general partnership formed for the purpose of drilling and completing one (1) oil or gas well located in Shelby County, Texas.

123. Heartland Resources issued and sold Securities in the form of Working Interests to certain Investors for investments in Heartland – Marathon McCoy #1 Re-Drill , GP, a Kentucky general partnership formed for the purpose of drilling and completing one oil or gas well on the Southeast Brooksville Prospect located in Pottowatomie County, Oklahoma.

124. Heartland Resources issued and sold Securities to certain Investors for investments in Heartland – Shreiber Joint Venture, GP, a Kentucky general partnership formed for the purpose of drilling and completing oil or gas wells.

125. The PPMs state that Heartland Resources is the General Partner/Program Manager of each of the Partnerships.

**B.    Working Interests Sold By Heartland Resources, Inc.**

126. Heartland Resources issued and sold Securities in the form of Working Interests to certain Investors for the drilling, testing, geology, lease, completion and equipment of oil and gas wells in the Crescent Thunder

Prospect located in Logan County, Oklahoma.  Investors bought interests in these wells known as Crescent Thunder #1, Crescent Thunder #2 and Crescent Thunder #3.

127. Heartland Resources issued and sold Securities in the form of Working Interests to certain Investors for the drilling, testing, geology, lease, completion and equipment of oil and gas wells on the Southeast Brooksville Prospect located in Pottawatomie County, Oklahoma.  Investors bought interests in these wells known as State #2 and State #3.

128. Heartland Resources issued and sold Securities in the form of Working Interests to certain Investors for the drilling, testing, geology, lease, completion and equipment of oil and gas wells on a property known as Byrd #1 located in Somerset, Kentucky.

129. The matrix exhibited at Tab No. 26 of the Evidentiary Appendix sets out the investments made by Plaintiff Investors in the various Securities offered, issued, promoted and sold by the Defendants and reflects which Investors were accredited (as defined in Rule 501(a) of Regulation D).

**D.    The Defendants' Sale of the Securities**

130. Through general solicitations in the form of "cold calls" to prospective investors with whom the Defendants did not have a prior relationship; through printed materials; and through the distribution of PPMs, Defendants offered and sold interests in the Partnerships and Working Interests (collectively, the "Securities") to, among others, the Investors in the amounts set forth in the above section entitled "Plaintiffs/Investors."

131.    Heartland Resources employed salespeople to sell the Securities.    No registered broker/dealer or NASD member was utilized to sell any of the Securities.  Nevertheless, the Defendants engaged in the consistent solicitation and sale of Securities using unregistered salesmen who were paid commissions or other payments which were substantively commissions. Some of these other payments or commissions were characterized by Heartland Resources as "profit sharing." During certain times relevant to this Complaint, Heartland Resources had in effect a compensation plan described by Heartland Resources as "Qualification of Profit Sharing."   (Evidentiary Appendix at Tab No. 27).   This profit sharing plan stated that agents of Heartland Resources (who were in essence salespeople) would receive "shares of any and all profit sharing declared by the owners of Heartland Resources." These profits to be shared were substantively commissions from the sale of securities.

132.    Because of the commission payments to unregistered salespeople under the guise of "profit sharing", the use of general solicitations to offer the Securities to be sold, and the failure to provide all the information required to be provided to Investors who were not accredited pursuant to Regulation D, Rule 502 (17 CFR 230.502), Rule 506 of Regulation D, which provides an exemption from registration under Federal securities laws, was not applicable to any of the Offerings made by or under the control of the Defendants.  Thus, there were no transactional exemptions from registration under Federal, Tennessee or Kentucky laws.  Heartland Resources did not disclose to any of

the Investors that no exemptions from registration were available. To the contrary, Heartland Resources made to each Investor the material misstatement that each of the Offerings was exempt from registration and led state securities regulators, through Form D filings, to believe the same.

133. None of the Offerings of Securities referenced in the Complaint was the subject of any registration statement filed with the Securities and Exchange Commission or any state securities commission or division by the issuer thereof.

134. Heartland Resources furnished suggested call scripts to the salespeople to follow when soliciting potential investors through the use of cold calls. (Evidentiary Appendix at Tab No. 28).

135. During various times relevant to this Complaint, Heartland Resources utilized a "job description" to describe the duties and qualifications of what Heartland Resources characterized as a "Vice-President," who in essence was a member of the Heartland Resources' sales team engaged in the sale of Securities to potential investors. In this Heartland Resources' document entitled "Job Description For Vice Presidents of Account Management", Heartland Resources stated that "[a] Vice-President of Heartland Resources Inc. is required to enlist new clients into a business relationship with the firm. In regards to clients investing in a Heartland Resources venture, a Vice-President will only be allowed to talk to a prospective client and give general information about Heartland Resources until that Vice-President has passed his/her Series 63 exam." (Evidentiary Appendix at Tab No. 29).

136.   There were Vice-Presidents, agents or salesmen of Heartland Resources who solicited prospective clients for the sale of securities without Series 63 certification.  Even those salesmen who had received Series 63 certification operated out of a "boiler room" style facility where they made cold calls to prospective investors whose names and phone numbers were on lists purchased by Heartland Resources from commercial marketing firms.

137.   The Defendants collectively promoted or caused the issuance of securities from at least 20 issuers over a period exceeding four (4) years for an aggregate consideration of at least 40 million dollars ($40,000,000).

138.   Each of the Offerings promoted by the Defendants contained provisions for payment of the purchase price of the Securities in two installments. The first was payable upon subscription for the Securities in an amount described in each PPM to be necessary for the drilling of wells. The second installment was to be paid by the investor in the event Heartland Resources or Heartland Operating deemed the test results taken from the well to indicate the well to be worthy of completion and equipping. In that event (which almost always, if not always, occurred), the Investor would be called upon to make a second installment payment to be used for further testing, completion and equipping of the wells. (Evidentiary Appendix at Tab No. 30).

139.   In the event of a request for a second installment payment, if an Investor, for any reason, chose not to make the payment, the Investor was not personally liable for the payment but, rather, would forfeit his Working Interest in the well or his Units in the Defendant Issuer Partnership. Given that the Investor

was not personally obligated to make the second installment payment, whether to make the payment required another investment decision by the Investor, and, thus, constituted a second securities offering by Heartland Resources or by that particular Defendant Issuer. No PPMs were distributed by Heartland Resources or any Defendant Issuer Partnership in connection with any second installment payments.

140.     Neither Heartland Resources nor any of the Issuer Partnerships in which it sold interests filed any Forms D with the Securities and Exchange Commission or with any state securities administrator with respect to any request for second installment payments.   As a result, under applicable Federal, Kentucky and Tennessee securities laws, each such request was a separate offering of Securities for which there were no transactional exemptions from the registration of the Securities.

**E.     The Defendants' Fraudulent Scheme**

141.     By and through the Offerings, the Defendants intentionally orchestrated and executed a conspiracy and scheme to defraud and deprive the Investors of money by selling the Securities to the Investors under the guise that the Securities were offered pursuant to exemptions from registration under the Securities Act (which they were not) and various state securities acts (which they were not).

142.     The Defendants used the PPMs, the Sales Materials, and the unregistered salespeople to execute the conspiracy and  fraudulent scheme by creating the appearance that investors in the Securities would be protected under the

securities laws and by creating the false and misleading appearance that the material information communicated in the Offerings by the Defendants was legally and factually true and complete.

143.   Each of the PPMs contains boilerplate language, similar to that which would appear in offerings for oil and gas securities that are either legally registered or exempted from registration pursuant to the Securities Act and state securities acts. Facts that influenced or would have influenced the Investors' decisions to invest in the Securities were misrepresented or omitted in the PPMs and the Sales Materials, as described in Paragraphs 154 through Paragraphs 170 of this Complaint.

