IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **FREDERICK P. CLAYTON, JR.**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08-cv-0513** |
| | ) | **Judge Trauger** |
| **HEARTLAND RESOURCES, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Pending before the court is the defendants' Motion to Dismiss for Lack of Jurisdiction, Improper Venue and Insufficient Service of Process or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404 (Docket No. 29). Defendant Hunter Durham filed a response in support of this motion (Docket No. 33), and the plaintiffs filed a response in opposition (Docket No. 34). for the reasons discussed below, the defendants' motion will be granted in part, to the extent that the case will be transferred to the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1404(a). This court will decline to rule on the questions of jurisdiction raised by the defendants in their motion.

## BACKGROUND

This securities fraud action was brought by sixty-eight plaintiffs against forty-four defendants.[1] The plaintiffs are individuals and entities located in various states across the country. Two of the plaintiffs are residents of Tennessee. The defendants are mostly Kentucky

---

[1]Unless otherwise noted, the facts are drawn from the Complaint. (Docket No. 1.)

1

entities that appear to be controlled by the same small group of individuals, who are also named as defendants and are residents of Kentucky.  Two of the defendants are entities that are authorized to do business in Tennessee.

According to the plaintiffs, the defendants offered and sold securities that took the form of investments in partnerships and working interests for the purpose of drilling and completing oil and gas wells.  The parties entered into "subscription agreements" for these investments.  The wells that are the subjects of these subscription agreements number over seventy and mostly are located in Kentucky; none is located in Tennessee.  (Docket No. 33 at 1.)

The plaintiffs allege that the defendants misrepresented or omitted a number of material facts in connection with the sale of these securities, including the facts that the defendants paid their salespeople commissions, that they were not exempted from registration under the federal securities laws, that they had been prohibited from selling securities in two states, and that David Stewart, who was the chief executive officer, president, and controlling stockholder of several of the defendant entities, had been indicted and pleaded guilty to tax evasion charges.  The plaintiffs brought claims against the defendants seeking remedies under the federal securities laws, Kentucky securities laws, Tennessee securities laws and also sought common-law and equitable remedies under Kentucky and Tennessee law.

## ANALYSIS

The defendants have moved to dismiss the plaintiffs' claims, arguing that this court lacks personal jurisdiction over the defendants and that venue is improper in this court.[2]  Alternatively,

---

[2]Although the caption of the defendants' motion indicates that it seeks dismissal on the basis of insufficient service of process, in addition to lack of jurisdiction and improper venue, the motion and accompanying memorandum do not make any arguments as to the sufficiency of

the defendants seek to transfer venue from this court to the United States District Court for the Western District of Kentucky under 28 U.S.C. § 1404(a).

**I.      Jurisdiction**

In *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, __ U.S. __, 127 S. Ct. 1184 (2007), the Supreme Court considered whether a district court must resolve jurisdictional questions before determining whether to dismiss a case under the doctrine of *forum non conveniens*.[3]   The court held that, "where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome route." *Id.* at 1194.  Here, the issue of personal jurisdiction is complicated in no small measure by the sheer number of defendants involved and the intricate interplay of federal securities law, Tennessee and Kentucky state law, and the subscription agreements at issue in this case.  Additionally, the relevant considerations under § 1404(a) strongly favor a transfer of venue to Kentucky, as will be discussed in further detail *infra*.  As such, this court need not engage in a lengthy analysis of jurisdictional issues prior to transferring the case pursuant to § 1404(a).[4]

service of process.

[3]The common-law *forum non conveniens* doctrine applies in cases where an alternate court may be found abroad.  *Id.* at 1190.  Within the federal court system, the doctrine is codified by 28 U.S.C. § 1404(a), which provides for the transfer of a case when another district court would be the more convenient venue.  *Id.* at 1190-91.

[4]The court notes, however, that a cursory evaluation of the record suggests that the defendants' objections to personal jurisdiction in this district are weak, given the fact that, in conjunction with filings made with state securities administrators and the federal Securities and Exchange Commission, the defendants consented that any action against them arising out of the sale of securities or the violation of state securities laws "may be commenced in any court of competent jurisdiction and proper venue within the state(s) so designated hereunder," and their subsequent designation of the state of Tennessee.  (Docket No. 4 Tab 39.)

## II.   Venue

The federal rules provide that, in a case where jurisdiction is based on the existence of a federal question, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  When a case is brought in a district in which venue does not lie, a court must dismiss the case or transfer it to a district in which it could have been brought initially.  28 U.S.C. § 1406(a).  Additionally, the rules provide that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C § 1404(a).

