UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

**CIVIL ACTION NO.: 1:08CV-94-M**

**FREDERICK P. CLAYTON, JR., et al.**                                                             **PLAINTIFFS**

**v.**

**HEARTLAND RESOURCES, INC., et al.**                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the unresolved issues[1] related to the Defendants' motion to dismiss for lack of personal jurisdiction, improper venue, and insufficient service of process, or alternatively, to transfer venue [DN 29].[2] Also before the Court is the Plaintiffs' motion for a preliminary injunction [DN 2]. For the reasons that follow, the Court will deny the Defendants' motion to dismiss and will set a hearing on the Plaintiffs' motion for a preliminary injunction.

### I. BACKGROUND

The 45 Defendants in this matter are various individuals, trusts, and entities. The Plaintiffs allege that Defendants David A. Stewart, D. Mark Haynes, Richard E. Stewart, Chris Stewart, and Ruth Stewart (the "Partners") were at various times either the owners, directors, officers, or promoters of the various Defendant entities. All of the Partners' interests in these entities were

---

[1] The only matters raised in the Plaintiffs' motion to dismiss that remain to be resolved are whether the Middle District of Tennessee (the "Transferor Court") had personal jurisdiction over the Defendants and whether the Transferor Court was a proper venue for the action.

[2] The motion to dismiss was joined in its entirety by all defendants other than Hunter Durham (the "Heartland Defendants"). Because Durham only joined the motion to the extent the Heartland Defendants sought a transfer of venue pursuant to 28 U.S.C. § 1404, (see Def. Durham's Resp. to Heartland Def.'s Mot. to Dismiss [DN 33] at p. 5), he waived any objection as to whether the transfer of venue pursuant to § 1404 was proper, see Preston v. Interstate Hotels & Resorts, Inc., No. 3:06CV-11-H, 2007 WL 486731, at *3 (W.D. Ky. Feb. 11, 2007).

transferred to the Stewart Family Trust and the Haynes Family Trust (the "Trusts"). The Trusts own Heartland Holding Company, Inc. ("Heartland Holding") which, in turn, owns various other Defendant corporations including Heartland Resources, Inc. ("Heartland Resources"). Heartland Resources acts as the general partner for various limited partnerships (the "Partnerships") that were formed for the purpose of drilling and completing oil and gas wells. The Plaintiffs allege that the Partnerships, Trusts and the other Defendant entities were at relevant times under the control of the Partners. With the exception of Defendants Music City Energy, Inc., a Tennessee corporation, Heartland Energy LLC, a Nevada limited liability company, Heartland Holding Company, Inc., a Delaware corporation, and Ascension Financial Solutions, Inc., an Ohio corporation, the remaining Defendants appear to reside or are based in Kentucky.

The Plaintiffs are also various individuals, trusts, and entities that reside or are based in 18 different states. Two of the Plaintiffs are residents of Tennessee, the state where this matter originated. The Plaintiffs allege that Heartland Resources, over a period of 4.5 years, illegally sold over $40 million in securities in the Partnerships. Specifically, the Plaintiffs allege that the Defendants violated federal and state securities laws and committed common law torts when they used unregistered salespeople to sell unregistered securities to the Plaintiffs. Furthermore, the Plaintiffs allege that the private placement memoranda used to sell the securities in the Partnerships contained material misstatements and omissions. They also allege that the Defendants solicited and sold securities in various states, including Tennessee, by way of "cold calls" and the distribution of these private placement memoranda. The Plaintiffs argue that these allegations are indicative of a "conspiratorial scheme" on the part of the Defendants to raise money by selling interests in the Partnerships and funneling the proceeds to other Defendant entities. The Plaintiffs also assert that

the Defendant entities were operated as, and should therefore be treated as, a single enterprise.

The Plaintiffs filed this action in the Transferor Court and sought a preliminary injunction to freeze the assets of the Defendants. The Heartland Defendants filed a motion to dismiss or to transfer venue arguing that venue was improper in the Transferor Court and that the Transferor Court did not have personal jurisdiction over all Defendants. Expressly declining to rule upon the propriety of venue in the Transferor Court and upon the issue of personal jurisdiction, the Transferor Court determined that, for the convenience of the parties, venue was more appropriate in this Court and ordered the matter transferred here pursuant to § 1404. As a transfer under § 1404 is only proper if the Transferor Court was a proper venue that had personal jurisdiction over the Defendants, these issues are still ripe for decision. See Martin v. Stokes, 623 F.2d 469, 474 (6th Cir. 1980) (holding that § 1406, not § 1404, is the proper avenue for transferring or dismissing a case if venue is improper or personal jurisdiction is lacking).

