**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

**CIVIL ACTION NO.: 1:08CV-94-M**

**FREDERICK P. CLAYTON, JR., et al.**                                              **PLAINTIFFS**

**v.**

**HEARTLAND RESOURCES, INC., et al.**                                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion by the plaintiffs for a preliminary injunction [DN 2]. An evidentiary hearing on the matter was held on December 18, 2008. The plaintiffs have alleged in their motion and at the evidentiary hearing that the defendants, through a conspiracy and scheme to defraud, have deprived the plaintiffs of money they invested in various partnerships and working interests. Because the plaintiffs ultimately seek restitution of the monies they invested along with other equitable remedies, they have requested that the defendants' be enjoined from concealing or disposing of various assets in order to maintain the status quo *pendente lite*. Also before the Court is the plaintiffs' alternative motion for a temporary restraining order [DN 83]. For the reasons set forth below, the Court **GRANTS** the plaintiffs' motion for preliminary injunction. The plaintiffs' motion for a temporary restraining order is **DENIED AS MOOT**.

**I. BACKGROUND**

**A. The Defendants' Corporate Structure**

The defendants in this matter are various individuals, trusts, and entities that the plaintiffs allege were formed for the purpose of concealing assets. (Compl. ¶ 172.) According to the plaintiffs, the defendants David A. Stewart, D. Mark Haynes, Richard E. Stewart, Chris Stewart, and Ruth Stewart (the "Partners") were at various times either the owners, directors, officers, or

promoters of the various defendant entities. (Compl. ¶¶ 16-20.) All of the Partners' interests in these entities were transferred to the Stewart Family Trust and the Haynes Family Trust (the "Trusts"). (Comp. ¶¶ 21, 23.) The Trusts own Heartland Holding Company, Inc. ("Heartland Holding") which, in turn, owns various other defendant corporations including Heartland Resources, Inc. ("Heartland Resources"). (Compl. ¶¶ 9, 21, 23.) Heartland Resources acts as the general partner for various limited partnerships (the "Partnerships") that were formed for the purpose of drilling and completing oil and gas wells. (Compl. ¶ 8.) The plaintiffs allege that the Partnerships, Trusts and the other defendant entities were at relevant times under the control of the Partners. (Compl. ¶ 172.)

### B. The Alleged Misconduct

According to the plaintiffs, the defendants issued private placement memoranda to solicit investments in various oil and gas wells located in Kentucky, Texas, and Kansas and working interests (fractional, undivided interests in oil and gas wells) located in Oklahoma. (Pls.' Mem. Supp. Mot. Prelim. Inj. 4 [hereinafter "Pls.' Mem."].) They also garnered interest in the investments via "cold calls" made by unregistered sales agents and through printed sales material. (Id.) The plaintiffs are investors who purchased securities in the Partnerships and working interests. (Id.) The plaintiffs allege that they purchased these securities and working interests based upon material misstatements and omissions made in private placement memoranda. (Pls.' Mem. 7.) They now believe that these misstatements and omissions along with other fraudulent conduct demonstrate the defendants' attempt to conceal and dissipate the plaintiffs' investment monies. (Pls.' Mem. 26-27.)

#### *1. Subscription Agreements*

Upon agreeing to invest in the oil and gas wells in question, the plaintiffs executed subscription agreements. (Pls.' Mem. 7.) Under the subscription agreements, payment for these

securities was to be made in two installments. (Id.) First, the plaintiffs were to make an installment payment upon executing the subscription agreements. (Id.) The capital generated from these payments was to fund the drilling of wells. (Id.) Second, the plaintiffs were to make another installment payment when Heartland Resources determined that the wells were worthy of completion. (Id.) The capital generated from these payments was to be set aside for testing, equipping, and completing the wells. (Id.) The plaintiffs believe that Heartland Resources has approved the completion of at least 24 wells in Knox County, Kentucky and have thus collected second installment payments from the investors in an amount exceeding $6 million. (Pls.' Mem. 7-8.) However, none of the wells have been completed and the defendants have failed to account for the invested funds. (Pls.' Mem. 13.)

