# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

**CIVIL ACTION NO.: 1:08CV-94-M**

**FREDERICK P. CLAYTON, JR., et al.**                                                    **PLAINTIFFS**

**v.**

**HEARTLAND RESOURCES, INC., et al.**                                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter arises out of two separate actions against the defendants filed in the Western District of Kentucky.[1] One of the defendants, Hunter Durham, filed a motion to dismiss Claim 143 [DN 80], a motion for judgment on the pleadings related to Claim 94 [DN 78], and a motion for oral arguments [DN 102]. After the Court consolidated the causes of action, the plaintiffs filed a first amended complaint joining the parties and the allegations from Claim 143 and Claim 94 and correcting a typographical error (hereinafter "Consolidated Complaint"). Durham filed a subsequent motion to dismiss the Consolidated Complaint [DN 126] wherein he incorporated the arguments made in his prior motions referenced above. Also before the Court is a motion by various defendants to Alter, Amend, or Vacate [DN 109] the preliminary injunction previously issued by the Court. Having been fully briefed, these matters are ripe for decision.

## I. INTRODUCTION

The plaintiffs allege that the defendants offered and sold oil and gas securities to them in violation of various federal and state securities laws. The motion to dismiss at issue here involves

---

[1] The Court previously consolidated the two actions, Able Fence Co. Profit Sharing Plan, et al. v. Heartland Resources, Inc., et al., 1:08CV-143-M (hereinafter "Claim 143") and Frederick P. Clayton, Jr., et al. v. Heartland Resources, Inc., et al., 1:08CV-94-M (hereinafter "Claim 94"), into the latter Claim 94.

only one defendant, Hunter Durham.[2]  Durham, who at relevant times acted as the attorney for the Heartland Defendants, seeks to dismiss all of the claims asserted against him because the plaintiffs have failed to state a claim upon which relief can be granted.

## II.  MOTION TO DISMISS

The plaintiffs allege that Durham violated § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), § 12(a)(2) of the Securities Act of 1933 ("Securities Act"), Kentucky and Tennessee blue sky and consumer protection laws, and various common law torts.  Durham argues that the plaintiffs have not alleged any direct contacts between them and Durham.  Because of this failure, Durham contends that he had no duty to the plaintiffs and can therefore not be liable for the misrepresentations or omissions that are only attributable to the Heartland Defendants.  Each of Durham's arguments will be addressed in turn.

### A.  Legal Standard

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief."  League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citing Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006)).  This standard requires more than bare assertions of legal conclusions.  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some

---

[2]   The defendants other than Durham will hereinafter be referred to as the "Heartland Defendants."

2

viable legal theory." Bredesen, 500 F.3d at 527 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007)).

### B. Section 10(b) of the Exchange Act

The plaintiffs allege that Durham violated the "anti-fraud" provision, § 10(b), of the Exchange Act, 15 U.S.C. § 78j(b). In relevant part, § 10(b) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). The S.E.C. regulation promulgated under § 10(b) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. The basic elements of a cause of action under this anti-fraud provision are "(1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation." Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 917 (6th Cir. 2007) (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005)). The Sixth Circuit defines scienter as "knowledge or recklessness." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 681 (6th Cir. 2004) (citing Helwig v. Vencor, Inc., 251 F.3d 540, 552 (6th Cir. 2001)). Recklessness is "'highly unreasonable conduct

3

which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.'" Id. (quoting Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1025 (6th Cir. 1979)).

Durham argues that the plaintiffs have failed to state a claim upon which relief can be granted because the plaintiffs did not plead Durham's scienter with sufficient particularity. Furthermore, Durham asserts that the plaintiffs have failed to allege that he made any material misrepresentations or omissions.

