## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

| | |
|---|---|
| FREDERICK P. CLAYTON, JR., ET AL., ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 1:08-cv-94-M |
| ) | Judge McKinley |
| HEARTLAND RESOURCES, INC., ) ET AL., ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |

---

## PLAINTIFFS' RENEWED AND RESTATED MOTION
## FOR THE APPOINTMENT OF A RECEIVER

---

Plaintiffs filed a motion on April 16, 2009 seeking the appointment of a Receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure. A ruling on the merits of that motion was never made due to the fact that two of the Entity Defendants, Heartland Resources, Inc. and Hydrocarbon Operating Company, Inc. a/k/a Heartland Operating Company, Inc., filed bankruptcy petitions on the night before the receivership motion was set to be heard. [Docket Entry 167.]

On September 28, 2009, however, the Bankruptcy Court entered orders in both of the Heartland bankruptcy cases granting relief from the stay imposed by § 362 of the Bankruptcy Code. Those orders have been separately filed with this Court. [Docket entries 46 and 76.]

The orders granting stay relief expressly authorize this District Court to adjudicate the Plaintiffs' motion seeking the appointment of a receiver. Therefore, the Plaintiffs hereby renew and restate their earlier motion as set out below:

2677612.18

Pursuant to Rule 66 of the Federal Rules of Civil Procedure, the Plaintiffs move the Court to appoint William B. Blackmon of Middlesboro, Kentucky, as the Receiver of the Heartland Entity Defendants, and the assets thereof (the "Assets").[1] In support of this Motion, the Plaintiffs rely upon the following:

1.      Filings made by the Heartland Defendants[2] pursuant to this Court's Preliminary Injunction entered January 8, 2009 and amended on March 24, 2009.

2.      The Affidavit of James A. Skinner, as president of Cumberland & Ohio Co. of Texas, which provides financial review services to counsel for Plaintiffs.

3.      The Bankruptcy Petitions, including schedules thereto, (as amended), filed by Heartland Resources, Inc. and Hydrocarbon Operating Company, Inc.[3]

4.      The transcripts of testimony taken pursuant to § 2004 of the Bankruptcy Code of Diana Reynolds, Richard Stewart, Mark Haynes, and David Stewart.

5.      The Plaintiffs' previously filed Memorandum of Law, and Reply Brief [Docket Entries 145 and 159] together with the entire record in this civil action, and would show the Court as follows:

> 1.      Plaintiffs are investors in the Partnerships and working interests in oil and gas properties by virtue of having purchased securities in the form of investment units in the Partnerships and working interests in oil and gas wells from the Defendants.
>
> 2.      The purchases of these securities makes the Plaintiffs partners in the various partnership entities that issued and sold partnership units.

---

[1] For purposes of this motion, the term "Heartland Entity Defendants" means Heartland Holding Company, Inc., Heartland Resources, Inc., Hydrocarbon Operating Company, Inc, Heartland Excavating, Inc. and Heartland Drilling, Inc., as well as the Kentucky general and limited partnerships that are named defendants in this action (the "Partnerships).

[2] For purposes of this motion, the term "Heartland Defendants" means all defendants except for Defendant Hunter Durham.

[3] The evidentiary material stated in items 3, and 4 will be separately filed.

2677612.18                                    2

3.    As partners, the Plaintiffs have an interest in the assets and business of the Partnerships.

4.    The Defendants have disclosed, in their filings of financial statements made pursuant to the Court's Preliminary Injunction, that the Heartland Entity Defendants (including Heartland Holding Company, which controls or owns directly or indirectly almost all of the Heartland Entity Defendants) are insolvent, and the remaining assets of the Partnerships, consisting primarily of working interests in oil and gas wells (the "Wells"), are in danger of being lost due to improper management by David Stewart, Richard Stewart, Mark Haynes and others. For example, the Heartland Defendants face federal payroll and other tax liens amounting to over $900,000 and judgments amounting to $689,369. In addition, Hydrocarbon Operating Company, Inc., which holds oil and gas leases and interests in wells and operates wells on behalf of the Partnerships, is incapable of operating the Wells because the Kentucky Division of Oil and Gas Conservation has caused Hydrocarbon Operating Company's operating bond to be forfeited and the Wells are not being operated. The Heartland Entity Defendants have, instead of servicing debt obligations and making deposits of federal payroll taxes, engaged in a systematic plundering of the monies made available by investors and gas revenues for their personal purposes (*see* paragraph 14 hereof) and, as a result, have left the Partnerships financially vulnerable and the "Operating Entities," as defined by the Court's Amended Preliminary Injunction entered on March 24, 2009, unable to provide well management and operating services to the Partnerships.

