# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:08CV-00094-JHM

FREDERICK P. CLAYTON, JR., et al.                         PLAINTIFFS

V.

HEARTLAND RESOURCES, INC., et al.                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on several motions for summary judgment by Defendant Hunter Durham. Durham has filed a Motion for Summary Judgment as to All Plaintiffs [DN 463], a Motion for Summary Judgment Against Frederick P. Clayton [DN 464], and a Motion for Summary Judgment Against Kent B. Monypeny [DN 465]. Plaintiffs have filed their responses and have also filed a Motion for Certification of Legal Issue to the Kentucky Supreme Court [DN 482]. Having been fully briefed, these matters are ripe for decision.

## I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by " showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II. BACKGROUND

The facts of this case are described in more detail in the Court's November 16, 2010, Memorandum, Opinion and Order granting Defendant Durham's eight individual motions for summary judgment [DN 452]. Hunter Durham is the lawyer responsible for drafting and reviewing several private placement memoranda ("PPMs") for the sale of securities issued by Heartland Resources, Inc. Heartland eventually failed and many of its investors have since filed suit against the company, its officers, and Defendant Durham, on claims of securities fraud.

The Court found all Defendants, other than Hunter Durham, liable for various securities fraud violations in an Order dated February 1, 2010. Thereafter, Plaintiffs filed for summary judgment against Defendant Durham and Defendant Durham filed cross motions for summary judgment against several individual Plaintiffs. In separate opinions concurrently issued on November 16, 2010, the Court granted Defendant Durham summary judgment against the individual Plaintiffs and denied Plaintiffs summary judgment against Defendant Durham. Defendant Durham has now filed for summary judgment against the remaining Plaintiffs relying solely on the Court's

November 16th Opinions. Defendant Durham has also filed two separate motions for summary judgment against Plaintiffs Clayton and Monypeny to address claims under Tennessee law that are unique to those Plaintiffs.

## III. DISCUSSION

**A. Plaintiffs' §10(b), Rule 10b-5, Common Law Fraud, and K.R.S. § 292.480(1) Claims**

Defendant Durham incorporates by reference the Court's November 16th Opinion [DN 452] and seeks to apply its logic and results to the remaining Plaintiffs. In that opinion, the Court found that Defendant Durham was entitled to summary judgment as to several individual Plaintiffs' § 10(b), Rule 10b-5, and common law fraud claims based on the Plaintiffs' inability to demonstrate loss causation. The Court also found that Defendant Durham was entitled to summary judgment as to the Plaintiffs' K.R.S. § 292.480(1) claim because he was not one who offered or sold securities under Kentucky securities law.

The Plaintiffs' have responded by simply incorporating the arguments previously made in their own motion for summary judgment and in opposition to Mr. Durham's earlier motions for summary judgment. Without presenting additional evidence or authority addressing these four claims, Plaintiffs' state that they "respectfully disagree with the court's conclusions with regard to these claims in its Order of November 16, 2010, upon which Mr. Durham relies in the present Motion." Pls.' Resp. Opp'n Durham's Mot. Summ. J. as to All Pls. 12.

As the Court has already addressed each of the arguments raised by Defendant Durham and the Plaintiffs regarding the § 10(b), Rule 10b-5, common law fraud, and K.R.S. § 292.480(1) claims, and the Plaintiffs have failed to advance any new evidence or arguments, the Court sees no reason to deviate from the analysis and conclusions in its November 16th Opinion [DN 452]. Therefore, the

Court **GRANTS** summary judgment to Defendant Durham as to all of the remaining Plaintiffs' § 10(b), Rule 10b-5, common law fraud, and K.R.S. § 292.480(1) claims.

**A. Plaintiffs' K.R.S. § 292.480(4)**

Defendant Durham has also moved for summary judgment as to Plaintiffs' K.R.S. § 292.480(4) claim again citing the Court's earlier opinion. In its November 16th Opinion [DN 452], the Court found that Defendant Durham was not an individual subject to liability under § 292.480(4) because he did not meet the definition of an "agent" under Kentucky securities law. Although the Plaintiffs have incorporated by reference arguments made in earlier motions, they have also advanced several new arguments in opposition to Defendant Durham's current motion on this claim.

K.R.S. § 292.480(4) states in pertinent part that

> [e]very person who directly or indirectly controls a seller or purchaser liable under subsection (1) or (2) of this section, every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of a seller or purchaser who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale or purchase is also liable jointly and severally with and to the same extent as the seller or purchaser[.]