144.   The Investors relied on the Defendants' representations and invested in the Securities by signing subscription agreements with Heartland Resources ("Subscription Agreements") and/or contracts for Working Interests and by paying consideration for the Securities.

145.   The Defendants have defrauded the Investors and have embezzled the Investors' money by their substantial and material misrepresentations and omissions.

146.   With regard to assessments for the completion and equipping of wells, Heartland Resources has admitted that Investors were assessed for the completion and equipping of at least 24 wells in Knox County, Kentucky, interests in which were owned by 10 Defendant Issuer Partnerships, in an amount in excess of $6.5 million and has acknowledged that these 24 wells were not thereafter completed and equipped. In February, 2008, counsel for

the Investors sent a letter to Hunter Durham, attorney for Heartland Resources, demanding the total amount of monies requested as second installments for completion and equipping of the 24 wells and the location of the completion funds.  As of the date of the filing of this Complaint, no answer has been received with respect to these questions.  Two Investors who are plaintiffs in this action, Kenneth Allen and Jerry Counter, have signed declarations which address the statements set forth herein and to which a list of the 24 uncompleted wells is attached.  (Evidentiary Appendix at Tab Nos. 31 and 32).

147.   The collection by Heartland Resources of millions of dollars for the purposes of completing and equipping 24 wells, and the intentional failure to complete and equip the 24 wells, together with, upon information and belief, the commingling of such funds with other funds maintained by Heartland Resources, constitutes fraud. Further, Heartland Resources' failure to provide the information so demanded is in violation of applicable Kentucky law and the partnership agreements of each relevant Defendant Issuer Partnership.

148.   Each PPM contained an AFE (Authority for Expenditures), which described the use of offering proceeds. The amount of offering proceeds attributable to each well in a Heartland Resources-sponsored program exceeded by 200%-300% the costs of drilling, completing and equipping wells had Heartland Resources engaged third-parties to perform such services. The amount of offering proceeds per well also included substantial amounts for "administrative-general expenses" and "contingency," which often ran as high

as 55% of the total offering proceeds.  Further, notwithstanding that all wells in Knox County, Kentucky were to be drilled in relatively close geographic proximity, to the same formation and to approximately the same depth, the AFEs for the Defendant Issuer Partnerships differed considerably in the projected total costs per well, in some instances by as much as 60%. (Evidentiary Appendix at Tab No. 33).

149.   Each of the PPMs indicated that offering proceeds would be administered under a "development and turn-key drilling agreement," pursuant to which Heartland Resources, as the "operator," would receive a fixed fee for drilling and completion of wells. Within the "fixed fee," all expenses relating to drilling, testing, completion and equipping were to be paid. In the event that such costs exceeded the amount of the "fixed fee," Heartland Resources, as the operator, would be liable to pay the excess. This was generally described in the PPMs as a means by which the risks inherent in such activities were to be minimized. However, it was virtually impossible that wells could not be drilled and completed within the "fixed fee" amount, since the fixed fee charges by Heartland Resources were grossly in excess of fair market costs. PPMs disclose that Heartland Resources expected to make a profit from its drilling activities, but did not disclose the amount of its anticipated profits, that its charges were grossly excessive or what third party costs would have been.

150.   Each PPM disclosed that the Defendant Issuer would own a percentage of the working interests in program wells, ranging from a low of 50% to a high of

80%.   The PPMs did not disclose that Heartland Resources or its affiliates retained a portion of the working interest in each program well, ranging from a low of 20% to a high of 50%, in addition to, in many instances, overriding royalty interests in the wells. Further, no disclosure was made to the effect that Investor funds were the sole funds to be used with respect to the drilling and completion of all wells and that Heartland Resources or its affiliates were receiving or could receive valuable economic interests in wells without any capital expenditure by Heartland Resources. Accordingly, the economic interest of Investors in each well ranged from a low of 35% to a high of 56%, notwithstanding that PPMs stated that "all Production net revenues [proceeds from the sale of gas or oil] will be allocated among the Investors".

151.   PPMs stated that funds for each offering would be held in "program accounts" until used for purposes set forth in AFEs. Upon information and belief, once offering proceeds were received, those proceeds were not segregated, but rather became a part of funds commingled by Heartland Resources with proceeds of other offerings. Investors were directed to make checks in the name of Defendant Issuers. In this regard, the PPMs stated that "the Program Manager [Heartland Resources] is accountable to the Participants [Investors] as a fiduciary and must act with integrity and good faith in connection with the Participants' activities. These fiduciary obligations are in addition to the duties and obligations of the Program Manager set forth in this Agreement".

152.   The PPMs employed by Heartland Resources for Defendant Issuers which were mainly general partnerships do not disclose the nature or extent of the

general liability risks to Investors. As general partners, Investors were liable for all liabilities of the partnerships in which they invested, including with regard to personal injury (a significant risk inherent in the drilling and completion of wells, which is a dangerous activity) or environmental violations. Further, there was no disclosure that the Defendant Issuers had or had not obtained insurance to cover their liabilities. Instead, the PPMs state that Heartland Resources would use its best efforts to require its contractors or sub-contractors to purchase insurance coverage, but included the curious comment that Heartland Resources would not insist on such coverage. To further compound the inadequacy of disclosure, the PPMs also stated that "Participants' [Investors'] assets outside of their investment will not be subject to claims of third parties for Drilling Program liabilities arising out of its business and operations." This comment is patently incorrect as a matter of Kentucky general partnership law and materially misleading.

153.   Heartland Resources and Heartland Operating, under the PPMs and Operating Agreements, had the contractual right to select the locations of wells to be drilled. Accordingly, Investors had no idea where wells would be located other than on leases obtained by Heartland Resources or Heartland Operating (the total acreage of which was described to be approximately 20,000.)  In addition to Investors not being informed of the location of wells prior to drilling, they were not provided with the production performance data of nearby wells (whether controlled by Heartland Resources or third parties.)  In fact, in none of the PPMs were Investors provided with the actual production

information of any well operated by Heartland Resources or Heartland Operating or from adjacent third party wells.

154. Each PPM contained a "geology report" which provided, very generally, a description of sub-surface strata in the eastern Kentucky area which had traditionally produced oil and gas. In addition, most of the PPMs for eastern Kentucky wells contained a "summary" which was ostensibly submitted by Clay Hutchison, president of Advanced Imaging and Exploration of Owensboro, Kentucky. The summary included the statements that "it is highly probable that commercial natural gas production from the Ohio/Devonian Shale will be found in every well" and that, "once established, this production will have great longevity, which could produce well into the next century." Given that all of the Offerings promoted by Heartland Resources were made within the first decade of the 21st century, the report is either fabricated, a gross and material misstatement or pirated from a report actually prepared for another company in the last decade of the 20th century.   In any event, it is grossly and materially misleading.