Thus, a dismissal or transfer is mandatory and made pursuant to § 1406(a) when venue is improper, and a transfer is discretionary and made pursuant to § 1404(a) when convenience and the interests of justice so dictate.  The defendants here seek, in the alternative, dismissal pursuant to § 1406(a) for improper venue, or transfer to the Western District of Kentucky pursuant to § 1404(a).  As a preliminary matter, then, the court must consider whether venue properly lies in the Middle District of Tennessee.

### A.    Improper Venue Under § 1406(a)

The plaintiffs assert that venue lies here under the second prong of § 1391.  (Docket No. 1 ¶ 7.)  The Sixth Circuit has stated that venue lies in a district under the second prong if the district has "a substantial connection to the plaintiff's claim."  *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).  The plaintiffs cite several facts as evidence that they have

met this standard, including the facts that the defendants transacted business in Tennessee, two defendants are authorized to do business in Tennessee, and at least some sales of securities were made to the two Tennessee residents who are plaintiffs in this action. (Docket No. 1 ¶ 7.)

The connection to Tennessee cited by the plaintiffs is somewhat tenuous in that only two of forty-four defendants are located here, the subscription agreements were not formed here, and the vast majority of the sales of securities that give rise to the plaintiffs' claims did not occur here.  However, the plaintiffs also point to the fact that the defendants consented to venue in Tennessee in forms filed with the state securities administrators and the federal Securities and Exchange Commission.  (Docket No. 34 at 3-4.)  In light of these filings, and in consideration of the fact that, where a venue transfer motion is predicated on the existence of a forum selection clause, as is the case here, courts often analyze those cases under the rubric of § 1404(a) rather than under § 1406(a), *see Hodnett v. Heartland Res., Inc.*, No. 07-2092, 2007 U.S. Dist. LEXIS 84208, at *7-*10 (W.D. Ark. Nov. 14, 2007) (collecting cases and analyzing motion to transfer venue based on forum selection clause under § 1404(a)); *cf. Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 538-39 (6th Cir. 2002) (applying § 1404(a) where venue was not improper and case involved forum selection clause), the defendants' motion to dismiss for improper venue under § 1406(a) will be denied, and their arguments for transfer analyzed under § 1404(a).

    **B.**    *Transfer of Venue Under § 1404(a)*

In determining whether to transfer a case pursuant to § 1404(a), a district court should consider a number of "case-specific factors," including the existence of a forum selection clause, as well as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988)).  The moving party bears the burden of establishing that the factors weigh strongly in favor of transferring venue.  *See, e.g.*, *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998); *Blane v. Am. Investors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996).

    **1.**    Forum selection clause

When a party relies on a forum selection clause in support of a motion to transfer venue under § 1404(a), that clause is "a significant factor that figures centrally" in the determination of whether to transfer the case.  *Stewart*, 487 U.S. at 29; *Moses*, 929 F.2d at 1136.  The existence of that clause "should neither receive dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a)."  *Stewart*, 487 U.S. at 31.  Additionally, as a general rule, a forum selection clause is "prima facie valid" and is enforceable unless it is shown to be unreasonable.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *see also Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999).

Section 2(o) of the subscription agreements entered into by the parties in this matter provides:

> I understand and accept that all provisions of this Agreement are made in Warren County, Kentucky, and that venue and jurisdiction for all matters in dispute shall also be in Warren County, Commonwealth of Kentucky.

(Docket No. 4 Ex. 14 at 82.)  The defendants allege that this provision constitutes an exclusive forum selection clause that should be given deference in the § 1404(a) analysis.  (Docket No. 32 at 9-11, 14.)  The plaintiffs, however, argue that use of the word "also" renders the forum selection clause non-exclusive and indicates that Warren County, Kentucky was simply one jurisdiction in which venue would be proper.  (Docket No. 34 at 12-14.)  The interpretation urged by the plaintiffs is an extremely tortured one.  The far more natural and logical reading of the provision is that the parties agreed that the agreement was made in Kentucky and *also agreed* that venue and jurisdiction would be in Kentucky.  Indeed, the key language is not so much the use of the word "also," but rather the use of the word "shall," indicating that the selection of Kentucky as a venue for litigation is, in fact, mandatory.