## II. DISCUSSION

### A. Venue and Personal Jurisdiction

The Heartland Defendants argue that venue was never established in the Transferor Court pursuant to 28 U.S.C. § 1391. They also argue that many of them did not have any contact with Tennessee and therefore a Tennessee court could not assert personal jurisdiction over them. In response, the Plaintiffs assert that the Defendants consented to venue in Tennessee and that the Defendants' conspiratorial scheme reached Tennessee when at least one of them allegedly solicited and sold securities there and allegedly laundered money there.

3

*1. Venue*

The Court need not determine whether venue would have been appropriate under the general civil venue statute, see 28 U.S.C. § 1391, because venue was otherwise appropriate in the Transferor Court under the venue provisions of the Securities Act of 1933, see 15 U.S.C. § 77v[3], and the Securities Exchange Act of 1934, see 15 U.S.C. § 78aa.[4] For venue to be proper in a particular district under any of these venue provisions, venue must be proper as to every joined cause of action and as to every defendant. See Beattie v. United States, 756 F.2d 91, 100 (D.C. Cir. 1984); IA, Inc. v. Thermacell Techs., Inc., 983 F. Supp. 697, 700 (E.D. Mich. 1997). However, "when suit is brought under both the 1933 and the 1934 Federal Securities Acts, venue may be determined according to the broader provisions of the 1934 Act." Martin v. Steubner, 485 F. Supp. 88, 90 (S.D. Ohio 1979), aff'd, 652 F.2d 652 (6th Cir. 1981) (citing Stern v. Gobeloff, 332 F. Supp. 909 (D. Md. 1971). Furthermore, the "co-conspirator" theory of venue provides that:

> in a multi-defendant securities proceeding, where a common scheme of acts or transactions to violate the securities acts is alleged, if venue is established for any of the defendants in the forum district there is sufficient justification to establish venue as to the other defendants, even in the absence of any contact or substantial contact by any one defendant within that district.

S.E.C. v. Nat'l Student Mktg. Corp., 360 F. Supp. 284, 291-292 (D.D.C. 1973) (citing Wyndham v. Bintliff, 398 F.2d 614 (2d Cir. 1968)); see also Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3824. Similarly, based on the doctrine of "pendent venue," venue is

---

[3] The Securities Act of 1933 provides that venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein . . . ." 15 U.S.C. § 77v(a).

[4] The Securities Exchange Act of 1934 provides that venue is proper "in the district wherein any act or transaction constituting the violation occurred . . . or in the district wherein the defendant is found or is an inhabitant or transacts business . . . ." 15 U.S.C. § 78aa.

proper for any claim over which federal courts can exercise supplemental jurisdiction if venue is otherwise appropriate for a claim that arises out of the same common nucleus of operative fact.[5] See, e.g., Travis v. Anthes Imperial Ltd., 473 F.2d 515, 528-529 (8th Cir. 1973) (holding that when venue is proper for claims based on securities violations, venue is also proper for common law claims that arise out of the same common nucleus of operative fact); see also 17 Moore's Federal Practice § 110.05 (Matthew Bender 3d ed.).

Venue was proper as to all Defendants in the Transferor Court because the Plaintiffs alleged that at least one of the Defendants, acting as part of a common scheme with the other Defendants, offered and sold securities in Tennessee. (See Pls.' Compl. [DN 1] ¶ 130; Decl. Thomas Grace [DN 17]). Because the Transferor Court was a proper venue for the Defendant(s) who allegedly offered and sole securities in Tennessee, it was also a proper venue as to all the Defendants who allegedly acted with them as part of a common scheme. Furthermore, because the state law claims arise out of the same common nucleus of operative fact as the federal securities claims, the Transferor Court was also a proper venue for such related claims. The Transferor Court was a proper venue as to each claim and as to every Defendant.