### 2. *Material Misstatements and Omissions*

The plaintiffs allege that the defendants made various material misstatements and omissions in connection with the offer and sale of the securities at issue in violation of federal and state securities laws. First, the plaintiffs allege that the defendants' offering statements and other forms filed with the applicable government agencies stated that the defendants' sales agents were not to receive a commission. (Pls.' Mem. 12-13.) However, the plaintiffs claim that these unregistered sales agents were given a commission in the form of a profit sharing plan and other remuneration of up to 10-15% of the total offering proceeds. (Id.) Second, the plaintiffs were told that they were being sold exempt securities, but in fact, the securities did not meet the requirements for exemption under applicable securities laws. (Pls.' Mem. 22-23.) Third, the plaintiffs have introduced administrative decisions from Alabama and Wisconsin prohibiting Heartland Resources, David Stewart, and Mark Haynes from selling securities in those states. (Pls.' Mem. 8-10.) However,

nowhere in the private placement memoranda or other offering documents was this restriction identified. (Pls.' Mem. 9-10.) Finally, David Stewart was indicted and subsequently pled guilty to tax evasion, yet this information was not disclosed in the offering statements. (Pls.' Mem. 10-11.)

## II. DISCUSSION

The Court begins its analysis by noting that it is only making a determination of whether the plaintiffs have satisfied their burden for obtaining a preliminary injunction. There has only been limited, if any, discovery in this matter and the Court is only predicting the likelihood of success on the merits based on the limited record before it. The Court, in granting this preliminary injunction, makes no evaluation as to the persuasiveness of evidence that the parties may later set forth in other motions submitted to the Court or at trial.

### Preliminary Injunction Standard

A preliminary injunction is an extraordinary remedy that is used to preserve the status quo between the parties pending a final determination of the merits of the action. In determining whether to issue a preliminary injunction, the Court must consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)). These four factors are "to be balanced and [are] not prerequisites that must be satisfied." Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 963 F.2d 855, 859 (6th Cir. 1992) (citation omitted). Furthermore, these factors are to "guide the discretion of the court" and "are not

meant to be rigid and unbending requirements." Id. (citation omitted). A party is not required to prove its case in full at the preliminary injunction stage. Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 400 (6th Cir.1997) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390 (1981)). Therefore, the findings of fact and conclusions of law of a district court are not binding at a trial on the merits. Id.

### 1. *Likelihood of Success on Merits*

The Court must first consider whether the plaintiffs have "demonstrated a strong likelihood of success on the merits." Tenke, 511 F.3d at 543. To satisfy this burden, the plaintiffs must raise "questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id. (quotation omitted). This requires the plaintiffs to show "more than a mere possibility of success." Id. (quotation omitted).

The plaintiffs maintain that the defendants violated the anti-fraud provisions of the Securities Exchange Act of 1934 along with the Kentucky and Tennessee anti-fraud counterpart provisions. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The S.E.C. regulations promulgated thereunder provide:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the

meant to be rigid and unbending requirements." Id. (citation omitted). A party is not required to prove its case in full at the preliminary injunction stage. Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 400 (6th Cir.1997) (citing Univ. of Tex. v. Camenisch, 451 U.S. 390 (1981)). Therefore, the findings of fact and conclusions of law of a district court are not binding at a trial on the merits. Id.

### 1. *Likelihood of Success on Merits*

The Court must first consider whether the plaintiffs have "demonstrated a strong likelihood of success on the merits." Tenke, 511 F.3d at 543. To satisfy this burden, the plaintiffs must raise "questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id. (quotation omitted). This requires the plaintiffs to show "more than a mere possibility of success." Id. (quotation omitted).

The plaintiffs maintain that the defendants violated the anti-fraud provisions of the Securities Exchange Act of 1934 along with the Kentucky and Tennessee anti-fraud counterpart provisions. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The S.E.C. regulations promulgated thereunder provide:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the

>circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. The basic elements of a cause of action under these anti-fraud provisions are "(1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation." Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 917 (6th Cir. 2007) (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005)). As Kentucky's anti-fraud statutory provisions are "virtually identical" to the regulations promulgated under Section 10(b) of the Securities Exchange Act of 1934, the same elements will establish a prima facie case under Kentucky law. See id. at 916-17 (applying the elements listed above to Kentucky's anti-fraud statutory provisions).