### 1. Pleading Requirements

Traditionally, a party alleging fraud under the anti-fraud provision of the Exchange Act was required to "state with particularity the circumstances constituting fraud[,]" but was permitted to generally allege "[m]alice, intent, knowledge, and other conditions of a person's mind . . . ." Fed. R. Civ. P. 9(b); Chandler, 364 F.3d at 682. Under this pleading standard, plaintiffs were permitted to plead scienter generally. However, in enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress created § 21D of the Exchange Act, 15 U.S.C. § 78u-4, which heightened this pleading standard. Section 21D(b)(2) requires that:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). In imposing this heightened pleading standard, "'the PSLRA did not change the scienter that a plaintiff must prove to prevail in a securities fraud case but instead changed what a plaintiff must plead in his complaint in order to survive a motion to dismiss.'" Chandler, 364 F.3d at 682 (quoting Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.),

4

183 F.3d 542, 548-49 (6th Cir. 1999)). Therefore, if a plaintiff does not plead "with particularity facts giving rise to a strong inference" of scienter, i.e. knowledge or recklessness, "a court may, on any defendant's motion, dismiss the complaint." Id. (citing 15 U.S.C. § 78u-4(b)(3)). Under this standard, as when ruling upon any other Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 2509 (2007) (citation omitted). Similarly, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss . . . ." Id. In determining whether the alleged facts give rise to a strong inference of scienter, the Court is to perform a "comparative inquiry" by taking "into account plausible opposing inferences." Id. The facts alleged in the complaint, when considered in their entirety, give rise to a strong inference of scienter "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 2510. Durham argues that the plaintiffs have not met this heightened pleading standard.[3]

The Court disagrees. In their Consolidated Complaint, the plaintiffs allege that Durham represented the Heartland Defendants since at least 2002 in matters related to securities. (Consol.

---

[3] Durham also argues that in enacting the PSLRA, Congress abolished the doctrine of "group pleading." This doctrine "'allow[ed] a plaintiff to plead that defendants made a misstatement or omission of a material fact without pleading particular facts associating the defendants to the alleged fraud.'" In re Huffy Corp. Sec. Litig., 577 F. Supp. 2d 968, 984 (S.D. Ohio 2008) (quoting Winer Family Trust v. Queen, 503 F.3d 319, 335 (3d Cir. 2007)). Although the Sixth Circuit has not decided whether the group pleading doctrine was abolished by the PSLRA, see City of Monroe Employees Retirement Sys. v. Bridgestone Corp., 399 F.3d 651, 690 (6th Cir. 2005), other Circuits and district courts within the Sixth Circuit have held that it has, see Huffy, 577 F. Supp. 2d at 984 (acknowledging a split in the Circuits on the issue and holding that the group pleading doctrine was abolished by the PSLRA). Because the plaintiffs have sufficiently pled facts giving rise to a strong inference of scienter on the part of Durham individually, the Court need not decide whether the group pleading doctrine has been abolished.

Compl. ¶ 25.) The plaintiffs also allege that Durham prepared private placement memoranda or offering documents on behalf of the Heartland Defendants which contained material misrepresentations or omissions. While representing the Heartland Defendants, but before preparing various offering documents, the state of Alabama issued an order prohibiting Heartland Resources and other defendants from selling securities within that state. The offering documents issued after that order only indicated that the defendants were "currently negotiating" with the state of Alabama regarding a "temporary" order. (Id.) The plaintiffs allege that the Alabama order was not temporary. Also during the time that Durham represented the Heartland Defendants, David Stewart was under investigation, indicted, and pled guilty to tax evasion. (Id. ¶ 184.) However, none of the private placement memoranda prepared by Durham disclosed this conviction. Instead, the offering documents indicated that David Stewart resigned for "personal reasons." (Id. ¶ 184-185.) Also during the time that Durham was alleged to have represented the defendants, Heartland Resources employed various salesmen that were paid a commission. (Id. ¶ 187-188.) The offering documents at issue, however, indicate that the salesmen were not paid a commission. (Id.) By representing the Heartland Defendants during this time period, the plaintiffs attempt to establish an inference that Durham was aware of the securities related matters involving the Heartland Defendants. If he was aware of these matters then the plaintiffs contend that Durham prepared the offering materials knowing that they contained false or misleading information. This certainly is one inference that can be drawn from the alleged facts. Another inference is that Durham was reckless in not knowing of the falsity of the offering documents he drafted. This also would be sufficient to establish the scienter element of a § 10(b) claim. On the other hand, another inference that could be drawn is that Durham was simply negligent or otherwise did not know that the offering documents were false.