5.    Defendant Hydrocarbon Operating Company, Inc., which holds title to oil and gas leases and wells and operates wells for the benefit of the Partnerships, is insolvent and subject to approximately $190,000 of federal payroll tax liens and $157,000 of judgments. Exhibit A to the previously filed motion[4] is a copy of the statement of assets and liabilities of Hydrocarbon Operating Company, Inc. filed with the Court on January 28, 2009, pursuant to the Preliminary Injunction. Hydrocarbon Operating Company, Inc. owns working or overriding royalty interests in approximately 55 gas wells in Kentucky, working interests in which are also owned by various of the Partnerships.

6.    Defendant Heartland Resources, Inc., which received oil and gas revenues from third-party purchasers on behalf of the Partnerships when the Wells were in operation, is insolvent and subject to approximately $253,000 of federal payroll tax liens and $244,000 of judgments. Exhibit B is a copy of the statement of assets and

---

[4] Exhibits A through L were filed with Plaintiffs' original motion seeking the appointment of a Receiver. Those exhibits were incorporated by reference in this renewed motion and are not separately refiled.

2677612.18                                            3

liabilities of Heartland Resources, Inc. filed with the Court on January 28, 2009, pursuant to the Preliminary Injunction.

7.      Section 13.1(a) and Section VIII.A of the Heartland Resources, Inc. form general partnership agreement and form limited partnership agreement, respectively applicable to each of the Partnerships, provide that the partnership shall dissolve upon the insolvency of Heartland Resources, Inc. (as the general or managing partner of the partnership).  Collective Exhibit C are copies of a representative general partnership agreement and a representative limited partnership agreement. Accordingly, given the insolvency of Heartland Resources, Inc., each of the Partnerships should be in dissolution, a process which requires certain liquidating actions pursuant to the applicable form partnership agreement. Each of the Partnerships, however, is a Defendant in this action, and the appointment of a Receiver for the former managing or general partner of each of the Partnerships, Heartland Resources, Inc., will facilitate a more orderly liquidation, enable a more profitable and efficient operation of the Wells and will likely result in a greater value for the Wells and other assets upon sale. Notwithstanding that Heartland Resources, Inc. acknowledges, in each Private Placement Memorandum provided to prospective investors ("PPM"), that it is a fiduciary, at no time has Heartland Resources, Inc. or any of its officers disclosed to the Court, investors, or counsel for Plaintiffs that each Partnership has dissolved. Instead, the Defendants have continued to use the Partnerships as sources of cash for their personal endeavors.

8.      Each of the Partnerships is a party to an Operating Agreement, pursuant to which the "Operator" (originally designated as Heartland Resources, Inc., but subsequently assigned to Hydrocarbon Operating Company, Inc. by Heartland Resources, Inc.) is required to operate and maintain wells in which a Partnership holds a working interest. Copies of the assignments for Partnerships Heartland-Eastern Kentucky Development, GP and Heartland-Razorback Development, GP are Collective Exhibit D.  Hydrocarbon Operating Company, Inc. also holds a working interest in almost every well in which the Partnerships hold interests.  Exhibit E is a copy of a list of all wells in which Partnerships, other than Heartland – Razorback, GP, hold interests, which reflects the percentage working interests of the Partnerships and Hydrocarbon Operating Company, Inc. Exhibits C and D were provided to the Plaintiffs by Heartland Resources, Inc. pursuant to a written request from counsel for Plaintiffs to Heartland Resources, Inc. (the "Heartland Information Request Letter"). A copy of the Heartland Information Request Letter is Exhibit F.

9.      The form Heartland Resources, Inc. Operating Agreement, a copy of which was included in each PPM delivered by Heartland Resources, Inc. to each Plaintiff (a copy of the form Operating Agreement is

2677612.18                                    4

Exhibit G) provides, pursuant to Article XV of the Operating Agreement, for the accounting of charges for the operation and maintenance of wells. Section XV. 1.C provides for the establishment of a "Joint Account" intended to reflect charges and credits related to the activities of the Operator on behalf of the "Parties" (who, by definition set forth in Section XV.1.F, are the Operator (Hydrocarbon Operating Company, Inc.) and the Non-Operator (the applicable Partnership)). Heartland Resources, Inc., in response to a specific question in the Heartland Information Request Letter, has acknowledged in writing (a copy of which is Exhibit H) that Joint Accounts have not been maintained.