Ky. Rev. Stat. Ann. § 292.480(4) (West 2009). Under Kentucky securities law, the term "agent" is defined as "any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities." Ky. Rev. Stat. Ann. § 292.310(1) (West 2009). The Plaintiffs contend that Defendant Durham is subject to liability under § 292.480(4) as a person occupying a similar status or performing similar functions as a partner, officer, or director of Heartland or, in the alternative, as an "agent" who materially aided in the sale or purchase of securities.

Plaintiffs first contend that Defendant Durham occupied a status similar in function to an partner, officer, or director of Heartland.[1] In support of this argument, Plaintiffs offer the testimony of Heartland's two principals, Defendants David Stewart and Mark Haynes. Stewart and Haynes both testified that they "relied 'completely' on Mr. Durham for all aspects of Heartland's securities law compliance[,]" and that "[t]hey would have structured Heartland's sales operation in any way Mr. Durham advised." Pls.' Resp. Opp'n Durham's Mot. Summ. J. 8-9. Plaintiffs cite <u>Receiver of Assets of Mid-America Energy, Inc. v. Coffman</u>, 719 F. Supp. 2d 884 (M.D. Tenn. 2010) claiming that Defendant Durham is subject to liability under the similar status/function category because he was "generally involved in the business at issue [with] the power to control the transactions in which the securities fraud occurred." <u>Coffman</u>, 719 F. Supp. 2d at 893 (internal quotation marks omitted).

In examining <u>Coffman</u>, the Court finds that it is clearly distinguishable from the facts of the present case. The defendant in <u>Coffman</u> was alleged to have been "a well-connected 'bag man' in the scheme, who also drafted the relevant documents, communicated with investors, diverted funds, and instructed employees how to carry out their jobs."[2] <u>Coffman</u>, 719 F. Supp. 2d at 893. The <u>Coffman</u> court also found that the defendant "stood to gain financially from the alleged fraud." <u>Id.</u> The court held that those "allegations indicate clear 'general involvement' and 'control' as to the alleged securities fraud[.]" <u>Id.</u>

---

[1] In their earlier briefs on this issue, Plaintiffs admitted that "[i]n order to be liable under KRS § 292.480(4), Mr. Durham must be an 'agent.' He does not fit within the categories of other persons liable under that section." Pls.' Mem. Supp. Mot. Summ. J. Against Def. Durham 47 [DN 269]. Notwithstanding their earlier admission, Plaintiffs now contend that "say[ing] that Mr. Durham was not the functional equivalent of an officer, director or partner of Heartland . . . requires one to ignore the facts in the record." Pls.' Resp. Opp. Hunter Durham's Mot Summ. J as to All Pls. 10 [DN 481].

[2] Bag man is defined as "a person who collects, carries, or distributes illegal payoff money." <u>Random House Unabridged Dictionary</u> 155 (2d ed. 1993).

The Plaintiffs contend that Stewart and Haynes' total reliance on Defendant Durham for securities compliance coupled with his acknowledgment that he was authorized and willing to answer investor's questions, a fact included in each PPM, demonstrates that he was generally involved with the business and had the power to control the securities fraud transactions. Notwithstanding the fact that Kentucky courts have not adopted the general involvement standard advanced in <u>Coffman</u>, the Court finds that even under that standard, the facts do not demonstrate that Defendant Durham occupied a similar status or performed similar functions of a partner, officer, or director of Heartland. Unlike the defendant in <u>Coffman</u> who instructed employees how to carry out their jobs, diverted funds, and stood to gain financially from the alleged fraud, no such conduct has been alleged against Defendant Durham. The Court finds that the drafting of the PPMs and Stewart and Haynes' complete reliance on Defendant Durham for securities compliance does not demonstrate that Defendant Durham was such a part of the business that he had the power to control the transactions at issue. The conduct that Plaintiffs have alleged Defendant Durham engaged in is that of an attorney rendering legal services not of the functional equivalent of a partner, officer, or director. Therefore, the Court finds that Defendant Durham did not occupy a similar status or perform similar functions of a partner, officer, or director of Heartland and is not subject to liability under K.R.S. § 292.480(4) under such a theory.