155. The PPMs and accompanying Sales Materials utilized various investment scenarios which calculated the range of possible annual returns to Investors. These projected returns were a product of various levels of possible well production (expressed in MCFPD or thousands of cubic feet per day – although several of the PPMs described the term MCFPD to mean "millions of cubic feet per day") times various gas prices per MCFPD. In these projections, annual returns were projected to be as high as 2,270% per year

and were based upon a production of 7,000 MCFPD. Projection results differed widely among the various PPMs, notwithstanding that the overwhelming majority of wells drilled by Heartland Resources and Heartland Operating Company were, with respect to programs targeted for Knox County, Kentucky, all located within the same geographic area and were to be drilled to approximately the same depth. Indeed, the contents of the projections, which constitute "forward-looking statements", appear to have been concocted (as were the AFEs) to fit within the desired gross Offering proceeds of each particular Offering. Notwithstanding that boilerplate language contained in the PPMs indicated that no well could be guaranteed to be a success, the production assumptions (expressed in MCFPD) utilized in the projections were considerably in excess of the actual annual production of wells (including Heartland Resources operated wells and third party operated wells) in Knox County, Kentucky.  In no PPM did Heartland Resources disclose the production performance history of wells which it controlled.  Had it done so, prospective Investors would have been informed of production results considerably lower than production assumptions used in the projections.

**F.**    **Material Misrepresentations, Inconsistent Statements, and Omissions in the PPMs and Agreements for Working Interests in Oil and Gas Wells**

   **1.**    **Material Misrepresentations**

156.   The Alabama Securities Commission issued a Cease and Desist Order on March 22, 2006 against Heartland Resources, Andrew A. Flowers (a Heartland Resources salesman), David A. Stewart and D. Mark Haynes (the

"Respondents"). The Order required that the Respondents immediately cease and desist from further offers and sales of any security in the State of Alabama. This Order was amended on April 27, 2006. (Evidentiary Appendix at Tab No. 34).

157. Prior to March 22, 2006, Heartland Resources was made aware that the Alabama Securities Commission was investigating the securities sales activities of the Respondents, but Heartland Resources failed to include any statement regarding the investigation in the PPMs that it issued prior to that date. In all of its PPMs issued after March 22, 2006, Heartland Resources stated that it was "currently negotiating" with the state of Alabama concerning a "temporary Cease and Desist Order in regards to a regulatory matter" and that "[Heartland Resources] believes that it has a good and valid defense against the items presented in the Order." The Cease and Desist Order (both the initial Order and the amended Order) were final Cease and Desist Orders, and no temporary Cease and Desist Order was ever issued. Therefore, negotiations were not possible. Furthermore, every subsequent PPM issued by the Defendants failed to disclose that the Respondents were banned from selling securities in the State of Alabama. The individual Defendants D. Mark Haynes, David A. Stewart, Hunter Durham and Richard E. Stewart each had actual knowledge of the facts and directives of the Cease and Desist Order, and each continued their participation in the fraudulent scheme without disclosing to subsequent Investors the true nature of the Cease and Desist Order.

158.   In July of 1998, the Wisconsin Department of Financial Institutions –
       Division of Securities issued an Administrative Order of Prohibition against
       David A. Stewart and D. Mark Haynes, among others, including ROBO
       Enterprises (discussed in the immediately succeeding paragraph), pursuant to
       which the Respondents were prohibited from unlicensed broker-dealer and
       agent activity resulting from violations of anti-fraud provisions of applicable
       securities laws.  Every PPM issued by Heartland Resources from its inception
       failed to disclose the existence of the Wisconsin Order.      (Evidentiary
       Appendix at Tab No. 35).

159.   David A. Stewart and D. Mark Haynes were employees of or affiliated with
       ROBO Enterprises, Inc., a company headquartered in Bowling Green,
       Kentucky ("ROBO"), which was the subject of numerous Cease and Desist
       Orders by various state securities administrators.  ROBO is notorious for its
       fraudulent securities sales activities, having, by many accounts, raised over
       $100 million from investors, and five of its employees have pled guilty to
       federal criminal charges and one other is currently under indictment.  David
       A. Stewart served as Senior Vice President and a securities salesman while
       employed by ROBO.  D. Mark Haynes served as Vice President of Project
       Planning and as a securities salesman while employed by ROBO.  According
       to the United States of America's  Indictment filed against David A. Stewart
       on April 5, 2006, Stewart was indicted for federal tax evasion for failing to
       file federal income tax returns and to pay federal income taxes on income
       earned from his employment at ROBO during calendar years 1999-2002.

(Evidentiary Appendix at Tab No. 36).   David A. Stewart pled guilty to all counts of the indictment as evidenced by the Plea Agreement he signed on April 16, 2007. (Evidentiary Appendix at Tab No. 37).

160.   The Defendants disclosed David A. Stewart's and D. Mark Haynes' prior employment for ROBO in various PPMs issued by Heartland Resources, but failed to disclose the numerous securities violations and actions of state securities regulators against ROBO during their employment.   Heartland Resources also failed to disclose in its PPMs the fact that Heartland Resources employed several of ROBO's securities salesmen.

161.   None of the PPMs distributed by Heartland Resources after April 2007 disclosed that David A. Stewart had pled guilty to federal income tax evasion relating to his intentional failure to pay federal income taxes on income earned during the period he worked for ROBO.   In addition, none of the PPMs distributed by Heartland Resources after April 2006 and prior to April 2007 disclosed that David A. Stewart had been indicted for federal income tax evasion, nor was it disclosed, prior to April, 2006, that David A. Stewart had intentionally engaged in the evasion of federal income taxes from 1999 to 2002.  Notwithstanding that David Stewart had not yet been indicted, the fact that he had knowingly and intentionally engaged in federal income tax evasion is a fact material to a decision by Investors to invest in Heartland Resources offered Securities.  The Defendants issued PPMs that contained biographical information about David A. Stewart and his involvement in and experience with the oil and gas industry.  This information was calculated by

Defendants to tout David A. Stewart as an experienced business executive on which the prospective investors could rely to manage their investments. The fact that David A. Stewart was a felon engaged in criminal tax fraud was information that was material to each Plaintiff Investor, yet Defendants never disclosed that information and instead intentionally and knowingly made false statements in order to hide the information from the Investors.

162.  PPMs distributed after David Stewart's indictment stated that Heartland Resources was no longer owned by David A. Stewart and Mark Haynes but, together with at least Heartland Operating, Heartland Drilling and Heartland Excavating, was owned by Heartland Holding, which was, in turn, owned and controlled by the Stewart Family Trust and the Haynes Family Trust. David A. Stewart is and has at all times been the Trustee of the Stewart Family Trust, and Mark Haynes is and has at all times been the Trustee of the Haynes Family Trust. Further, PPMs issued by Heartland Resources (at least after David A. Stewart's indictment) indicated that, with respect to David A. Stewart and Mark Haynes, "they have resigned from management of the Company [Heartland Resources] due to personal reasons but remain active in the management of the various entities listed below [Heartland Operating, Heartland Drilling and Heartland Excavating]". The "personal reason" attributable to David A. Stewart was that he had been indicted for federal income tax evasion, a statement which is materially misleading. Regardless of whether the stated reason for David Stewart's resignation was a feeble and

callous attempt at humor or intentionally crafted to deceive Investors, the statement is knowingly and grossly misleading.

163. Notwithstanding his indictment, David A. Stewart continued to be the trustee of the Stewart Family Trust, which controlled, directly or indirectly, all Heartland operating companies associated with the securities offerings of the various Defendant Issuer Partnerships. In addition, he continued, except with respect to Heartland Resources, to be an officer and director of all of the other Heartland companies. On information and belief, David A. Stewart has continued to be involved in major decisions affecting the Heartland companies and their operating and securities offering activities, even after having reported to prison.