Additionally, the plaintiffs claim that public policy considerations require the invalidation of the forum selection clause.  (Docket No. 34 at 14-15.)  The plaintiffs argue that the state of Tennessee has interests in preventing fraudulent securities transactions in Tennessee and in protecting its citizens from fraudulent securities transactions made elsewhere.  The plaintiffs rely on § 2(k) of the subscription agreements, which provides that, "I understand that by signing this Subscription Agreement I am not waiving any rights I have under Federal and State securities laws."  (Docket No. 4 Ex. 14 at 81.)  The plaintiffs claim that, if § 2(o) is interpreted as an exclusive forum selection clause, it would conflict with § 2(k) to the extent that § 2(k) protects the plaintiffs' rights regarding venue under state securities laws.  However, the existence of an exclusive forum selection clause in § 2(o) does not impinge upon either the

plaintiffs' rights under the Tennessee securities laws or the state's interest in the enforcing of those laws, but rather simply determines the location in which a lawsuit must be brought under those laws.

The plaintiffs make a very convoluted, and unpersuasive, statutory argument in support of their claim that the forum selection clause violates public policy. They rely on a provision of the Tennessee securities laws that, they claim, invalidates any contract provision—such as a forum selection clause—in which the purchaser of securities waives venue in Tennessee. (Docket No. 34 at 9-10; 14-16.) The provision on which they rely, however, states only that "[a]ny condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this part or any rule or order hereunder is void." Tenn. Code Ann. § 48-2-122(i). In reviewing the relevant statute, the court was unable to unearth a provision that specifically provided for either the plaintiffs' right to Tennessee as a venue for their claims or the invalidity of forum selection clauses. The plaintiffs point to a clause providing that anyone who violates the securities laws is deemed to have consented to service of process in Tennessee, Tenn. Code Ann. § 48-2-124(f), but the logical leap made by the plaintiffs—from the fact that a violator of the securities laws is deemed to have consented to service of process to the conclusion that a forum selection clause waiving venue is void—is simply untenable. Moreover, even if the plaintiffs' interpretation were credited, the Supreme Court addressed the possibility that considerations relevant to the § 1404(a) analysis may conflict with state public policy interests disfavoring forum selection clauses, and held that § 1404(a) is the governing law in such circumstances. *Stewart*, 287 U.S. at 30-32; *Kerobo*, 285 F.3d at 538 ("[W]hen considering a forum-selection clause as a factor, a district court does not

8

have the discretion to hold that because the state public policy prohibits the enforcement of clauses requiring an out-of-state venue, the state policy will be categorically upheld and the clause will not be enforced.").  As such, neither public policy considerations nor the language of § 2(k) requires the invalidation of the forum selection clause in § 2(o).

Finally, the plaintiffs assert that the forum selection clause is unenforceable because they allege that they were fraudulently induced to enter the subscription agreements and are seeking the rescission of those agreements.  It is settled law, however, that, "unless there is a showing that the alleged fraud or misrepresentation induced the party opposing a forum selection clause *to agree to inclusion of that clause* in the contract, a general claim of fraud or misrepresentation as to the entire contract does not affect the validity of the forum selection clause."  *Moses*, 929 F.2d at 1138 (emphasis in the original).  Moreover, as the Sixth Circuit has affirmed the enforcement of a forum selection clause where a plaintiff alleged securities laws violations and sought the rescission of a contract, *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1231 (6th Cir. 1995), that argument fails as well.

2.    Other factors

Among the factors that courts consider in a § 1404(a) analysis, beyond the existence of a forum selection clause, are the plaintiff's choice of forum, the convenience of the witnesses and the residence of the parties, the location of sources of proof including the availability of compulsory process to insure witness attendance, the location of the events giving rise to the dispute, any obstacles to a fair trial, the advantage of having the dispute adjudicated by a local court, and the interests of justice.  *See, e.g.*, *Nat'l Indep. Pharm. Coal.*, No. 3:05-1088, 2006 U.S.

Dist. LEXIS 46538, at *8-*9 (M.D. Tenn. July 10, 2006); *S. Elec. Health Fund v. Bedrock Servs.*, No. 3:02-CV-00309, 2003 WL 24272405, at *5 (M.D. Tenn. July 23, 2003).

First, a plaintiff's choice of forum is generally afforded "great weight." *Picker*, 35 F. Supp. 2d at 573; *Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993). This factor is not, however, dispositive, *Lewis ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998), and where, as here, there is a valid forum selection clause, no particular deference is afforded to a plaintiff's choice of forum, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995); *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989); *Inghram v. Universal Indus. Gases, Inc.*, No. 1:05-cv-19, 2006 U.S. Dist. LEXIS 7730, at *17 (E.D. Tenn. Feb. 8, 2006). As the forum selection clause here is valid, this factor does not influence the § 1404(a) analysis.