### 2. Personal Jurisdiction

In order to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff is "required to present a *prima facie* case that the district court's exercise of personal jurisdiction would

---

[5] Courts may also treat claims that are factually related but seek multiple grounds of relief as one cause of action for purposes of venue. Therefore, "whether the case involves a federal and nonfederal claim, or two federal claims, if they amount to only one cause of action with two grounds for relief, proper venue as to one federal ground will support adjudication of both grounds." Beattie, 756 F.2d at 100 (internal citations omitted); see also 17 Moore's Federal Practice, § 110.05 (Matthew Bender 3d ed.).

not offend due process." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 889 (6th Cir. 2002) (citation omitted). Here, it is unnecessary for the Court to analyze Tennessee's long-arm statute or to determine whether each Defendant had sufficient minimum contacts with Tennessee under a traditional due process analysis. See Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945). Section 27 (15 U.S.C. § 78aa) of the Securities Exchange Act of 1934 "confers personal jurisdiction in any federal district court over any defendant with minimum contacts to the United States." United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1330 (6th Cir. 1993). Similarly, "by empowering the district court to serve process nationwide, § 22 [15 U.S.C. § 77v] of the Securities Act [of 1933] permits district courts to obtain personal jurisdiction over parties who are properly served." S.E.C. v. Ross, 504 F.3d 1130, 1140 (9th Cir. 2007). "Since Article III vests this court with the power to decide entire cases, as opposed to just issues, having personal jurisdiction over the defendant for purposes of the federal question automatically vests this court with discretionary jurisdiction over the same defendant for purposes of any truly pendent state claims as well." Stuart-James Co. v. Rossini, 736 F. Supp. 800, 804 (N.D. Ill. 1990); see also 16 Moore's Federal Practice § 108.123[2][d].

Because the Defendants in this action are subject to nationwide service of process, the Transferor Court had personal jurisdiction over them with regards to alleged federal securities violations. Because the Plaintiffs' state law claims arise out of the same common nucleus of operative fact as the federal securities violations, the Transferor Court also had pendent personal jurisdiction over these claims. Because the Transferor Court had personal jurisdiction over the Defendants and venue was appropriate there, the Transferor Court properly transferred the matter to this Court pursuant to 28 U.S.C. § 1404.

### B. Preliminary Injunction

Upon filing this matter in the Transferor Court, the Plaintiffs requested a preliminary injunction to freeze the Defendants' assets. The Defendants responded by arguing, in part, that an injunction for this purpose is not available to the Plaintiffs because they have an adequate remedy at law by way of prejudgment attachment. The Plaintiffs, however, contend that because they are seeking equitable relief, an injunction is an appropriate provisional remedy even if a prejudgment attachment is otherwise available.

The federal courts do not have the authority to freeze a person's assets for the benefit of general-creditor claimants before their claims have been vindicated by judgment. Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 322-323 (1999) (holding that a preliminary injunction to freeze the assets of an insolvent defendant was improper when the plaintiff was merely seeking legal damages). Under such circumstances, the "well-established general rule" is that "a judgment establishing the debt [is] necessary before a court of equity [will] interfere with the debtor's use of his property." Id. at 321. However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied. See id. at 324-325 (citing Deckert v. Independence Shares Corp., 311 U.S. 282 (1940)); USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 96 (6th Cir. 1982) (affirming the issuance of a preliminary injunction to freeze the assets of the defendant when there was a substantial likelihood that plaintiffs would ultimately prevail on an equitable claim for restitution). However, a preliminary injunction to freeze a defendant's assets "may not be granted unless there are valid findings that the legal remedy provided by the state's attachment statutes under Rule 64 is

inadequate . . . ." EBSCO Indus., Inc. v. Lilly, 840 F.2d 333, 336 (6th Cir. 1988) (citation omitted).

In Carbomin, the Sixth Circuit addressed whether Kentucky's prejudgment attachment and *lis pendens* statutes provided an adequate remedy at law. The court held that an adequate remedy at law "is a remedy that is plain and complete and as practical and efficient to the ends of justice as the remedy in equity by injunction." Carbomin, 689 F.2d at 99 (citation omitted). The Sixth Circuit held that Kentucky's provisional remedy statutes did not provide "adequate protection against the probability of continued disreputable conduct that would result in the dissipation and concealment of assets . . . ." Id. In Lilly, the Sixth Circuit found Ohio's similar prejudgment attachment statute to be inadequate where the Defendant had taken steps to conceal assets. Lilly, 840 F.2d at 336.

Here, the Plaintiffs are seeking equitable relief including a constructive trust and an accounting based on the alleged breach of the Defendants' fiduciary duties to the Plaintiffs. The availability of a prejudgment attachment statute does not necessarily preclude the issuance of a preliminary injunction under such circumstances. Therefore, this matter will be set for a hearing in accordance with the Court's order where the Plaintiffs will have an opportunity to show they are entitled to a preliminary injunction under the facts of this case.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants' motion to dismiss [DN 29] is **DENIED**. A hearing on the Plaintiffs' motion for a preliminary injunction [DN 2] will be set by separate order.

cc:   Counsel of Record