The plaintiffs argue that the alleged misstatements and omissions identified above were material and were made in connection with the offer or sale of securities. More specifically, the plaintiffs insist that the defendants were required to disclose, but did not disclose, that they were selling unregistered securities; that they were required to disclose, but did not disclose, that the states of Alabama and Wisconsin had taken administrative action against Heartland Resources, David Stewart, and Mark Haynes; and that they were required to disclose, but did not disclose, that David Stewart was indicted and pled guilty to tax evasion. Furthermore, the plaintiffs insist that the defendants made material misstatements as to whether the securities in question were eligible for exemption and whether the defendants' sales agents were to be paid a commission. In response, the defendants argue that the plaintiffs have brought an action against them because the plaintiffs, after knowingly investing in high-risk securities, have grown unhappy with their decision to invest.

After reviewing the evidence submitted by the plaintiffs in their evidentiary appendix and after hearing testimony at the evidentiary hearing, the Court finds that the plaintiffs have demonstrated a strong likelihood of success on the merits. Specifically, there is no dispute that David Stewart was indicted for and pled guilty to federal income tax evasion. Mark Haynes testified at the evidentiary hearing that the indictment and guilty plea were not disclosed to the investors through amended private placement memoranda or any other writing. Although Mark Haynes testified that the defendants and their agents orally notified investors about David Stewart's indictment and conviction, there is also testimony from investors Kenneth E. Allen and Jerry C. Counter that they were not informed of David Stewart's indictment or conviction. (See Allen Decl. ¶ 2; Counter Decl. ¶ 3.) Mark Haynes suspected that he was also under investigation for tax evasion. Although Mark Haynes and David Stewart resigned from the management of Heartland Resources for these reasons, they only informed the potential and current investors through private placement memoranda that they were resigning for "personal reasons." (See, e.g., Pls.' App. Tab 21 at 25.)

It is also undisputed that various state securities agencies took administrative action against Heartland Resources, David Stewart, Mark Haynes, and others. (See Pls.' App. Tab 34 (Alabama Order); Pls.' App. Tab 35 (Wisconsin Order).) In Alabama, the state securities commission determined that the securities in the Partnerships were not exempt from registration. As a result, the commission ordered that Heartland Resources, Mark Haynes, and David Stewart cease and desist further offers and sales of any security into or within Alabama. (Pls.' App. Tab 34 at 4.) At the evidentiary hearing, Mark Haynes testified that he was aware of the order by the Alabama commission; however, the private placement memoranda at issue indicated the effect of the order was only "temporary." (Pls.' App. Tab 24 at 28.) Furthermore, the defendants did not disclose in

7

the memoranda that the Alabama commission designated the securities as non-exempt. (Id.)

This evidence, along with the other evidence presented by the plaintiffs at the evidentiary hearing, indicates a strong likelihood of success on the merits.

### *2. Irreparable Injury to Plaintiffs Absent Injunction*

The next factor the Court must consider in deciding whether to grant a preliminary injunction is whether the plaintiffs will suffer irreparable injury absent the injunction. Tenke, 511 F.3d at 550. An injury is irreparable if "'it is not fully compensable by monetary damages.'" Id. (quoting Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir. 2002)). Furthermore, the Sixth Circuit requires that before the Court can grant a preliminary injunction freezing the assets of a party, there must be "valid findings that the legal remedy provided by the state's attachment statutes under Rule 64 is inadequate . . . ." EBSCO Indus., Inc. v. Lilly, 840 F.2d 333, 336 (6th Cir. 1988) (citation omitted). An adequate legal remedy "is a remedy that is plain and complete and as practical and efficient to the ends of justice as the remedy in equity by injunction." USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 99 (6th Cir. 1982) (citation omitted).

The plaintiffs argue that they hold an equitable interest in the funds invested in the Partnerships because the defendants obtained those funds fraudulently. Therefore, the plaintiffs contend that the damage they may suffer absent a preliminary injunction is not fully compensable by monetary damages because there is a possibility the defendants are attempting to dissipate and/or conceal the money invested by the plaintiffs. Without an injunction to prevent the defendants from concealing or dissipating these assets, the defendants might not be able to satisfy a judgment if one is entered against them. Aside from denying these allegations, the defendants respond by arguing that Kentucky's prejudgment attachment statute provides an adequate remedy at law.

Kentucky's prejudgment attachment statute does not provide an adequate remedy at law under the facts of this case. Similarly, the injury the plaintiffs would suffer absent a preliminary injunction would not be fully compensable by monetary damages. There was evidence presented at the evidentiary hearing suggesting that the defendants previously negotiated to sell their own interest in the oil and gas wells to Appalachian Drilling Company, Inc. Although those negotiations fell through, the evidence also suggests that the defendants are currently negotiating to sell not only their own interest in the oil and gas wells to another potential purchaser, but also all of the investors' interests in the Partnerships without the investors' approval or consent, perhaps resulting in a sale for less than full value and an operator of unknown qualifications. The investors contributed more than $10 million to complete various oil and gas wells, but no wells have been completed. Mark Haynes also testified that interests in various defendant individuals and entities were transferred to trusts without the payment of any consideration.

In light of this evidence, the Court finds that there is a strong possibility that the defendants may dissipate assets before an order of attachment can be issued. Additionally, the Court finds that Kentucky's attachment statute is inadequate because of the strong possibility that the defendants may attempt to conceal assets making attachment difficult, if not impossible. See Lilly, 840 F.2d at 336 (affirming finding of district court that a prejudgment attachment statute does not provide an adequate remedy at law when there are steps taken to conceal assets making attachment difficult). Although not dispositive of the matter, David Stewart's conviction for tax evasion, which required a willful attempt to evade taxes, see 26 U.S.C. § 7201, supports the plaintiffs contention that the defendants are inclined to conceal assets in order to defraud the plaintiffs. If the defendants are not enjoined from dissipating their assets outside the ordinary course of business or enjoined from

9

otherwise concealing their assets, an award of money would not protect the plaintiffs' interest in those assets if they are so depleted or concealed before a judgment is entered.  See Carbomin, 689 F.2d at 97-98 (upholding a freeze order where "the defendants' property was likely to be the subject of a constructive trust imposed for the benefit of the plaintiffs").

### 3. *Substantial Harm to Others*

Next, the Court must determine whether an injunction to freeze the defendants' assets would cause substantial harm to others.  Tenke, 511 F.3d at 550-51.  This factor requires the Court to determine whether the harm that would be suffered by the plaintiffs if the Court did not grant the injunction outweighs the harm that would be suffered by the defendants or others if the injunction is granted.  See Aluminum Workers Int'l Union v. Consol. Aluminum Corp., 696 F.2d 437, 444 (6th Cir. 1982).  The plaintiffs argue that the defendants would suffer minimal harm if the injunction is granted because the defendants could still operate the oil and gas wells.  Only under limited circumstances would the defendants need to seek court approval before selling or otherwise moving assets.  The defendants argue that not only would they be harmed if they are not permitted to carry out their ordinary course of business, but so would the investors who are not parties to this action.  The Court finds that the potential harm to the plaintiffs absent a preliminary injunction outweighs the harm to the defendants and other investors if a preliminary injunction is granted.  Under the preliminary injunction the Court is granting, the defendants would only be required to seek court approval under limited circumstances.  The defendants' business operations will not be substantially affected by the Court's Order.

### 4. *Public Interest Served by the Injunction*

The final factor the Court must evaluate is "whether the public interest would be served by

the issuance of the injunction." Tenke, 511 F.3d at 551. The plaintiffs argue that the public interest is served if the defendants are prohibited from dissipating or concealing assets fraudulently obtained. The defendants argue that the public interest is served if the contracts the parties entered into are enforced. As it is in the public interest "to protect against fraud and to make victims of fraud whole," S.E.C. v. Asset Recovery & Mgmt. Trust, S.A., 340 F. Supp. 2d 1305, 1311 (M.D. Ala. 2004), the public interest is best served by the issuance of an injunction.

### III. CONCLUSION

On balance, the Court finds that a preliminary injunction freezing the defendants' assets is warranted. Accordingly, **IT IS HEREBY ORDERED** that the plaintiffs' motion for a preliminary injunction [DN 2] is **GRANTED** and the plaintiffs' motion for a temporary restraining order [DN 83] is **DENIED AS MOOT**. The Court will enter a preliminary injunction by separate Order.

cc:    Counsel of Record