At this stage of the litigation, however, the Court finds that the inference that Durham acted with the requisite scienter is just as strong as the inference that he was negligent or otherwise not aware of the falsehoods contained in the offering material. Therefore, the plaintiffs have met the pleading requirements of the PSLRA.

> **2.     Liablity of Attorney for Misrepresentations or Omissions in Offering Documents**

Durham asserts that the plaintiffs have alleged a textbook case of aiding and abetting a violation of § 10(b) of the Exchange Act, but that such aider and abettor liability was abolished by the Supreme Court in <u>Central Bank of Denver v. First Interstate Bank</u>, 511 U.S. 164 (1994). Furthermore, as an attorney who merely prepared the offering documents for the Heartland Defendants, Durham contends that he made no representations. Instead, he argues that any representations contained in the documents are those of the issuer and not the attorney who drafted them. The plaintiffs acknowledge that aider and abetter liability was abolished in <u>Central Bank</u>. The plaintiffs assert, however, that they have not brought a claim for aider and abettor liability, but instead, for primary liability. Furthermore, the plaintiffs contend that an attorney who substantially participates in preparing offering documents is liable to investors who relied upon misrepresentations made in those documents.

In <u>Central Bank</u>, the Supreme Court held "that a private plaintiff may not maintain an aiding and abetting suit under § 10(b) [of the Exchange Act]." <u>Central Bank</u>, 511 U.S. at 191. The Court reasoned that § 10(b) was designed to prohibit only conduct that involved manipulation or deception. <u>Id.</u> at 173-175. If private plaintiffs were able to recover from those who aid and abet a § 10(b) violation, then liability would "reach[] persons who do not engage in the proscribed activities at all, but who give a degree of aid to those who do." <u>Id.</u> at 176. This type of liability is

7

not permitted by the text of § 10(b). Id. The absence of § 10(b) aiding and abetting liability, however, "does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability under Rule 10b-5 are met." Id. at 191 (citation omitted) (emphasis in original).

Generally, a party to a business transaction has no duty disclose material information unless the party undertakes such a duty, or unless there is a special relationship between the parties. In re Nat'l Century Fin. Enters., Inc., Inv. Litig., 541 F. Supp. 2d 986, 998 (S.D. Ohio 2007) (hereinafter "Century Financial"). An attorney representing a seller in a securities transaction, for example, who might not otherwise have a duty to disclose material information, undertakes a duty "to provide complete and nonmisleading information with respect to subjects on which he undertakes to speak." Rubin v. Schottenstein, Zox & Dunn, 143 F.3d 263, 268 (6th Cir. 1998). Therefore

> only those individuals who had an *affirmative obligation* to reveal what was allegedly omitted can be held as primary participants in the alleged deception . . . . A person undertaking to furnish information which is misleading because of a failure to disclose a material fact is a primary participant. Conversely, a person who does not undertake to furnish any information, and who is not aware of what information has been furnished, is under no duty to disclose material information in his possession.

Molecular Tech., 925 F.2d at 917 (emphasis in original) (quoting SEC v. Wash. County Utility Dist., 676 F.2d 216, 223 (6th Cir. 1982)). Under this test, "[a]n accountant or lawyer . . . who prepares a dishonest statement is a primary participant in a violation even though someone else may conduct the personal negotiations with a security purchaser." Rubin, 143 F.3d at 267 (quoting SEC v.

Coffey, 493 F.2d 1304, 1315 n.24 (6th Cir. 1974)). Molecular Technology illustrates when an attorney may be primarily liable. In Molecular Technology, Snyder, an attorney hired by a company to effect a merger, reviewed various statements concerning the merger made in an offering circular. Molecular Tech., 925 F.2d at 913. Before returning the offering circular to the company, Snyder edited several paragraphs and made handwritten insertions. Id. at 913-914. These changes were incorporated by the company into an amended offering circular and made available to investors. Id. at 914. However, the offering circular omitted material information regarding the merger. Id. at 918. From these facts, the Sixth Circuit held that "a reasonable jury could find that Snyder knew certain information in the amended offering circular was misleading and that Snyder had a duty to disclose that information to investors such as the plaintiffs under 10(b)/rule 10b-5." Id. at 918. In other words, the Sixth Circuit determined that Snyder had an affirmative obligation to disclose this material information in the offering circular and that his failure to do so made him liable as a primary participant under § 10(b).[4] "[A]pproving or assisting in the preparation of false and misleading offering circulars . . . 'qualifies as furnishing or supplying information to potential investors in a sufficiently direct manner to impose 10b-5 primary liability . . . .'" Rospatch, 760 F.

---

[4] Durham contends that in Molecular Technology, the Sixth Circuit merely held that Snyder could be liable for aiding and abetting liability which was subsequently abolished by the Supreme Court in Central Bank. Durham's interpretation of Molecular Technology is flawed. By assisting in the preparation of an offering circular that he knew would be circulated to investors, the Sixth Circuit found that Snyder had undertaken an affirmative duty to reveal material information, thus imposing primary liability on Snyder for his failure to do so. Id. at 918; see also Atlantis Group, Inc. v. Rospatch Corp. (In re Respatch Sec. Litig.), 760 F. Supp. 1239, 1249-1250 (W.D. Mich. 1991) ("The Sixth Circuit held that the attorney [Snyder] had a duty to disclose such information to investors and could consequently be held liable for *primary* federal securities violations under section 10(b).") (citation omitted) (emphasis added); James D. Cox, Just Deserts for Accountants and Attorneys after Bank of Denver, 38 Ariz. L. Rev. 519, 522 (1996) ("Snyder . . . was held to be one of the *primary* participants in a fraudulent scheme.") (emphasis added).

Supp. at 1250 (quoting Mercer v. Jaffe, Snider, Raitt & Heuer, P.C., 713 F. Supp. 1019, 1025 (W.D. Mich. 1989)). Therefore, the Court finds that the plaintiffs have sufficiently alleged a claim of primary liability against Durham for any material misrepresentations or omissions he made in the offering documents.

Durham also contends that, even if he did make various material misstatements or omissions in the offering documents, he is absolved of liability because of a disclaimer he placed in the offering material. Specifically, each private placement memoranda contained a statement that Durham assisted in preparing the document, but that "Durham . . . makes no representation as to the accuracy of the materials contained herein . . . ." Durham's position is untenable. In Century Financial, the Southern District of Ohio addressed this specific issue. There, the defendant placed various disclaimers in the offering documents, one of which stated that the defendant "made no 'representations or warranties as to the accuracy or completeness of the information' contained in the offering materials." Id. at 1004. Judge Graham held that the disclaimers did not prevent the plaintiffs from asserting a claim against the defendant for any material misrepresentations and omissions the defendant made in the offering documents. Id. He found that "general disclaimers of accuracy do not shield sellers who knowingly make false statements." Id. (citing Arnold v. Nat'l Aniline & Chemical Co., 20 F.2d 364, 369 (2d Cir. 1927) ("[I]f a deliberate fraud may be shielded by a clause in a contract that the writing contains every representation made by way of inducement, or that utterances shown to be untrue were not an inducement to the agreement, sellers of bogus securities may defraud the public with impunity, through the simple expedient of placing such a clause in the prospectus which they put out, or in the contracts which their dupes are asked to sign."). Furthermore, "it would defeat the securities laws if parties could escape liability for their

own deliberate misrepresentations by inserting boilerplate disclaimers into offering materials." Id. (citation omitted). Because the plaintiffs sufficiently alleged that Durham knowingly made various misstatements and omissions in the offering documents, he cannot escape liability merely by disclaiming the accuracy of the material contained in those offering documents. Because the Court does not find this, nor Durham's other arguments persuasive, his motion to dismiss as to the plaintiffs' claim under § 10(b) of the Exchange Act will be denied.

### C. Section 12(a)(2) of the Securities Act

The plaintiffs have also asserted a claim against Durham under § 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2). That section provides:

> Any person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . to the person purchasing such security from him . . . .

15 U.S.C. § 77*l*(a)(2). According to Durham, the plaintiffs have not alleged that he sold or actively solicited the sale of the securities at issue. He argues that the plaintiffs have therefore failed to state a claim against him under § 12(a)(2). On the other hand, the plaintiffs argue that a person who prepares and disseminates a false prospectus "offers or sells a security" within the meaning of § 12(a)(2). Since the Consolidated Complaint alleges that Durham prepared the private placement memoranda at issue, the plaintiffs contend they have stated a claim under the Securities Act.

To state a claim under § 12(a)(2), the allegations in the complaint must "show either directly or inferentially that [Durham was the] person 'from' whom plaintiffs 'purchased' securities within the meaning of the statute." Mercer, 713 F. Supp. at 1024. This definition includes not only those

11

who pass title, but also those who solicit an offer or sale. Pinter v. Dahl, 486 U.S. 622, 642, 644 (1988); see also Smith v. Am. Nat'l Bank & Trust Co., 982 F.2d 936, 942 (6th Cir. 1992) (liability only attaches to those who "either passed title or offered to do so, or solicited an offer.").[5] Although the Court in Pinter defined "offer or sell" broadly, the definition is not so broad so as to include "professionals, such as attorneys or accountants, whose participation is confined to providing professional services." Riedel v. Acutote of Colo., 773 F. Supp. 1055, 1062 (S.D. Ohio 1991) (citing Pinter v, 486 U.S. at 647, 651). This is so "because, quite obviously, buyers commonly do not say that they purchased securities from lawyers or law firms that helped to prepare promotional material or offering statements." Mercer, 713 F. Supp. at 1024. Applying these principles to the facts alleged in the Consolidated Complaint, the Court finds that the plaintiffs have not sufficiently stated a claim against Durham under § 12(a)(2). Although they allege that Durham prepared the private placement memoranda at issue and that Durham made himself available to answer questions from any potential investor regarding the securities, these allegations are insufficient to impose liability on an attorney under § 12(a)(2). These allegations are all consistent with the rendering of professional services by an attorney. Even if answering questions of a potential investor regarding the securities was sufficient to establish that an attorney was an offeror or seller under § 12(a)(2), there is no allegation that any such contact was made prior to the sale of the securities at issue. Therefore, Durham is not alleged to have "actively participated in the solicitation" of the sale of the securities. See Smith, 982 F.2d at 942. Durham's motion to dismiss as to this claim will be granted.

---

[5] Although the Supreme Court in Pinter was defining "offer or sell" within the meaning of § 12(a)(1) of the Securities Act, "[e]very appellate court that has considered the question has determined that Pinter applies to section [12(a)(2)] claims." Mercer, 713 F. Supp. at 1024 (citing Wilson v. Saintine Exploration & Drilling Corp., 872 F.2d 1124, 1126-27 (2d Cir. 1989)).

### D.  Tennessee and Kentucky Blue Sky Laws

The plaintiffs allege various violations of Tennessee and Kentucky Blue Sky laws. Durham argues that these claims should be dismissed for the same reasons he argued the claims arising under the federal securities laws should be dismissed. Both Kentucky and Tennessee have interpreted their securities laws consistent with federal law. See, i.e., Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 916-917 (6th Cir. 2007); Constantine v. Miller Indus., Inc., 33 S.W.3d 809, 813-814 (Tenn. App. 2000). Unlike federal law, however, both Kentucky and Tennessee securities laws provide that "every . . . agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person . . . ." Tenn. Code Ann. § 48-2-122(g); see also KRS 292.480(4) ("every . . . agent who materially aids in the sale or purchase is also liable jointly and severally with and to the same extent as the seller or purchaser . . . ."). These provisions, modeled after § 410(b) the Uniform Securities Act of 1956, have been interpreted in other jurisdictions as imposing aiding and abetting liability on those who materially assist others in violating the state's securities laws. See Arthur Young & Co. v. Reves, 937 F.2d 1310, 1325 (8th Cir. 1991) (interpreting a similar provision under Arkansas law as creating "two types of secondary liability for securities fraud, control person liability and aiding and abetting liability.") (citation omitted); see also Prince v. Brydon, 764 P.2d 1370, 1371-1372 (Or. 1988) (finding that a lawyer who prepared an offering statement for the sale of securities "materially aided" the issuer in the sale under Oregon's version of § 410(b)). The Court finds the foregoing authorities persuasive and will therefore deny Durham's motion to dismiss the plaintiffs' claims arising under state securities laws.

### E. Tennessee Consumer Protection Act ("TCPA")

Two plaintiffs, Clayton and Monypeny, argue that Durham violated the Tennessee Consumer Protection Act when he allegedly prepared a false or misleading offering document. Durham contends, however, that any false or misleading statements are not attributable to him, but to the other defendants. The TCPA provides that "[a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages." Tenn. Code Ann. § 47-18-109(a)(1). The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce . . . ." Tenn. Code Ann. § 47-18-104(a). A "deceptive act or practice" can be demonstrated "by evidence of 'a material representation, practice or omission likely to mislead a reasonable consumer.'" Hinton v. Wachovia Bank of Del. Nat'l Ass'n, 189 Fed. Appx. 394, 400 (6th Cir. 2006) (unpublished) (quoting Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997)). However, "[n]o showing of deceptive intent is required." Id. (citing Menuskin v. Williams, 145 F.3d 755, 767-768 (6th Cir. 1998)). In Menuskin, the Sixth Circuit addressed whether an attorney, who prepared documents for a client, could be liable for a violation of the TCPA. There, an attorney prepared a warranty deed for a client who was selling property. Menuskin, 145 F.3d at 760-761. The deed incorrectly stated that the property was being sold free and clear of any encumbrances. Id. at 761. Other than the receipt of the deed, which indicated it was prepared by the attorney, the purchaser plaintiffs never had any contact with the attorney. Id. The Court held that these facts were sufficient for the plaintiffs to survive a motion for summary judgment. Id. at 767-768. Similar allegations are made here. Other than preparing

14

the alleged fraudulent offering documents in question, there was no other alleged contacts between Durham and the plaintiffs prior to the purchase of the securities. However, as Menuskin exemplifies, these allegations are sufficient to state a claim under the TCPA. Durham's motion as to this claim will therefore be denied.

### F.  Common Law Fraud

The plaintiffs assert a claim of common law fraud against Durham. Durham argues that this claim should be dismissed because the plaintiffs did not comply with the pleading requirements of Fed. R. Civ. P. 9(b). As with the plaintiffs' § 10(b) claim, Durham also argues that any misrepresentations made in the offering document are representations of his client (the other defendants), but not of him. "In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." United Parcel Serv. Co. v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999) (citation omitted). Although an attorney generally does not owe a duty to a third party, see Baker v. Coombs, 219 S.W.3d 204, 208 (Ky. Ct. App. 2007), "an attorney still may be liable for damages to a third party because of events arising out of his representation of a client if the attorney's acts are fraudulent or tortious and result in injury to that third person," id. (citing Rose v. Davis, 157 S.W.2d 284, 284-285 (Ky. 1941)). In their Consolidated Complaint, the plaintiffs identify various alleged misrepresentations in the offering documents prepared by Durham. Furthermore, the plaintiffs allege that Durham knew the representations were false at the time he drafted the offering documents. These allegations comply with the pleading requirements of Rule 9(b) and are sufficient to state a claim for fraud under Kentucky law. Therefore, Durham's motion

as to the claims based upon common law fraud will be denied.

### G.  Breach of Fiduciary Duty

The plaintiffs also allege that Durham owed them a fiduciary duty which he breached. They contend that the Heartland Defendants owed the plaintiffs a fiduciary duty. Because Durham allegedly conspired with the Heartland Defendants, the plaintiffs contend that Durham also owed the plaintiffs a fiduciary duty. The Court disagrees. A fiduciary relationship exists in those types of cases "'where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" Henkin, Inc. v. Berea Bank & Trust Co., 566 S.W.2d 420, 424 (Ky. Ct. App. 1978) (quoting Sec. Trust Co. v. Wilson, 210 S.W.2d 336 (1948)). Kentucky courts have held that a fiduciary duty is owed to one in a confidential relationship, id., and by those in positions of trust, Steelvest, Inc. v. Scansteel Serv. Center, Inc., 807 S.W.2d 476, 485 (Ky. 1991) (citation omitted). Attorneys therefore owe there clients a fiduciary duty. Daugherty v. Runner, 581 S.W.2d 12 (Ky. Ct. App. 1978). Here, however, the plaintiffs have neither alleged that Durham acted as their attorney, nor have they alleged any other type of confidential relationship from which a fiduciary duty would arise. The only contact that Durham had with the plaintiffs was in connection with the offering documents Durham prepared upon which the plaintiffs allegedly relied. This simply does not give rise to a fiduciary relationship. Durham's motion as to this claim will be granted.

### H.  Conversion

The last claim the plaintiffs' assert against Durham is for conversion. Conversion is "the wrongful exercise of dominion and control over property of another." State Auto. Mut. Ins. Co. v. Chrysler Credit Corp., 792 S.W.2d 626, 627 (Ky. Ct. App. 1990) (citation omitted). To state a claim

for conversion, it must be alleged that "'(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.'" Meade v. Richardson Fuel, Inc., 166 S.W.3d 55, 58 (Ky. Ct. App. 2005) (quoting Ky. Ass'n of Counties All Lines Fund Trust v. McClendon, 157 S.W.3d 626, 632 n.12 (Ky. 2005)). Here, the plaintiffs' conversion claim against Durham fails because there is no allegation that he ever exercised dominion and control over the plaintiffs' investment monies. Instead, the gravamen of the plaintiffs' complaint is that Durham prepared offering documents knowing that they contained material misstatements or omissions. It is the Heartland Defendants who allegedly used those offering documents to procure the plaintiffs' investment monies. Because there is no allegation that Durham ever exercised dominion and control over the plaintiffs' property, his motion to dismiss the conversion claim will be granted.

### III. PRELIMINARY INJUNCTION

The Heartland Defendants request that the Court alter, amend, or vacate the preliminary injunction [DN 104] previously entered by the Court because it prevents the Heartland Defendants from operating in the normal course of business. In entering the preliminary injunction, the Court was concerned with attempts by the Heartland Defendants to dissipate or conceal assets so as to prevent them from satisfying any final judgment entered in the plaintiffs' favor. (DN 103 at 8-10.)

The Court, however, did not intend that the Heartland Defendants would be prohibited from operating in the ordinary course of business. Allowing the transfer of assets between the Heartland companies so as to allow employees, officers, and directors to be paid an ordinary salary is necessary to operate in the ordinary course. Likewise, paying customary legal fees, including fees to defend this action are necessary to operate in the ordinary course. The Court finds that the preliminary injunction has prohibited the Heartland Defendants from engaging in such activities. Therefore, the Court further finds it necessary to vacate the preliminary injunction and enter an amended preliminary injunction as set forth in the Court's Order. The Heartland Defendants' motion will therefore be granted.

## IV.  CONCLUSION

For the reasons set forth above **IT IS HEREBY ORDERED** that the motion by Hunter Durham to dismiss [DN 126] is **GRANTED in part** and **DENIED in part**. It is granted as to the plaintiffs' claims for liability under § 12(a)(2) of the Securities Act of 1933, for breach of fiduciary duty, and for conversion. It is denied as to all other claims.

**IT IS FURTHER ORDERED** that the motions by Hunter Durham to dismiss [DN 80] and for judgment on the pleadings [DN 78] are **DENIED as moot**.

**FURTHER** that the motion by Hunter Durham for oral arguments [DN 102] is **DENIED**.

**FURTHER** that the motion by the Heartland Defendants to alter, amend, or vacate [DN 109] the preliminary injunction is **GRANTED**. The Court will enter an amended preliminary injunction by separate Order.

cc:     Counsel of Record                          18