10. Article III.B.1 of the form Operating Agreement (see Exhibit G) provides that if "… Operator … is no longer capable of serving as Operator, Operator shall be deemed to have resigned …". Moreover, the Operator may be "removed" if it is insolvent. Accordingly, since Hydrocarbon Operating Company, Inc., has forfeited its operating bond, it can no longer lawfully operate the wells (and, in fact, has ceased to operate the wells) and, in addition, is subject to removal because of its insolvency, each Partnership has the right to remove and/or replace the Operator. However, there are numerous Partnerships, and the removal and replacement process outlined in Article III.B.1 and 2 is cumbersome. As a result, it is possible that multiple Operators could be selected, notwithstanding, as described in Exhibit E, that multiple Partnerships own interests in a number of the same wells. This potentially inefficient and logistically confusing result can be avoided by the appointment of a single Receiver as requested by this Motion. Moreover, as with the insolvency of Defendant Heartland Resources, Inc., at no time has Defendant Hydrocarbon Operating Company, Inc. disclosed to the Court, the investors, or counsel for the Plaintiffs that the Operator has forfeited its operating bond or is insolvent and that the Partnerships have the right to replace the Operator.[5]

11. Another example of the Defendants' multiple financial duplicities is as follows. On or about August 3, 2006, Defendant Heartland Resources, Inc. caused to be issued a PPM offering investments in Heartland-Razorback Development, GP, a Kentucky general partnership formed for the purpose of acquiring, re-drilling and completing eight existing

---

[5] In fact, the briefs filed by the Heartland Defendants in opposition to Plaintiffs' first motion for the appointment of a receiver, which was in large part predicated upon the insolvency of the Heartland Entity Defendants, argued that the Heartland Entity Defendants were solvent and operating in the ordinary course of business, when, in fact, on the dates those briefs were filed, in May 2009, the Heartland Entity Defendants knew that the operating bond of Hydrocarbon Operating Company, Inc. had been forfeited in January 2009 and that well operations, the only source of revenue for the Heartland Entity Defendants, could no longer be conducted.

wells in Knox County, Kentucky.[6]  Heartland Resources, Inc. sold securities in the form of partnership units at a total price of $2,717,960. Several points are relevant to the Heartland-Razorback Development, GP offering for the purpose of this Motion:

(a)    The PPM stated that $497,640 of the total offering proceeds were to be used for payments to Defendant Ascension Financial Solutions, Inc. ("AFS"), ostensibly a member of the National Association of Securities Dealers (NASD) and a registered broker-dealer. Defendants did not disclose to investors that AFS was not licensed as a broker-dealer in Kentucky or that it was controlled by Defendants David Stewart and Mark Haynes. AFS did not in fact act as a broker-dealer for the securities sold by Heartland-Razorback Development, GP, but Heartland Resources, Inc. has not provided any explanation of the use of the $479,640 to investors or made a refund of such monies to investors.

(b)    By letter dated March 4, 2008, 19 months following the commencement of the Razorback offering, Defendant Richard Stewart informed the Razorback investors that there were issues with the Razorback project and that Heartland Resources, Inc. was exercising its option to substitute working interests in other wells. A copy of the Richard Stewart letter is Exhibit J. The substitution of working interests in wells by Heartland Resources, Inc. was not authorized by the PPM section cited in the letter, which addressed only the "Substitution of Wells to be Drilled," and spoke only of the replacement or substitution of "drill sites," not the substitution of interests in wells already drilled. Notwithstanding the acknowledgement of Richard Stewart set forth in the letter that the Razorback project could not be consummated, investors were not offered the return of their monies. Further, the Razorback investors received interests in wells already drilled and paid for by several different Partnerships.

12.    Representations about the Defendants' financial condition contained in the filings made by the Heartland Entity Defendants pursuant to the Court's Preliminary Injunction are materially different from representations made in the bankruptcy filings and in the disclosures made to Imperial Petroleum. What is undeniable, however, is that the Heartland Entity Defendants (i) are not operating in the ordinary course of business in that they are not operating any wells and not generating any revenue from the extraction of oil and gas; and (ii) are not paying any debts and obligations as they come due, including payroll and other taxes. Further, the individual Defendants who currently manage the Heartland Entity Defendants are doing nothing

---

[6] The Razorback project was a subject matter about which Defendant Mark Haynes testified at the December 18, 2008 Preliminary Injunction Hearing.  A copy of the transcript of that hearing is filed as Exhibit I.  (see pp. 67-78 thereto).

2677612.18                                                    6

to preserve the value of the entities' assets and protect investors and creditors.

13. The Affidavit of James Skinner was filed as <u>Exhibit K</u> (the "Skinner Affidavit") sets forth relevant financial data compiled from filings made by the Heartland Defendants pursuant to the Court's Preliminary Injunction and provided to counsel for Plaintiffs by Defendant Heartland Resources, Inc. in response to Plaintiffs' discovery requests. The Skinner Affidavit shows substantial compensation paid to senior management of the Heartland Defendants and to their spouses, large expenditures for expensive automobiles, rents on real property unrelated to the business of the Partnerships, the costs of a helicopter, personal entertainment and travel expenses, and purported religious donations (to Heartland Family Ministries, an entity controlled by Defendants David Stewart and Mark Haynes). Virtually all funds utilized by the Defendants for expenditures described in this Motion and in the Skinner Affidavit were derived from investor contributions and revenues from wells drilled with funds provided by investors. The Heartland Defendants' wanton and unlawful use of investor monies has resulted in the insolvency of the Heartland Entity Defendants and has jeopardized the remaining value of Plaintiffs' (and other investors') interests in the operations of the wells owned by the Partnerships.

14. These expenditures and payments were made notwithstanding that the individual Defendants controlling the Heartland Entity Defendants have refused to account for approximately $10,000,000 of investor capital contributions made for the purpose of completing approximately 25 as yet uncompleted wells, interests in which are owned by various Partnerships, and for the purpose of re-drilling and completing eight wells related to Defendant Heartland-Razorback Development, GP which were not so used.

15. The Plaintiffs' claims seek rescission of their investments. The total dollar amount of those investments exceeds $14,000,000. In addition, Plaintiffs are entitled to pre-judgment interest and attorneys fees. Plaintiffs' total claim is in excess of $20,000,000 and is more than four times greater than the aggregate amount of all other creditors' claims

16. If no Receiver is appointed, the assets of the Heartland Entity Defendants and resultingly, the investments of the Plaintiffs, will be dissipated and will continue to erode.

17. If a Receiver is appointed, the Receiver can undertake to locate an experienced, bonded operator to operate those oil and gas wells that can be operated profitably, preserve the oil and gas leases that have value and, with this Court's and the Bankruptcy Court's concurrence and approval, find an appropriate purchaser so that the residual value of the Partnership assets can be realized not only for the benefit of the

2677612.18

7

Plaintiffs, but also for the creditors and non-plaintiff investors. Moreover, the Receiver can more effectively provide an orderly liquidation of the Partnerships.

18.    William B. Blackmon is highly qualified to act as the Receiver. He is an experienced engineer with several years experience in the management of mineral properties, and in the operations of coal companies, land companies, and general and limited partnerships for mineral development. He also has experience as a Receiver, having been previously appointed as such. He is independent of the Plaintiffs and is willing to serve if the Court appoints him.  Exhibit L is a copy of the resume of Mr. Blackmon.

From all of which the Court should find that the present Motion is well taken and should

be granted.

Respectfully submitted,

/s/  *Joseph A. Woodruff*
Joseph A. Woodruff
H. Wynne James, III
Rhonda S. Kinslow
Rebecca Brinkley
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2100
Nashville, Tennessee  37219-1760
615-244-6380
615-244-6804 (facsimile)
Joseph.Woodruff@wallerlaw.com
Wynne.James@wallerlaw.com
Rhonda.Kinslow@wallerlaw.com
Rebecca.Brinkley@wallerlaw.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on this the 29th day of September 2009, by first-class mail, a copy of the foregoing document has been furnished to the following:

Barton D. Darrell, Esq.
Bell Orr Ayers & Moore, PSC
1010 College Street
P.O. Box 738
Bowling Green, KY 42102

Eugene N. Bulso, Jr., Esq.
Leader, Bulso & Nolan, PLC
414 Union Street, Suite 1740
Nashville, TN 37219

*Attorneys for Defendant Hunter Durham*

Mark H. Flener, Esq.
1143 Fairway Street, Suite 101
Bowling Green, KY  42103-2452

*Attorney for Hydrocarbon Operating, Inc. and Heartland Resources, Inc.*

/s/  *Joseph A. Woodruff*

2677612.18                                                  9