As for the Plaintiffs' second argument that Defendant Durham was an "agent" under Kentucky securities law, the Court finds that Plaintiffs have advanced the same arguments found in their earlier briefs. Plaintiffs contend that Defendant Durham is liable as an "agent" under <u>Arthur Young & Co. v. Reves</u>, 937 F.2d 1310 (8th Cir. 1991). Plaintiffs contend that <u>Arthur Young</u> "addressed the civil liability of the accounting firm . . . and analyzed specifically the accounting

firm's status as an 'agent.'" Pls.' Resp. Opp'n Durham's Mot. Summ. J. 10. The Plaintiffs request that this Court adopt the test used in Arthur Young to determine when one has materially aided another in the sale of securities. The Court's reading of Arthur Young differs greatly from Plaintiffs' in that the Court fails to see where the Arthur Young court ever analyzed the term "agent." Rather, Arthur Young addressed the issue of material aid under the employee prong of the Arkansas securities law. See Arthur Young, 937 F.2d at 1326 (stating that the question of the accounting firm's liability under the control prong need not be determined because "[s]ection 106© explicitly makes liable for securities fraud *any employee of the seller* who materially aids in the sale of the security.") In fact, Arthur Young did not even address the question of whether the accounting firm was an employee under Arkansas securities law. It appears that the determination that the accounting firm qualified as an employee was not challenged on appeal.

Instead, Arthur Young addressed the appropriateness and sufficiency of jury instructions given to determine when one has materially aided another in the sale of fraudulent securities. It is this portion of Arthur Young that Plaintiffs urge the Court to adopt. Before the Court determines the proper standard for "material aid," it must first determine whether Defendant Durham even qualifies as a statutorily defined "agent." It is this issue that Plaintiffs have again failed to address. The Court has already found in its November 16th Opinion [DN 452] that Defendant Durham was not an "agent" under Kentucky securities law. The Plaintiffs present no new evidence or authority to convince the Court otherwise, therefore, the Court finds that Defendant Durham is not an "agent" under K.R.S. § 292.480(4).

Plaintiffs' final argument is that the Court has misapplied Senior Healthcare Ins. and Fin. Serv., Inc. v. Clementi, 2007 WL 1784158 (Ky. Ct. App. June 8, 2007), which stated that "any

person who facilitates another person's securities fraud becomes vicariously liable absent an affirmative demonstration of good faith." Id. at *1. The Plaintiffs request the Court to reconsider its interpretation of Clementi, reverse its earlier opinion, and rule in Plaintiffs' favor.[3] When a federal court, sitting in diversity, is faced with the absence of direct state supreme court precedent on a question of law, it must make its best prediction of what the state supreme court "would do if it were confronted with [the] question." Welsh v. United States, 844 F.2d 1239, 1245 (6th Cir. 1988) *overruled on other grounds by* Adkins v. Wolever, 554 F.3d 650 (6th Cir. 2009). When making this prediction, a district court may rely upon "opinions of the State's intermediate appellate courts to the extent that they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions[.]" Id.

In its November 16th Opinion [DN 452], the Court stated only that "Clementi . . . offers no framework to determine when a person has facilitated another person's securities fraud, and the Kentucky Supreme Court has yet to consider this particular issue." In retrospect, the Court's discussion of Clementi was admittedly brief and uninstructive. The Court finds it appropriate and beneficial, at this moment, to discuss Clementi in greater detail.

In Clementi, the plaintiffs filed a claim under K.R.S. § 292.480(4) against the employer and principal of a soliciting agent who sold fraudulent securities. Id. at *1. The principal acknowledged that his soliciting agent had sold fraudulent securities and that the principal had in fact "introduced the [agent] to the fraudulent securities and encouraged him to sell them without first having

---

[3] The Court notes that the Clementi opinion that Plaintiffs so strenuously rely upon to establish Defendant Durham's liability was cited nowhere in the Plaintiffs' own motion for summary judgment or their responses to the eight individual motions for summary judgment filed by Defendant Durham.

investigated their legitimacy." Id. Under these facts, the trial court granted the plaintiffs summary judgment, and on appeal, the Kentucky Court of Appeals affirmed that decision stating that "[u]nder Kentucky securities law, any person who facilitates another person's securities fraud becomes vicariously liable absent an affirmative demonstration of good faith." Id. In support of this statement, the court quoted K.R.S. § 292.480(4) placing emphasis on three separate phrases within the statute. Id. When these three phrases are placed together they say "[e]very person . . . who materially aids in the sale or purchase . . . is also liable jointly and severally with and to the same extent as the seller." See Clementi, 2007 WL 1784158, at *1 (emphasizing select language from K.R.S. § 292.480(4)).

As the Court reads the plain language of this statute it finds that it was intended to subject three distinct categories of individuals to liability: (1) every person who directly or indirectly controls a seller or purchaser of fraudulent securities; (2) every partner, officer, director, similarly functioning individual, or employee of a seller or purchaser who materially aids in the sale or purchase of fraudulent securities;[4] and (3) every broker-dealer or agent who materially aids in the sale or purchase of fraudulent securities. Unless a defendant fits into one of those categories, he cannot be subject to liability under K.R.S. § 292.480(4).

The Clementi court was not particularly concerned with determining the precise parameters of liability under K.R.S. § 292.480(4) because the defendant was clearly liable as one who directly or indirectly controlled a seller of fraudulent securities. The Clementi defendant had admitted that he was the principal of an agent who had sold fraudulent securities and that the defendant had

---

[4] Other states have split this category into multiple separate categories. See T.C.A. § 48-2-122(g).

encouraged the agent to sell them. The blanket statement used by the Clementi court that "[u]nder Kentucky securities law, any person who facilitates another person's securities fraud becomes vicariously liable absent an affirmative demonstration of good faith" is much too broad and has no support in the plain language of the statute.[5] Thus, the Court respectfully declines to accept Clementi as authoritative on the correct interpretation of K.R.S. § 292.480(4). Instead, the Court reaffirms its reliance on Baker and the other state courts' analyses of nearly identical securities provisions which were identified and discussed in detail in the Court's November 16th Opinion. The Court finds that because Defendant Durham did not directly or indirectly control a seller or purchaser of securities; does not qualify as the functional equivalent of a partner, officer, or director of Heartland; is not an employee of Heartland; or is not an "agent" under Kentucky securities law, that he is not liable under K.R.S. § 292.480(4). Therefore, the Court **GRANTS** summary judgment to Defendant Durham as to all of the remaining Plaintiffs' K.R.S. § 292.480(4) claims.

Plaintiffs have requested that, in lieu of granting Defendant Durham summary judgment, the Court certify a legal issue to the Kentucky Supreme Court. The legal issue that Plaintiffs request to be certified is: Whether liability pursuant to Ky. Rev. Stat. Ann. § 292.480(4) applies to any person who knowingly facilitates another person's violation of the Kentucky Securities Act, in light of the Kentucky Court of Appeals' opinion in Senior Healthcare Ins. and Fin. Serv. v. Clementi, 2007 WL 1784158 (Ky. Ct. App. 2007) (unpublished)? Plaintiffs contend that the Court's refusal to accept Clementi as the controlling state of the law in Kentucky is in error and that Clementi "was

---

[5] If it were the intent of the legislature to hold every person liable who materially aids another in the sale or purchase of fraudulent securities, then the legislature would not have included the many different qualifiers found in the statute. The Clementi court's selective emphasis of language in the statute has robbed the statute of its intended structure and application.

a basis upon which this Court should have granted summary judgment in favor of the Plaintiffs on their Section 292.480(4) claim."[6] Pls.' Mot. Cert. Legal Issue 14. Plaintiffs believe that "given the circumstances and the absence of any other guidance from the Kentucky Supreme and Appellate Courts, there is only one way to determine how the Kentucky Supreme Court would have applied and/or interpreted Clementi, and that is to certify the issue[.]" Id.

The Supreme Court has found that "[t]hrough certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'" Arizonans for Official English v. Ariz., 520 U.S. 43, 77 (1997) (quoting Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)). The Sixth Circuit Court of Appeals recently discussed certification of issues to the Kentucky Supreme Court in Warf v. Bd. of Elections of Green County, Ky., 619 F.3d 553 (6th Cir. 2010). The Warf Court found that

> "[t]he decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 449-50 (6th Cir. 2009) (quoting Transam. Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370, 372 (6th Cir. 1995)) (internal quotation marks omitted). "Certification is most appropriate when the question is new and state law is unsettled," but the "federal courts generally will not trouble our sister state courts every time an arguably unsettled question comes across our desks." Id. (citations and internal quotation marks omitted).

---

[6] The Court notes again that Plaintiffs did not cite Clementi in their motion for summary judgment or their earlier responses to Defendant Durham's motions for summary judgment. In fact, prior to the Court's citation of Clementi in its November 16th Opinion, the Plaintiffs also interpreted § 292.480(4) as limiting liability to only those individuals who fall under one of the categories listed in the statute. See Pls.' Mem. Supp. Mot. Summ. J. Against Def. Durham 47 ("*In order to be liable under KRS § 292.480(4), Mr. Durham must be an 'agent.' He does not fit within the categories of other persons liable under that section.*") (emphasis added). However, Plaintiffs now, disingenuously, advance the argument that there are no categories under the statute and that anyone who knowingly facilitates another person's violation of the Kentucky Securities Act should be held liable under § 292.480(4). The Court disagrees.

-11-

Warf, 619 F.3d at 558.

The Court finds that certification of this issue is not appropriate at this time. The Court finds that there is ample persuasive case law addressing this issue for the Court to make a sound prediction of the Kentucky Supreme Court's likely position. Furthermore, certification of the issue at this stage of the litigation would not save time, energy, or resources. The parties have now finished filing multiple rounds of dispositive motions. The Court has already addressed the issue in question and with this opinion and its accompanying final judgment, the case is now ripe for appeal. Requiring the parties to suspend the current action, when it is nearly concluded, would not advance the interests identified by the Supreme Court in Arizonans. Therefore, the Court **DENIES** the Plaintiffs' motion for certification.

**C. Plaintiffs Clayton and Monypeny**

Defendant Durham has also moved for summary judgment as to Plaintiffs Clayton and Monypeny's claims premised upon a violation of the Tennessee Securities Act, T.C.A. § 48-2-122, and a violation of the Tennessee Consumer Protection Agency, T.C.A. § 48-18-109. In his briefs in support of his motions for summary judgment against Plaintiffs Clayton and Monypeny, Defendant Durham addresses each subsection of T.C.A. § 48-2-122. However, in their response, the Plaintiffs make it clear that their claim against Defendant Durham is only for a violation of subsection (g) of the statute. Subsection (g) states that

> [e]very person who directly or indirectly controls a person liable under this section, every partner, principal executive officer, or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person who would be liable under this subsection (g) proves that the person who would be liable did not know, and in the exercise of reasonable care

could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

Tenn. Code Ann. § 48-2-122(g) (2011). The language of § 48-2-122(g) tracks closely the language of K.R.S. § 292.480(4). This is because both statutes are based on and adopted from the Uniform Securities Act. See State v. Casper, 297 S.W.3d 676, 685 (Tenn. 2009); Dolomite Energy, LLC v. Commonwealth of Kentucky Office of Fin. Inst., 269 S.W.3d 883, 885 (Ky. Ct. App. 2008).

Plaintiffs first contend that Defendant Durham is subject to liability as one who occupied a similar status or performed similar functions to a partner, principal executive officer, or director of a person liable under § 122. Using the same arguments discussed above, Plaintiffs contend that Defendant Durham falls under the similar status/function category because: (1) Stewart and Haynes completely relied upon Defendant Durham for Heartland's security compliance; (2) Defendant Durham acknowledged that he had express authorization to answer investor questions; and (3) included in every PPM was a statement that Defendant Durham was available to communicate with investors.

Plaintiffs again attempt to draw a comparison between Defendant Durham's conduct in the present case and that of the defendant in Coffman. As the Court discussed above, the conduct of the defendant in Coffman involved "a well connected 'bag man' in the scheme, who also drafted the relevant documents, communicated with investors, diverted funds, and instructed employees how to carry out their jobs." Coffman, 719 F. Supp. 2d at 893. While the Coffman defendant's conduct may have demonstrated that he was generally involved with the business and had the power to control the transactions at issue, the conduct of Defendant Durham that Plaintiffs identify does not demonstrate the same level of involvement. As the Court held in its November 16th Opinion

addressing the comparable Kentucky statute, the conduct of which the Plaintiffs complain is that of a lawyer rendering professional services. The Court finds that such conduct does not demonstrate that Defendant Durham was an individual who was the functional equivalent of a partner, principal executive officer, or director of Heartland.

The Plaintiffs also contend that Defendant Durham is subject to liability as an "agent" who materially aided in the act or transaction constituting the violation. For purposes of the Tennessee Securities Act, the term "agent" is defined as "any individual, other than a broker-dealer, who represents a broker-dealer in effecting or attempting to effect purchases or sales of securities from, in or into this state."[7] Tenn. Code Ann. § 48-2-102(3) (2011). Plaintiffs Clayton and Monypeny advance the same arguments on this issue as those advanced in response to Defendant Durham's motion for summary judgment as to all Plaintiffs.

The Plaintiffs argue that "[w]hile no Tennessee court has interpreted agency beyond its statutory definition under the Tennessee Securities Act, other courts have." Pls.' Resp. Opp'n Durham's Mot. Summ. J. Against Clayton and Monypeny 8. The Court agrees that no Tennessee court has addressed the current issue. Because the Tennessee Securities Act and the Kentucky Securities Act are modeled on and adopted from the Uniform Securities Act, the Court finds its earlier analysis of the term "agent" under the Kentucky Securities Act applicable and appropriate for the same defined term under the Tennessee Securities Act. Just as the Court found that Defendant Durham's conduct did not effect or attempt to effect the sale of securities under Kentucky

---

[7] This definition essentially mirrors the definition of "agent" under the Kentucky Securities Act addressed above.

law, the Court finds that the same conduct applied to the same definition creates the same result under Tennessee law.

The Court finds tacit approval of its analysis of the term "agent" in the Coffman decision. The defendant in Coffman argued that, as a lawyer who simply drafted documents, he did not fall within the definition of an "agent" under Tennessee securities laws. Rather than rejecting this argument and finding that lawyers rendering professional services are "agents" under Tennessee securities law, the Coffman court acknowledged several cases that supported the defendant's position, including Baker, and found that "[w]hile [the cases] generally stand for the proposition that a lawyer does not incur securities liability by simply providing legal advice, here, the plaintiffs have alleged that [defendant] was an active participant in the scheme." Coffman, 719 F. Supp. 2d at 893 n.4. The Coffman court distinguished the conduct of the defendant from that of a lawyer rendering legal services when it found that "plaintiffs have not alleged that [defendant] was a mere 'scrivener,' but they have alleged that he was a well-placed advisor who stood to gain financially from the alleged fraud." Id. at 893. The Court believes that the Coffman court's statements and its eventual decision that the allegations established that defendant was more than a "mere scrivener" demonstrate tacit acceptance of the principle that attorneys who merely render legal services do not qualify as "agents" under the Uniform Securities Act.

The Court finds that Plaintiffs have failed to produce evidence that Defendant Durham effected or attempted to effect the sale of securities qualifying him as an "agent" under Tennessee securities law. As there is no genuine dispute of material fact that Defendant Durham was neither the functional equivalent of a partner, principal executive officer, or director, nor an "agent" under

Tennessee securities law, the Court **GRANTS** summary judgment to Defendant Durham as to Plaintiffs Clayton and Monypeny's claims under T.C.A. § 48-2-122.

Defendant Durham has also moved for summary judgment against Plaintiffs Clayton and Monypeny as to their claims under the Tennessee Consumer Protection Act (TCPA). In the Court's Memorandum, Opinion and Order denying Plaintiff's motion for summary judgment against Defendant Durham [DN 453], the Court quoted Schmidt v. Nat'l City Corp., 2008 WL 597687 (E.D. Tenn. Mar. 4, 2008) for the proposition that "the TCPA does not apply to lawyers practicing law because the practice of law is a profession and does not affect trade or commerce as defined in the TCPA." Schmidt, 2008 WL 597687, at *3; see also Pagliara v. Johnson Barton Proctor & Rose, LLP, 2010 WL 3940993, at *10-11 (M.D. Tenn. Oct. 6, 2010) ("When a lawyer negotiates and drafts a settlement agreement, the lawyer is undoubtedly practicing law, even if he or she acts negligently or otherwise tortiously. Accordingly, the TCPA does not apply to the defendant's conduct, and the plaintiff's TCPA claim will be dismissed."). In its earlier opinion, the Court found the drafting of legal documents to be the practice of law and that such a practice was not covered by the TCPA.

In the current brief opposing Defendant's motions for summary judgment, Plaintiffs Clayton and Monypeny respectfully disagree with the Court's earlier reliance on Schmidt. Plaintiffs Clayton and Monypeny direct the Court's attention to Davis v. McGuigan, 325 S.W.3d 149, 162 (Tenn. 2010) in an attempt to demonstrate that Defendant Durham's conduct is actionable under the TCPA. However, Davis did not address the liability of lawyers rendering professional services. The Court finds that Davis does not alter the Court's acceptance of and reliance upon Schmidt. Therefore, the

Court **GRANTS** Defendant Durham's motions for summary judgment as to Plaintiffs Clayton and Monypeny's claims under the TCPA.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Hunter Durham's Motion for Summary Judgment as to All Plaintiffs [DN 463], Against Plaintiff Frederick P. Clayton [DN 464], and Against Kent B. Monypeny [DN 465] are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Certification of a Legal Issue to the Kentucky Supreme Court [DN 482] is **DENIED**.

cc: counsel of record