164. In order to effectuate its unlawful sales of securities, Heartland Resources, on behalf of the various Defendant Issuers, employed at any time between 12 and 18 salesmen who "cold called" investors, working from lists of prospective investors purchased by Heartland Resources. Each salesman was provided with a script from which he described various Heartland Resources securities offerings. At no time was any registered NASD broker-dealer engaged or employed to sell securities. Several Heartland securities salesmen were registered as "agents" with the Kentucky Securities Division, but were not registered with any other state securities division which authorized the use of "agents". The "agent" concept is not one which is recognized by or adopted under Federal securities law, and the use of such agents by Heartland Resources and the payment of commissions to those agents, in each case

without the engagement of a registered NASD broker-dealer, together with the use of general solicitation techniques in order t sell the Securities, means that no offering of securities by Heartland Resources was in compliance with Rule 506 of Regulation D (17 CFR 230.506). Without compliance with Rule 506, none of the Offerings by Heartland Resources qualified for an exemption from registration of the Securities under Federal, Tennessee or Kentucky law.

165. Heartland securities salesmen were paid commissions or other compensation related to sales of Securities in an amount equal to between 10 and 15% of total Offering proceeds, notwithstanding that Heartland PPMs stated that "the Program Manager [Heartland Resources] will not receive any commissions in connection with the sale of the Units offered herein. The Program Manager will offer the Units on a best effort, non-commission basis through officers and directors, but reserves the right to employ registered salesmen who would be paid commissions or bonuses for such sales." (See Declaration of Paul K. Johnson, Evidentiary Appendix at Tab No. 38). As stated above, Heartland Resources' securities salesmen were paid commissions, although, upon information and belief, Heartland Resources maintained what it termed a "profit sharing plan" in which Heartland securities salesmen participated, with each salesman receiving a weekly or monthly draw and a share of "profits" calculated as a percentage of securities sales proceeds.

**2.      Material Misleading Statements**

166. The various Heartland Issuer Partnerships, in their Form D filings made with state securities administrators and with the United States Securities and

Exchange Commission, stated that no sales commissions would be paid from offering proceeds. Almost all of the Forms D filed by the Defendant Issuers were executed by Heartland Resources on behalf of each Defendant Issuer and signed by Mark Haynes. In addition, issuers of securities are required by most state securities laws to file, together with a copy of Form D, a Uniform Consent Service of Process on Form U-2. Each of the Forms U-2 filed by Heartland Resources on behalf of the Defendant Issuers was signed by Mark Haynes and executed by Hunter Durham as a notary public. (Evidentiary Appendix at Tab No. 39).

167. The failure to disclose the payment of sales commissions was intentional, notwithstanding that Form D contains a statement that "intentional misstatements or omissions of fact constitute federal criminal violations." In addition, almost all of the PPMs contain an "AFE," or "Authority For Expenditures." None of the AFEs indicated that any sales commissions would be paid to Heartland Resources' securities salesmen. (Evidentiary Appendix at Tab No. 33).

**3.       Material Omissions**

168. The PPM for at least one of the offerings, "Heartland-Razorback Development, GP", stated that the securities were to be offered through "Ascension Financial Solutions, Inc. Member NASD, SIPC." ("AFS"). AFS is stated to be an NASD member and that its address was 938 Searcy Way, Bowling Green, Kentucky 42103 (in a building immediately adjacent to the "headquarters building" of Heartland Resources, which is at 942 Searcy Way).

The date of the prospectus for the Heartland-Razorback Development, GP offering is August 3, 2006. Ascension Financial Solutions, Inc., an Ohio corporation, was an NASD member.  Sometime in mid-2006, it was acquired by Heartland Holding, the owners of which are the Haynes Family Trust and the Stewart Family Trust.

169.   Upon information and belief, in July 2006, Heartland Holding formed a corporation under Kentucky law, Ascension Financial Solutions of Kentucky, Inc. (the name was later changed to Ascension Financial Solutions, Inc.). Ascension Financial Services, Inc., an Ohio corporation, applied for registration as a broker-dealer in Kentucky in July 2006. The application was not approved. This means that Ascension Financial Solution, an Ohio corporation, cannot have been operating lawfully as a broker-dealer from Kentucky.  Ascension Financial Services of Kentucky, Inc., a Kentucky corporation (later Ascension Financial Services, Inc.) never applied for a broker-dealer registration in Kentucky. Accordingly, the statement in the PPM for Heartland-Razorback Development, GP that the securities were offered through a registered broker-dealer and an NASD member was false. Moreover, Ascension Financial Services, a Kentucky corporation, was formed by Heartland Holding, and Richard E. Stewart, the current president of Heartland Resources, executed the Ascension Financial Services of Kentucky, Inc. formation documents on behalf of Heartland Holding.  (Evidentiary Appendix at Tab No. 7).

170.   Upon information and belief, Kenneth G. Mueller was an officer of AFS, an Ohio corporation, and of AFS of Kentucky, Inc.  The securities registration in Kentucky of Kenneth Mueller was suspended effective February 22, 2006, and he was the subject of a Settlement Agreement and Final Order, to which he agreed, issued by the Kentucky Office of Financial Institutions. (Evidentiary Appendix at Tab No. 40).

171.   The statement in the PPM for Heartland-Razorback Development, GP that an NASD member and lawfully registered broker-dealer would be utilized to effectuate the sales of Securities was patently false, and the purported utilization of an NASD member lent credibility to the Offering that would not otherwise have existed. Moreover, prospective investors in the Offering were not advised that:  (a) Ascension Financial Solutions, Inc. (whether it was AFS, an Ohio corporation, or AFS, a Kentucky corporation, is not disclosed) was not registered as a broker-dealer in Kentucky and therefore not authorized to sell the Securities in Heartland-Razorback Development, GP;

(b) Heartland Holding, which controlled each of the Defendant Issuer Partnerships, of which Heartland-Razorback Development, GP is one, was also controlling AFS, Inc.; and

(c) Kenneth G. Mueller, the president of Ascension Financial Solutions, Inc., had earlier that year (2006) had his securities registration suspended by the Kentucky Office of Financial Institutions. These constitute material omissions with regard to the Heartland-Razorback Development, GP Offering.

172. Over a period of approximately 4.5 years, Heartland Resources sold over $40 million of Securities for the ostensible purpose of drilling and completing oil and gas wells. Upon closer inspection, Heartland Resources was the vehicle by which David A. Stewart and D. Mark Haynes sought to enrich themselves at the expense of the Investors. While wells were drilled and, on occasion, completed, the real purpose of the enterprise was to utilize the attraction of rising energy prices to create substantial cash for David Stewart, Mark Haynes and the beneficiaries of their largess.

The conspiratorial scheme created by David Stewart and Mark Haynes operated and was structured as follows:

(a) Heartland Resources acted as the general or managing partner of partnerships in which Investors bought Securities;

(b) The Securities were priced as much as 300% of the actual costs of drilling and completing wells and of operating the business (a fact not disclosed to Investors);

(c) Companies related to Heartland Resources, such as Heartland Operating, Heartland Excavating and the like, were formed, purportedly to provide various well related services, but which were in fact funnels or repositories for cash raised from Investors;

(d) Prior to David Stewart's indictment, all Heartland related companies were owned by David Stewart and Mark Haynes, and David Stewart and Mark Haynes were the sole officers and directors of each company. Following

that indictment, the ownership of the Heartland companies was transferred to Heartland Holding, a newly formed company the owners of which were The Stewart Family Trust, David Stewart, trustee, and The Haynes Family Trust, Mark Haynes, trustee. The board of directors of Heartland Holding were Mark Haynes and family members of David Stewart. Structurally, only one thing changed. David Stewart and Mark Haynes resigned as officers and directors of Heartland Resources, and David Stewart installed his brother, Richard Stewart, as the sole officer and director.

(e)     Notwithstanding the existence of multiple companies, the entire effort mounted by David Stewart and Mark Haynes was a single enterprise. Monies were commingled, each constituent company was undercapitalized and David Stewart and Mark Haynes controlled every aspect of the enterprise. Accordingly, for legal purposes, the various Heartland companies should be treated as one.

(f)     In the course of their securities sales activities, Heartland Resources, David Stewart and Mark Haynes violated virtually every federal and state securities law applicable to the issuance of securities. As examples, they sold the Securities without disclosing that state securities regulators had taken action against them (the Wisconsin and Alabama Cease and Desist Orders), that David Stewart had been indicted and then convicted of federal income tax evasion, that the Securities were sold without having been registered (in fact, they stated that the sales of the Securities were

exempt from registration), and that the securities salesmen employed by Heartland Resources were not lawfully licensed.

(g)     Since oil and gas revenues were minimal, the proceeds from the illegal sale of Securities financed the operations of the entire Heartland enterprise. It was, in short, an illegal securities sales company and not an oil and gas company. When Investor dissatisfaction mounted in 2007, Heartland Resources utilized two new companies, Heartland Energy, LLC, a Nevada limited liability company authorized to do business in Tennessee, and Music City Energy, Inc., a Tennessee corporation, as the general partners of at least two additional securities offerings (Heartland Energy-Mammoth Development, L.P., June, 2007, and Music City-Horizontal Drilling, LLP, November, 2007). The PPMs for these offerings were in virtually the same form as the PPMs for Heartland Resources offerings, but the relationship of David Stewart or The Stewart Family Trust to Heartland Energy, LLC and the relationships of David Stewart and Mark Haynes to Music City Energy, Inc. were not disclosed. Heartland Energy and Music City Energy were ostensibly headquartered in Nashville, Tennessee, but calls to the Nashville office were automatically routed to the offices of Heartland Resources in Bowling Green, Kentucky, and Heartland Resources salesmen were instructed to inform prospective investors that they worked for Heartland Energy or Music City Energy and were physically situated in Nashville, Tennessee.

(See Declaration of Paul K. Johnson, Evidentiary Appendix at Tab No. 38).

(h)    On information and belief, Heartland Resources has discontinued or is winding down many of its activities. The employment of many of its personnel, including all of its securities salesmen, has been terminated, and Heartland Resources is desperately seeking to sell assets, while at the same time refusing to account for over $6.5 million of Investor cash raised but acknowledged not to have been spent for the intended purpose of completing wells.

(i)    Heartland Resources and Heartland Holding, and their companion companies, the fraudulent enterprise of David Stewart and Mark Haynes, have defrauded Investors of many millions of dollars by engaging in a massive and deceptive endeavor centering on federal and state securities fraud. Now apparently in the twilight of its illegal efforts, Heartland Resources is refusing to provide information relating to the location of over $6.5 million of Investor monies and is frantically attempting to sell assets. Time is not the ally of Investors, and quick and definitive relief for the Plaintiffs is clearly warranted.

### FIRST CAUSE OF ACTION
**Violation of Section 10(b) of the Exchange Act,
15 U.S.C. § 78j, and Rule 10-b-5 Against all Defendants**

173.    The Investors incorporate Paragraphs 1 through 170 as if fully set forth herein.

174.    The Defendants were persons or entities directly involved in connection with the securities offering and sales activities of Heartland Resources or the

Partnership Issuers, each of whom acted with intent or wanton and reckless disregard of the activities of Heartland Resources and the Partnership Issuers.

175.   The Defendants knew  or wantonly and recklessly ignored that statements made in the PPMs, Working Interest Offerings, and Sales Materials for the Offerings, misrepresented facts and/or omitted facts that were material to the Investors' decisions to invest in the Securities.

176.   The Defendants participated in or had supervisory responsibilities with respect to the PPMs, the Working Interest Offerings and the Sales Materials which contained the material omissions and misrepresentations set out in Paragraphs 154 through 170 of this Complaint or recklessly disregarded their fiduciary obligations to supervise the activities of Heartland Resources and the Partnership Issuers.

177.   The PPMs, Working Interest Offerings and Sales Materials were materially misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.  The material misrepresentations and omissions are set out in Paragraphs 154 through 170 of this Complaint.

178.   The Defendants violated § 10(b) of the Securities Exchange Act and Rule 10b-5 in that they, by engaging in the conduct set forth in this Complaint, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mail, with *scienter*:

   a.   Employed devices, schemes and artifices to defraud;

b.  Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

c.  Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Investors in connection with their investments in the Securities.

179.  The Investors have suffered damages in that, in reliance on the PPMs, Working Interest Offerings, and other statements made by the Defendants in their Sales Materials, the Investors purchased the Securities.  The Investors would not have purchased the Securities had they been aware of the material omissions and misrepresentations.

180.  The Defendants are liable for the Investors' damages caused by the Defendants' violations of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 in an amount to be proven at trial.

### SECOND CAUSE OF ACTION
**Violation of Section 29(b) of the Securities Exchange Act Predicated on a Violation of Section 15 of the Securities Exchange Act, 15 U.S.C. §§ 78*cc*, 78*o*
Against Heartland Resources, Inc., the Partnership Issuers,
David A. Stewart, Richard E. Stewart and Mark Haynes**

181.  The investors incorporate Paragraphs 1 through 178 as if fully set forth herein.

182.  The Defendants were the issuers, sellers, offerors, and/or solicitors of sales of the Securities.

183.  The Defendants employed and paid commissions to unregistered salespeople to sell shares of the Securities to the Investors.

184.  The unregistered salespeople and Heartland Resources were unregistered broker-dealers.

185. To purchase interests in the Partnerships and the Working Interests from Heartland Resources, the Investors entered into Subscription Agreements and other contracts and agreements with Heartland Resources.

186. The Subscription Agreements and other contracts and agreements were results of legally prohibited transactions.

187. The Investors are among the class of persons and entities that the Exchange Act intends to protect.

188. The Investors are entitled to rescissionary relief pursuant to Section 29(b) of the Securities Exchange Act.

### THIRD CAUSE OF ACTION
**Violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78t Against Defendants Heartland Resources, Inc., Heartland Holding Company, Inc., Heartland Drilling, Inc., Hydrocarbon Operating Company, Inc., Heartland Excavating, Inc., Heartland Investment Properties, Heartland Joint Venture, LP, David A. Stewart, D. Mark Haynes, Richard E. Stewart, Chris Stewart, Ruth Stewart, Stewart Family Trust, Stewart Family Limited Partnership #1, Haynes Family Trust, Haynes Family Limited Partnership #1**

189. The Investors incorporate Paragraphs 1 through 186 as if fully set forth herein.

190. During various times relevant to the transactions in this Complaint, the named Defendants were controlling persons within the meaning of the Exchange Act by virtue of their positions as officers, directors and controlling stockholders of the named Defendants, including Heartland Resources and the Issuer Partnerships.

191. Each of the named Defendants (including the various Heartland entities by virtue of their being functionally the same entity) possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of each of the Heartland entities and the Issuer Partnership, whether

through the ownership of voting securities, by contract or otherwise, and particularly the furtherance of the conspiracy and scheme of the named Defendants to defraud the Investors (in which each of the named Defendants culpably participated.)

192. As a direct and proximate result of the wrongful conduct of the named Defendants, the Investors suffered damages in connection with their purchases of the Securities.

193. By reason of such wrongful conduct, these Defendants are liable pursuant to § 20(a) of the Securities Act, 15 U.S.C. §78*t*, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Violation of Section 15 of the Securities Act, 15 U.S.C. § 77o Against Defendants Heartland Resources, Inc., Heartland Holding Company, Inc., Heartland Drilling, Inc., Hydrocarbon Operating Company, Inc., Heartland Excavating, Inc., Heartland Investment Properties, Heartland Joint Venture, LP, David A. Stewart, D. Mark Haynes, Richard E. Stewart, Chris Stewart, Ruth Stewart, Stewart Family Trust, Stewart Family Limited Partnership #1, Haynes Family Trust, Haynes Family Limited Partnership #1**

194. The Investors incorporate Paragraphs 1 through 191 as if fully set forth herein.

195. During various times relevant to the transactions in this Complaint, the named Defendants were controlling persons within the meaning of the Exchange Act by virtue of their positions as officers, directors and controlling stockholders of Heartland Resources and the Issuer Partnerships.

196. Each of the named Defendants (including the various Heartland entities by virtue of their being functionally the same entity) possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of each of the Heartland entities and the Issuer Partnership, whether

through the ownership of voting securities, by contract or otherwise, and particularly the furtherance of the conspiracy and scheme of the named Defendants to defraud the Investors (in which each of the named Defendants culpably participated.)

197. As a direct and proximate result of the wrongful conduct of the named Defendants, the Investors suffered damages in connection with their purchases of the Securities. The Investors would not have purchased the Securities had they been aware of the material omissions and misrepresentations.

198. By reason of such wrongful conduct, these Defendants are liable pursuant to § 15 of the Securities Act, 15 U.S.C. 77o, in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
**Violation of Section 12(a)(2) of the Securities Act, 15 U.S.C. §§ 77*l*(a)(2)
Against Defendants Heartland Resources, Inc., the Partnership Issuers,
David A. Stewart, Richard E. Stewart, D. Mark Haynes and Hunter Durham**

199. The Investors incorporate Paragraphs 1 through 196 as if fully set forth herein.

200. In connection with the offer and sale of the Securities, by the use of means or instruments of transportation or communication in interstate commerce or of the mails, the named Defendants distributed PPMs and made offerings of the Working Interests and made oral and written communications that included untrue statements of material fact and omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading.

201. The named Defendants were required to register the Securities because no exemption from registration existed, but did not do so.

202.    Without knowledge of the named Defendants' material omissions and misrepresentations, the Investors purchased the Securities from the Defendants.

203.    The named Defendants are liable for the Investors' damages caused by the violations of Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### Violation of Section 292.480(1) and (4) Predicated on a Violation of Section 292.320(1) of the Kentucky Securities Act
### Against All Defendants

204.    The Investors incorporate Paragraphs 1 through 201 as if fully set forth herein.

205.    In connection with the offer and sale of the Securities, the Defendants employed devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and engaged in acts, practices, and courses of business that operated as a fraud and deceit, all in violation of the Kentucky Securities Act, Ky. Rev. Stat. § 292.320(1).

206.    The Investors reasonably relied on the Defendants' representations, as set out in Paragraphs 154 through 170 of this Complaint, and were unaware of the true facts.   In reliance on the Defendants' representations, the Investors purchased the Securities from the Defendants in Kentucky.   The Investors would not have purchased the Securities had they been aware of Defendants' material omissions and misrepresentations.

207.    The Defendants' wrongful conduct directly and proximately caused damages to the Investors.

208.    The Investors are willing to return the Securities to the Defendants and by this Complaint hereby tender their interests in the Securities.

209.    The Defendants are therefore liable to the Investors for such damages as may be determined at trial, plus expenses, interest and attorneys' fees, as provided in Ky. Rev. Stat. § 292-480(1).

### SEVENTH CAUSE OF ACTION
**Violation of Section 292.480(4) Predicated on a Violation of
Section 292.320(2) of the Kentucky Securities Act
Against Defendant Hunter Durham**

210.    The Investors incorporate Paragraphs 1 through 207 as if fully set forth herein.

211.    In connection with the offer and sale of the Securities, Defendant Hunter Durham received consideration from Heartland Resources for advising the Investors as to the purchase of the Securities, and, in connection therewith, Defendant Hunter Durham engaged or offered to engage in acts, practice, or a course of business which operated or would operate as a fraud or deceit upon the Investors, all in violation of the Kentucky Securities Act, Ky. Rev. Stat. § 292.320(2).

212.    All PPMs distributed by Heartland Resources and the Defendant Issuer Partnerships contained the following statement:

"LEGAL OPINIONS: Program Manager has employed Hunter Durham, attorney, Durham and Zornes, P.O. Box 100, Columbia, Kentucky, 42720-0100, (270) 384-4411 or (270) 384-5997, e-mail hunterdurham@alltell.net as counsel in the preparation of this memorandum and other exhibits and

70

documents, and he makes no representation as to the accuracy of the materials contained herein or as to the fairness of contracts. Counsel is available to answer any questions by Participants [Investors]."

213.   Upon information and belief, Heartland Resources paid Mr. Durham fees in connection with his provision of legal services, which included the drafting or review of PPMs, and associated documents, including Forms D filed by Heartland Resources with the Securities and Exchange Commission and/or state securities administrators. Mr. Durham knew, or would have known with even a cursory attempt at discovery, that many of the actions of Heartland Resources and its affiliates were intended to defraud and deceive Investors and that:

(a) Heartland Resources employed numerous salesmen who worked on a commission basis and that no registered broker-dealer was utilized by Heartland Resources, all in violation of federal and various state securities laws;

(b) that David A. Stewart and D. Mark Haynes were subject to final cease and desist orders in Wisconsin and Alabama;

(c) that David A. Stewart had been indicted for federal income tax evasion in April of 2006 and convicted in April of 2007; and

(d) that PPMs distributed by Heartland Resources and the Defendant Issuer Partnerships that he prepared or revised contained substantial inconsistencies, material misstatements and material omissions as set forth in Paragraphs 154 through 170 hereof. This consistent pattern in support of numerous Heartland

Resources sponsored securities offerings over a period of several years constitutes a practice and course of business which operated as a fraud and deceit upon the Plaintiffs.

214. The statement in the PPMs that Mr. Durham was "available to answer any questions by Participants [Investors]" during the offering period, reveals that Mr. Durham was not merely an attorney and legal advisor to the Defendants but also a participant with regard to the sale of unregistered securities in violation of federal and state securities laws.

215. Hunter Durham's wrongful and unlawful conduct directly and proximately caused damages to the Investors.

216. Hunter Durham is liable to the Investors for such damages as may be determined at trial, plus expenses, interest and attorneys' fees, as a result of his wrongful and unlawful conduct.

**EIGHTH CAUSE OF ACTION**
**Violation of Section 292.480(1) and (4) of the Kentucky Securities Act**
**Predicted on Violation of Section § 292.330(1) of the Kentucky Securities Act**
**Against All Defendants**

217. The Investors incorporate Paragraphs 154 through 214 as if fully set forth herein.

218. The Securities, as defined above, constitute securities under the laws of Kentucky.

219. In connection with the offer and sale of the Securities, the Defendants transacted business in Kentucky as unregistered broker-dealers or agents, and employed unregistered agents, by selling the Securities to the Investors, in violation of the Kentucky Securities Act, Ky. Rev. Stat. § 292.330(1).

220.    The Defendants' wrongful conduct directly and proximately caused damages to the Investors.

221.    The Investors are willing to return the Securities to the Defendants and by this Complaint hereby tender their interests in the Securities.

222.    The Defendants are liable to the Investors for such damages as may be determined at trial, plus expenses, interest and attorneys' fees, as provided in Ky. Rev. Stat. § 292.480(1) and (4).

## NINTH CAUSE OF ACTION
**Violation of Section 292.480(1) and (4) of the Kentucky Securities Act**
**Predicated on Violation of Section § 292.340 of the Kentucky Securities Act**
**Against All Defendants**

223.    The Investors incorporate Paragraphs 1 through 220 as if fully set forth herein.

224.    The Securities, as defined above, constitute securities under the laws of Kentucky.

225.    In connection with the offer and sale of the Securities, the Defendants violated the Kentucky Securities Act, Ky. Rev. Stat. § 292.340, when they offered and sold the Securities to the Investors.

226.    The Securities were offered without registration under the Kentucky Securities Act.

227.    The Securities were not exempt from registration under the Kentucky Securities Act.

228.    The Defendants' wrongful conduct directly and proximately caused damages to the Investors.

229.    The Investors are willing to return the Securities to the Defendants and by this Complaint hereby tender their interests in the Securities.

230. The Defendants are liable to the Investors for such damages as may be determined at trial, plus interest and the attorneys' fees, as provided in Ky. Rev. Stat. § 292.480(1) and (4).

### TENTH CAUSE OF ACTION
**Violation of Section 292.480(1) and (4) of the Kentucky Securities Act**
**Against All Defendants**

231. The Investors incorporate Paragraphs 1 through 228 as if fully set forth herein.

232. The Securities, as defined above, constitute securities under the laws of Kentucky.

233. In connection with the offer and sale of the Securities, by the use of means or instruments of transportation or communication in interstate commerce or of the mails, the Defendants distributed PPMs and other Sales Materials and made communications that included untrue statements of material fact and omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading.

234. Without knowledge of the Defendants' material omissions and misrepresentations, the Investors purchased the Securities from the Defendants in Kentucky.

235. The Defendants' wrongful conduct directly and proximately caused damages to the Investors.

236. The Investors are willing to return the Securities to the Defendants and by this Complaint hereby tender their interests in the Securities.

237. The Defendants are liable to the Investors for such damages as may be determined at trial, plus expenses, interest and attorneys' fees, as provided in Ky. Rev. Stat. § 292.480(1) and (4).

**ELEVENTH CAUSE OF ACTION**
Violation of T.C.A. § 47-18-104
**Tennessee Consumer Protection Act**
**Against All Defendants**

238.   The Investors incorporate Paragraphs 1 through 235 as if fully set forth herein.

239.   The Defendants engaged in misleading representations and deceptive practices
in the sale of Securities to Investors in violation of the Tennessee Consumer
Protection Act (or, in the alternative, the state counterparts under the laws of
any other states which may apply in this matter).

240.   The Defendants' wrongful conduct directly and proximately caused damages
to the Investors.

241.   The Defendants are liable to the Investors for actual and up to treble damages,
together with costs and attorney's fees for their violations of the Tennessee
Consumer Protection Act.

**TWELFTH CAUSE OF ACTION**
Violation of Tennessee Code Ann. § 48-2-122 Based on
**Breach of T.C.A. 48-2-121(a) Against All Defendants**

242.   The Investors incorporate Paragraphs 1 through 239 as if fully set forth herein.

243.   The Tennessee Securities Act of 1980 is applicable to the securities offered to
and purchased by the Tennessee Investors Frederick P. Clayton, Jr. and Kent
B. Monypeny, both residents of Tennessee (the "Tennessee Investors").

244.   In connection with the offer and sale of the Securities, the Defendants
employed devices, schemes and artifices to defraud, made untrue statements
of material facts and omitted to state material facts necessary in order to make
the statements made, in light of the circumstances under which they were
made, not misleading, and engaged in acts, practices, and courses of business

that operated as a fraud and deceit, all in violation of the Tenn. Code. Ann. §48-2-121(a).

245.    The Tennessee Investors reasonably relied on the Defendants' representations, as set out in Paragraphs 154 through 170 of this Complaint, and were unaware of the true facts.    In reliance on the Defendants' representations, the Tennessee Investors purchased the Securities from the Defendants in Tennessee.  The Tennessee Investors would not have purchased the Securities had they been aware of Defendants' material omissions and misrepresentations.

246.    The Defendants' wrongful conduct directly and proximately caused damages to the Tennessee Investors.

247.    The Investors are willing to return the Securities to the Defendants and by this Complaint hereby tender their interests in the Securities.

248.    The Defendants are therefore liable to the Investors for such damages as may be determined at trial, plus expenses, interest and attorneys' fees, as provided in T.C.A. § 48-2-122.

### THIRTEENTH CAUSE OF ACTION
### Violation of T.C.A. § 48-2-122
### Based on a Breach of T.C.A. § 48-2-109(a) and (b), § 48-2-104 and § 48-2-110(f) Against All Defendants

249.    The Investors incorporate Paragraphs 1 through 246 as if fully set forth herein.

250.    The Securities, as defined above, constitute securities under the laws of Tennessee.

251.    In connection with the offer and sale of the Securities, the Defendants transacted business in Tennessee as unregistered broker-dealers or agents, and

employed unregistered agents, by selling the Securities to the Investors, in violation of the Tennessee Securities Act, T.C.A. § 48-2-109(a) and (b).

252. In connection with the offer and sale of the Securities, the Defendants violated the Tennessee Securities Act, T.C.A. § 48-2-109(a) and (b), when they offered and sold the Securities to the Investors.

253. The Securities were offered without registration under the Tennessee Securities Act.

254. The Securities were not exempt from registration under the Tennessee Securities Act.

255. The Defendants did not register as oil and gas issuer-dealers as required pursuant to T.C.A. § 48-2-110(f).

256. The Defendants' wrongful conduct directly and proximately caused damages to the Investors.

257. The Investors are willing to return the Securities to the Defendants and by this Complaint hereby tender their interests in the Securities.

258. The Defendants are liable to the Investors for such damages as may be determined at trial, plus expenses, interest and the attorneys' fees, as provided in T.C.A. § 48-2-122.

## FOURTEENTH CAUSE OF ACTION
### Common Law Fraud
### Against All Defendants

259. The Investors incorporate Paragraphs 1 through 256 as if fully set forth herein.

260. By and through the Offerings, the Defendants intentionally orchestrated and executed a scheme to defraud and deprive the Investors of money by selling the Securities to the Investors under the guise that the Securities were offered

pursuant to exemptions from registration under the Securities Act and state securities acts.

261. The Defendants used the PPMs, the Working Interest Offerings, the Sales Materials and the salespeople to execute the fraudulent scheme by creating the appearance that the Investors in the Securities would be protected under securities laws and by creating the appearance that the information communicated in the Offerings by the Defendants was legally and factually true and complete.

262. The Defendants sold the Securities to the Investors by knowingly making misrepresentations of material facts and by omitting to disclose facts that were material to the Investors' decisions to invest in the Securities, as set forth in Paragraphs 154 through 170 of this Complaint.

263. The Investors reasonably relied on the above-referenced misrepresentations and sustained damages as a proximate result of the Defendants' conduct.

264. The Investors are entitled to recover consequential damages, plus prejudgment interest, in an amount to be proven at trial.

265. Because the Defendants' actions were intentional, malicious and/or willful, the Investors are entitled to punitive damages.

## FIFTEENTH CAUSE OF ACTION
### Equitable Fraud
### Against All Defendants

266. The Investors incorporate Paragraphs 1 through 263 as if fully set forth herein.

267. By and through the Offerings, the Defendants intentionally orchestrated and executed a deliberately conceived and structured scheme to defraud and deprive the Investors of money by selling the Securities to the Investors under

the guise that the Securities were offered pursuant to exemptions from registration under the Securities Act and state securities acts. The Defendants repeated the scheme over and over in each of the Offerings over a period of several years.

268. The Defendants used the PPMs, the Working Interest Offerings, the Sales Materials and the salespeople to execute the fraudulent scheme by creating the appearance that the Investors in the Securities would be protected under securities laws and by creating the appearance that the information communicated in the Offerings by the Defendants was legally and factually true and complete.

269. The Defendants sold the Securities to the Investors by knowingly making misrepresentations of material facts and by omitting to disclose facts that were material to the Investors' decisions to invest in the Securities, as set forth in Paragraphs 154 through 170 of this Complaint.

270. The Investors reasonably relied on the above-reference misrepresentations and sustained damages as a proximate result of the Defendants' conduct.

271. The Investors are entitled to recover consequential damages, plus prejudgment interest, in an amount to be proven at trial.

272. Because the Defendants' actions were intentional, malicious and/or willful, the Investors are entitled to punitive damages.

### SIXTEENTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**Against All Defendants**

273. The Investors incorporate Paragraphs 1 through 270 as if fully set forth herein.

274.   Heartland Resources was the Managing Partner of all of the Issuer Partnerships and managed the Working Interests on behalf of the Investors, and the other Defendants occupied positions of control and fiduciary responsibility in relation to the Investors and their investments in the Securities.

275.   The Defendants breached their fiduciary duties to the Investors as set forth in this Complaint and to ensure the proper accounting and use of monies provided by Investors pursuant to the Offerings.

276.   The relationships between the Defendants and the Investors were fiduciary relationships of trust and confidence.  The Defendants had the duty to the Investors to exercise the utmost care, good faith and honesty with respect to the Securities and the Investors.

277.   The Investors were damaged as a proximate result of the Defendants' breaches of fiduciary duty.

278.   The Defendants are liable to the Investors for all the losses the Investors sustained by virtue of their investments in the Securities, plus pre-judgment interest, in an amount to be proven at trial.

279.   Because the Defendants' actions were intentional, malicious and/or willful, the Investors are entitled to punitive damages.

## SEVENTEENTH CAUSE OF ACTION
**Against Defendants Heartland Resources, Inc., Heartland Holding Company, Inc., Heartland Drilling, Inc., Hydrocarbon Operating Company, Inc., Heartland Excavating, Inc., Heartland Investment Properties, Heartland Joint Venture, LP, Stewart Family Trust, Stewart Family Limited Partnership #1, Haynes Family Trust, Haynes Family Limited Partnership #1**
**Under a Theory of  Respondeat Superior**

280.   The Investors incorporate Paragraphs 1 through 277 as if fully set forth herein.

281.   These Defendants are all liable to the Investors based on a theory of respondeat superior since these Defendants acted as agents of Defendant David A. Stewart in the unlawful use of interstate commerce to engage in a practice or course of business which operated as a fraud or deceit upon the Investors in connection with the sale of the Securities.

282.   These Defendants are all liable to the Investors based on a theory of respondeat superior since these Defendants acted as agents of Defendant David A. Stewart in the making of untrue or misleading statements of material facts and the omission of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in connection with the purchase or sale of the Securities.

283.   As a result of the unlawful acts of these Defendants, the Investors have been damaged.

284.   As a result of the unlawful acts of these Defendants, these Defendants are vicariously liable to the Investors based on a theory of respondeat superior.

285.   As a result of the unlawful acts of these Defendants, the Investors are entitled to damages from these Defendants based on a theory of respondeat superior.

### EIGHTEENTH CAUSE OF ACTION
#### Conversion
#### Against All Defendants

286.   The Investors incorporate Paragraphs 1 through 283 as if fully set forth herein.

287.   The Defendants have wrongfully and intentionally exercised and have conspired to exercise dominion and control over monies and funds provided by Investors for the drilling and completion of oil and gas wells and have utilized such funds for unauthorized purposes.

288.  Defendants' actions amount to conversion of the Investors' funds.

289.  As a direct and proximate result of the tortious acts of Defendants, the Investors are entitled to damages in an amount to be determined at trial.

290.  Because of Defendants' willful conversion of the Investors' property, the Investors are entitled to recover punitive damages from Defendants in an amount to be determined at trial.

### NINETEENTH CAUSE OF ACTION
### Constructive Trust
### Against All Defendants Except Hunter Durham

291.  The Investors incorporate Paragraphs 1 through 288 as if fully set forth herein.

292.  Heartland Resources and the named Defendants occupied positions of trust and confidence as to the Investors and therefore were bound to abstain from any acts which would act as a detriment to the Investors.

293.  Through the actions set forth in this Complaint, the named Defendants have unjustly enriched themselves at the expense of the Investors.

294.  The various personal bank accounts and other repositories of money and other assets possessed, currently owned and/or controlled by the named Defendants have been used to receive and conceal the monies which should have been used to further the business goals of the Issuer Partnerships and Working Interests for the benefit of the Investors.

295.  The investment monies which Heartland Resources received were improperly diverted by its officers and principals and those persons and entities controlling them, and together with the proceeds or products thereof, constitute the *res* of a constructive trust.   The Defendants are therefore

obligated to return the money that was improperly utilized or withdrawn from Heartland Resources to prevent their unjust enrichment.

296.   The converted money received by Heartland Resources through the Offerings is known and identifiable.   At the present time, however, the present repositories of all of the proceeds and the use of such proceeds have not been completely identified.   Therefore, the Investors are entitled to an accounting of the assets of the Defendants.

297.   As a result of Defendants' wrongful retention of the Investors' investment funds, the Investors have suffered immediate and irreparable injury and will continue to suffer in violation of their rights unless the assets, whatever their present form, representing, in whole or in part, funds converted by the Defendants, are immediately frozen by Order of this Court.   Since there is a strong likelihood that the funds would dissipate if this Court does not grant the Investors their requested injunctive relief, the Investors have no adequate remedy at law or otherwise to address this injury, save in a court of equity.

298.   The Investors are the beneficial and equitable owners of the trust *res* and are entitled to its immediate possession, as a measure of damages, including all of its proceeds.

## TWENTIETH CAUSE OF ACTION
### An Accounting

299.   The Investors incorporate Paragraphs 1 through 296 as if fully set forth herein.

300.   Due to the wrongful conduct and acts of the Defendants, the Investors request the Court to order an accounting and complete examination of the books and records of all corporate and partnership Defendants, including specifically an

accounting for the monies assessed for the completion and equipping of 24 oil and gas wells that were not so used.

## **PRAYER FOR RELIEF**

WHEREFORE, the Investors pray for judgment as follows:

A.      Rescission of the sales of Securities, together with interest from the date of the sale of such securities;

B.      An award of rescissionary and consequential damages in an amount not less than $11,000,000;

C.      An award of actual and up to treble damages, together with costs and attorney's fees as to the claims for violations of the Tennessee Consumer Protection Act (or any applicable out-of-state counterpart);

C.      An award of punitive damages;

D.      Imposition of a constructive trust upon the assets of the Defendants;

E.      An award of costs and reasonable attorneys' fees;

F.      An accounting as requested pursuant to the Twentieth Cause of Action herein;

G.      Provide such other relief as the Court deems to be just and proper.

## JURY DEMAND

The Plaintiffs/Investors demand a trial by jury.

H. Wynne James III (#002404)
Joseph A. Woodruff (#012869)
Rhonda Scott  (#019863)
Rebecca Brinkley (#024333)
WALLER LANSDEN DORTCH & DAVIS, LLP
Nashville City Center
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Phone: (615) 244-6380
Facsimile: (615) 244-6804