The convenience of the witnesses is also an important factor in the § 1404(a) analysis. *See Picker*, 35 F. Supp. 2d at 573; *Bacik*, 888 F. Supp. at 1414. Neither party, however, has provided the court with the precise numbers of witnesses located in Tennessee versus in Kentucky. The defendants assert that the convenience of the witnesses strongly favors Kentucky, as the majority of the defendants and most of the non-party witnesses are located in Kentucky.[5] (Docket No. 32 at 15.)

The plaintiffs contend that the convenience of the witnesses favors Tennessee, as the witnesses include over fifty plaintiffs located outside of Kentucky in eighteen different states, including two plaintiffs who are located in Tennessee. (Docket No. 34 at 2.) However, the fact that the witnesses include individuals from eighteen different states does not favor either

---

[5]The court notes, however, that, as most of the entity defendants appear to be controlled by the same handful of individuals, the fact that these entity defendants largely are located in Kentucky is not particularly persuasive on this point.

10

Tennessee or Kentucky as a venue, as those witnesses located outside of both Tennessee and Kentucky will be required to travel to trial in any circumstance.  Moreover, the fact that some of those non-Tennessee, non-Kentucky witnesses may have to fly through Nashville *en route* to Kentucky, as the plaintiffs claim, does not alter the calculus, as this court is not inclined to speculate about the most convenient commercial airline routes to get to Kentucky.

As far as the court can tell, there are a number of witnesses actually located in Kentucky, including the individuals who control most of the defendant entities, was well as certain of those entities' employees.  By contrast, there are two plaintiffs who reside in Tennessee.  Although the plaintiffs note that "several" witnesses reside in Tennessee, there is no indication whether this number includes any non-party witnesses other than the two Tennessee plaintiffs.  Assuming that "several" means, at most, three or four, the convenience of the witnesses favors Kentucky over Tennessee to the extent that the number of witnesses located in Kentucky outnumbers those located in Tennessee.

The parties concur that the vast majority of the documents relevant to the case are located in Kentucky.  (Docket No. 24 at 20.)  Although the import of this factor is mitigated in light of technological advances, including the availability of electronic discovery, to the extent that there may be some minor convenience associated with the existence of the document originals in the district where the case is adjudicated, this factor slightly favors a transfer of venue to Kentucky.

With respect to the location of the operative events, this factor strongly favors a transfer to Kentucky.  It is undisputed that the vast majority of the defendants are Kentucky entities, that the subscription agreements at issue were formed in Kentucky, that the sales of securities giving rise to the plaintiffs' claims occurred in Kentucky, and that the wells that were the subject of the

11

subscription agreements are almost all located in Kentucky.  Moreover, in all likelihood, the misrepresentations that form the basis of the plaintiffs' claims were made in Kentucky.  Although two of the defendants are Tennessee corporations and certain events relating to the plaintiffs' claims may have taken place in Tennessee, that does not outweigh the fact that the case largely centers around people, entities, and activities that took place in Kentucky.

Finally, although the parties do not assert that there are any concerns relating to the availability of a fair trial in either venue, certain procedural factors also favor Kentucky as a venue for this suit.  There are two securities fraud suits already pending against the defendants in Kentucky, which apparently involve subscription agreements and facts similar to those at issue here.  (Docket No. 33 at 7-8.)  Additionally, a Kentucky court can compel the attendance of non-party witnesses located anywhere within that state, whereas this court would only be able to compel the attendance of non-party witnesses located within a 100 mile radius.  Fed. R. Civ. P. 45(c)(3)(A)(i).

In light of these considerations, the court finds that a transfer of venue to the Western District of Kentucky is warranted under § 1404(a).  Particularly given the fact that the subscription agreements included forum selection clauses dictating Warren County, Kentucky as the venue for litigation, the fact that almost all of the defendants reside in Kentucky and most of operative events giving rise to the plaintiffs' claims took place in Kentucky such that the case's "center of gravity" is Kentucky, *Audi AG & Volkswagen of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 751 (E.D. Mich. 2004), the defendants have carried the burden of demonstrating that the factors weigh strongly in favor of a transfer.

## **CONCLUSION**

For the reasons discussed herein, the Motion to Dismiss for Lack of Jurisdiction, Improper Venue and Insufficient Service of Process or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404 filed by the defendants will be granted in part, to the extent that the case will be transferred to the United States District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1404(a). This court declines to rule on the questions of jurisdiction raised by the defendants.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge